## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x

In re

East West Resort Development V, L.P., L.L.L.P., *et al.*,[1]

        Debtors.

:  Chapter 11
:
:  Case No. 10-10452 (BLS)
:
:  (Jointly Administered)
:
:
:

------------------------------------------------------------------ x

## APPLICATION OF THE DEBTORS TO RETAIN
## AND EMPLOY HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.
## AS FINANCIAL ADVISOR AND INVESTMENT BANKER PURSUANT
## TO SECTIONS 327 AND 328 OF THE BANKRUPTCY CODE
## *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors (the "Debtors") hereby apply to the Court for entry of an

order substantially in the form attached hereto as Exhibit A pursuant to sections 327(a) and

328(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),

Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule

2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "Local Bankruptcy Rules") seeking the entry of an order

authorizing the Debtors to retain and employ the investment banking firm Houlihan Lokey

---

[1] The Debtors are the following 12 entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): East West Resort Development V, L.P., L.L.L.P., a Delaware limited partnership registered as a limited liability limited partnership (9275), NMP Holdings, LLC, a Delaware limited liability company (9716), Northstar Mountain Properties, LLC, a Delaware limited liability company (0823), Northstar Iron Horse, LLC, a Delaware limited liability company (1031), Northstar Big Horn, LLC, a Delaware limited liability company (1132), Northstar Village Townhomes, LLC, a Delaware limited liability company (7166), Northstar Trailside Townhomes, LLC, a Delaware limited liability company (7251), Old Greenwood, LLC, a Delaware limited liability company (3812), Old Greenwood Realty Inc., a California corporation (4355), Gray's Station, LLC, a Delaware limited liability company (8308), Tahoe Mountain Resorts, LLC, a Delaware limited liability company (0093), and Tahoe Club Company, LLC, a Delaware limited liability company (5142). The address of each of the Debtors is 126 Riverfront Lane, 5th Floor, PO Drawer 2770, Avon, Colorado 81620.

Howard & Zukin Capital, Inc., together with its subsidiaries, agents or independent contractors (collectively, "Houlihan Lokey") *nunc pro tunc* as of February 16, 2010 (the "Petition Date") under the terms of the letter agreement dated December 14, 2009 (the "Original Agreement"), as amended in the letter agreement dated January 26, 2010 and further amended in the letter agreement dated February 12, 2010 (together the "Amendments," which collectively with the Original Agreement is referred to as the "Engagement Agreement"). In support of this Application, the Debtors submit the Declaration of Amit Patel (the "Declaration"), attached hereto as Exhibit B (a copy of the Engagement Agreement is annexed to the Declaration as Exhibit 1); and further respectfully state as follows:

### Jurisdiction and Venue

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

### Background

2.      On the Petition Date, the Debtors each filed a voluntary petition for relief under the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On February 18, 2010, the Court entered an order directing the joint administration of these cases (the "Bankruptcy Cases") [Docket No. 27]. To date, no trustee or official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

4.      Debtor East West Resort Development V, L.P., L.L.L.P. ("EWRD V") is a limited partnership between Crescent Resort Development, Inc. (a non-debtor entity) and long-standing

developer East West Partners, Inc. (a non-debtor entity and together with its affiliates, "East West") that was formed to develop residential and commercial real estate projects on and around the Northstar at Tahoe Resort in Lake Tahoe, California. Through its various subsidiaries, EWRD V has co-developed four unique residential communities on fully-entitled land that provides a first-class year round resort experience:

- Northstar Village – a family-oriented ski village located at the base of Northstar Mountain. Completed phases include 12 townhomes and 213 condominium units in six buildings, and associated retail and dining amenities.

- Northstar Highlands – currently consisting of 16 distinguished ski-in/ski-out townhomes, with significant opportunity for future townhomes and condominiums, located mid-mountain on the slopes of Northstar Mountain and adjacent to the recently-completed Ritz-Carlton Hotel and Residences.

- Old Greenwood – a four season resort community located in Truckee, California featuring a Jack Nicklaus signature golf course.

- Gray's Crossing – located adjacent to Old Greenwood, consisting of four neighborhoods featuring a Jacobsen-Hardy golf course.

5.      The Debtors have several additional features that not only allow them to offer a "world class" resort experience, but also set the stage for future economic growth in the expanding Tahoe region. First, EWRD V owns the Tahoe Mountain Club, a year-round non-equity club that offers a range of recreation opportunities and services to the owners of residences at EWRD V's four communities. In addition, EWRD V is the majority owner of Debtor Northstar Mountain Properties, LLC, which owns approximately 335 undeveloped acres with rights to develop approximately 1100 residential units on Northstar Mountain. When combined with the nearly $100 million of infrastructure improvements already made, EWRD V presents an unparalleled opportunity for a fully-integrated "world class" resort community.

6.      Unfortunately, the chaos in the real estate and financial markets has had a deleterious impact on the Debtors. This in conjunction with a dramatic slowdown in consumer

3

spending left the Debtors with a lack of liquidity, which led to defaults on a number of their existing obligations, while others will shortly come due. With no available financing and continued sluggishness in consumer spending, the Debtors were left with no alternative but to commence the Bankruptcy Cases.

7.     East West, an affiliate of EWRD V's general partner, HF Holding Corp., is the entity through which all of the Debtors' affairs are conducted. It provides the day-to-day management and oversight of the Debtors' operations, and provides personnel support to the Debtors, pursuant to a series of sub-management agreements between East West and the Debtors.

8.     For the twelve months ending December 31, 2009, the Debtors had total revenues on an unaudited consolidated basis of approximately $38.7 million and total net losses on an unaudited consolidated basis of approximately $31.8 million. As of December 31, 2009, the Debtors had approximately $256 million in total assets and $61 million in total liabilities, excluding approximately $189.4 million in contingent guarantee liabilities and the Debtors' bond obligations as described in the *Affidavit of Craig Ferraro in Support of First-Day Motions* filed on the Petition Date (the "Ferraro Affidavit") [Docket No. 3].

9.     During the weeks leading up to the Bankruptcy Cases, the Debtors and their management team, along with their financial advisors and counsel, engaged in extensive arms-length negotiations and discussions with their key stakeholders and dedicated significant time and resources toward a consensual restructuring. This process has resulted in a successfully negotiated term sheet ("Term Sheet") for a chapter 11 plan of reorganization that the Debtors' key stakeholders have agreed to support. The Term Sheet will serve as the foundation for reorganizing the Debtors and their prompt emergence from bankruptcy. In connection with the

4

Term Sheet, the Debtors executed a plan support agreement (the "Support Agreement" and together with the Term Sheet, the "Plan Documents"), signed by their key stakeholders, under which these parties have agreed to support and assist in the Debtors' efforts to reorganize. The Plan Documents are discussed in more detail and attached as an exhibit to the Ferraro Affidavit.

### The Debtors' Desire to Retain Houlihan Lokey

10. Prior to the Petition Date, the Debtors experienced, and continue to experience, financial difficulties that culminated in the filing of these chapter 11 cases. The Debtors have determined, in the exercise of their business judgment, that the complexity of the financial difficulties, among other things, require them to employ experienced professionals to render financial advisory services in connection with the Bankruptcy Cases.

### Basis for Relief

11. The Debtors desire to employ Houlihan Lokey as their financial advisor and investment banker during the pendency of these cases pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016 and to obtain approval of the terms under which Houlihan Lokey will be compensated. Additionally, pursuant to Local Rule 2016-2(g) the Debtors request a modification of the application and information requirements contained in Local Rule 2016-2.

12. Bankruptcy Code section 327(a) provides, in relevant part, as follows:

> The trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professionals persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

13. Bankruptcy Code section 328(a) provides, in relevant part, as follows:

> The trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

14.     Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of financial advisors . . . or other professionals pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee.

Fed. R. Bankr. P. 2014.

## Houlihan Lokey's Qualifications

15.     As described further herein, pursuant to the Engagement Agreement, on December 14, 2009 (the "Effective Date"), Houlihan Lokey commenced its engagement with the Debtors to provide certain financial advisory and investment banking advice.

16.     Established in 1970, Houlihan Lokey is an international investment banking/financial advisory firm with fourteen offices in the United States, Europe and Asia and more than eight hundred employees. Houlihan Lokey provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas, including financial restructuring. In 2008, Houlihan Lokey ranked as the No. 1 M&A advisor for U.S. transactions under $2 billion, according to Thomson Reuters. The firm is one of the leading providers of M&A fairness opinions and has one of the largest worldwide financial restructuring practices of any investment bank. Houlihan Lokey annually serves more than 1,000 clients ranging from closely held companies to Global 500 corporations.

6

17.     Houlihan Lokey is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority.

18.     Houlihan Lokey and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases. Houlihan Lokey's employees have advised debtors, creditors, equity constituencies and government agencies in many complex financial reorganizations. The professionals of Houlihan Lokey have been employed as investment bankers and/or financial advisers to the debtors in a number of large restructuring situations, including the following chapter 11 cases: In re Aventine Renewable Energy Holdings, Inc., Case No. 09-11214 (KG) (Bankr. D. Del. Apr. 7, 2009); In re Foamex International Inc., Case No. 09-10560 (KJC) (Bankr. D. Del. Feb. 18, 2009); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 12, 2008); In re Granite Broadcasting, Corp., Case No. 06-12984 (ALG) (Bankr. S.D.N.Y. Dec. 12, 2006); In re McLeodUSA, Inc., Case No. 05-63230 (JHS) (Bankr. N.D. Ill. Oct. 28, 2005); In re XO Communications, Inc., Case No. 02-12947 (AJG) (Bankr. S.D.N.Y. June 17, 2002); In re Tokheim Corporation, Case No. 02-13437 (KJC) (D. Del. Dec.12, 2002); In re Covad Communications Group, Inc., Case No. 01-10167 (PJW) (Bankr. D. Del. Aug. 20, 2001); In re Ameriserve Food Dist., Inc., Case No. 00-0358 (PJW) (Bankr. D. Del. Feb. 11, 2000); In re Stage Stores Inc., Case No. 00-35078 (WWS) (Bankr. S.D. Tex. June 9, 2002); In re Purina Mills. Inc., No. 99-3938 (SLR) (D. Del. Oct. 29, 1999). In addition, Houlihan Lokey has been involved in restructuring matters while representing official creditors committees including: In re Smurfit-Stone Container Corp., Case No. 09-10235 (BLS) (Bankr. D. Del. Jan. 29, 2009); In re WCI Communities Inc., Case No. 08-11643 (KJC) (Bankr. D. Del. Aug. 4, 2008); In re SemGroup LP, Case No. 08-11525 (BLS) (Bankr. D. Del. July 22, 2008); In

7

re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 5, 2008 and Dec. 17, 2008); In re Delta Air Lines Inc., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Dec. 05, 2005); In re Refco Inc., Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. Nov. 23, 2005); In re Solutia, Inc., Case No. 03-17949 (PCB) (Bankr. S.D.N.Y. Dec. 17, 2003); In re Worldcom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Oct. 7, 2002); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Jan. 1, 2002).

19.     The Debtors have selected Houlihan Lokey as their investment banker and financial advisor based upon, among other things, (a) the Debtors' need to retain an investment banking and financial advisory firm to provide advice with respect to the restructuring, and (b) Houlihan Lokey's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases. As mentioned, on the Effective Date (which was prior to the Petition Date), the Debtors engaged Houlihan Lokey to provide general investment banking and financial advice in connection with the Debtors' attempts to complete a strategic restructuring, reorganization, and/or recapitalization and, if necessary, to prepare for the Debtors' commencement of chapter 11 cases.

20.     In providing prepetition services to the Debtors in connection with these matters, Houlihan Lokey's professionals have worked closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' financial history, debt structure, creditors, business operations and related matters. Accordingly, Houlihan Lokey has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these cases.

21.     An experienced financial advisor and investment banker such as Houlihan Lokey fulfills a critical need. The Debtors believe they require the services of a capable and

8

experienced financial advisory and investment banking firm such as Houlihan Lokey because, among other reasons, Houlihan Lokey's resources and capabilities, together with its prepetition experience advising the Debtors, are crucial to the Debtors' success in these cases. Should the Court approve the Debtors' retention of Houlihan Lokey as investment banker, Houlihan Lokey will continue, without interruption, to perform the services for the Debtors as described herein.

## Services to be Provided by Houlihan Lokey

22.    As described in the Engagement Agreement, Houlihan Lokey will provide such consulting and advisory services as Houlihan Lokey and the Debtors deem appropriate and feasible in order to advise the Debtors in the course of these chapter 11 cases, including but not limited to the following:

(a)    assisting the Debtors in the development, preparation and distribution of selected information, documents and other materials in an effort to create interest in and consummate any Transaction;

(b)    soliciting and evaluating indications of interest and proposals regarding any Transaction from current and/or potential lenders, equity investors, acquirers and/or strategic partners;

(c)    assisting the Debtors with the development, structuring, negotiation and implementation of any Transaction, including participating as a representative of the Debtors in negotiations with creditors and other parties involved in any Transaction;

(d)    providing expert advice and testimony regarding financial matters related to any Transaction;

(e)    advising and attending meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties; and

(f)    providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Debtors.

## Disclosure Concerning Disinterestedness

23.    In reliance on the Declaration, the Debtors believe that, except as set forth in the Declaration, (a) Houlihan Lokey has no connection with the Debtors, their creditors, the U.S.

9

Trustee, any person employed in the office of the U.S. Trustee or any other party with an actual

or potential interest in these chapter 11 cases or their respective attorneys or accountants;

.(b) Houlihan Lokey is not a creditor, equity security holder or insider of the Debtors;

(c) Houlihan Lokey is not and was not, within two years of the Petition Date, a director, officer

or employee of the Debtors; and (d) Houlihan Lokey does not have an interest materially adverse

to the interest of the estate or of any class of creditors or equity security holders, by reason of any

direct or indirect relationship to, connection with or interest in, the Debtors or for any other

reason.  Accordingly, the Debtors believe that Houlihan Lokey is a "disinterested person," as

defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the

Bankruptcy Code.  Moreover, the Debtors believe that the retention and employment of

Houlihan Lokey is necessary and in the best interests of the Debtors and their estates.

**Compensation and Fee Applications**

24.     Subject to Court approval, and in accordance with section 327(a) and 328(a) of

the Bankruptcy Code, compensation will be payable to Houlihan Lokey in the following manner:

(a)     <u>Monthly Fees</u>:  Monthly Fee of $225,000 for the first three months of the engagement and $175,000 for each month thereafter.  Each Monthly Fee paid to Houlihan Lokey following the sixth month shall be credited against the next Transaction Fee.

(b)     <u>Restructuring Transaction Fee</u>:  If the Debtors consummate a Restructuring Transaction or a Sale Transaction involving substantially all of their assets, upon the date of confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code pursuant to an order of the Court or upon consummation of a Sale Transaction, Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a Restructuring Transaction Fee of $2,500,000 plus 1.0% of the face value of any Mello Roos Bonds subject to a Restructuring Transaction.[2]  If a Restructuring Transaction or Sale Transaction is consummated in two or more

---

[2]     The definitions of Restructuring Transaction, Sale Transaction and Financing Transaction are set forth in the Engagement Agreement.

10

transactions, the Debtors and Houlihan Lokey will mutually agree upon a market based fee for such services with such aggregate fees not less than $2,500,000.

(c)    <u>Sale Transaction Fee</u>:  If the Debtors request assistance in negotiating a Sale Transaction for selected assets of the Debtors, the Debtors and Houlihan Lokey will mutually agree upon a market based fee for such services, subject to a minimum cash fee of $1,000,000.  Houlihan Lokey will credit 50% of any Sale Transaction Fee toward any Restructuring Transaction Fee.

(d)    <u>Financing Transaction Fee</u>:  Upon the closing of each Financing Transaction, Houlihan Lokey shall earn, and the Debtors shall pay, a cash fee equal to the greater of (i) $1,000,000 and (ii) the sum of between 1% and 4% of the gross proceeds of any indebtedness raised or equity or equity-linked securities placed or committed, based on the formula described in the Engagement Agreement (at 3).  Houlihan Lokey also shall earn, and the Company shall pay, a Financing Transaction Fee for any debtor-in-possession financing that is raised within 60 days of the Effective Date equal to the greater of (x) $500,000 and (y) 1.0% of the gross proceeds of any debtor-in-possession financing raised or committed.  Houlihan Lokey will credit 50% of any Financing Transaction Fee toward any Restructuring Transaction Fee.

(e)    <u>Expenses</u>:  Reimbursement for all fees, reasonable disbursements and reasonable out-of-pocket expenses, including (i) reasonable fees of Houlihan Lokey's counsel, and (ii) reasonable disbursements of Houlihan Lokey's documented and travel expenses, duplicating charges, computer charges, messenger services and long-distance telephone calls.

25.    If there is a single Restructuring Transaction, the total fees payable under the Engagement Agreement (including Monthly Fees and Transaction Fees) shall not exceed $4,500,000 (the "<u>Fee Cap</u>").  If, however, a Restructuring Transaction is consummated in two or more transactions, any Additional Restructuring Transactions shall not be included in the Fee Cap.

26.    The overall compensation structure described above is comparable to compensation generally charged by investment banking firms of similar stature to Houlihan Lokey for comparable engagements, both in and out of the context of chapter 11 reorganizations. Houlihan Lokey's restructuring expertise, as well as its capital markets knowledge, financing

11

skills and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Houlihan Lokey's engagement, were important factors in Houlihan Lokey's determination of the amount of its fees. In addition, the Debtors believe that the ultimate benefit to the Debtors of Houlihan Lokey's services hereunder cannot be measured merely by reference to the number of hours to be expended by Houlihan Lokey's professionals in the performance of services.

27. The Debtors propose that all compensation and expenses will be sought in accordance with 328(a) of the Bankruptcy Code, as incorporated in sections 329 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and orders of the Court, and will not be subject to the standard of review in section 330 of the Bankruptcy Code.

## Modification of Local Rule 2016-2(d)

28. Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Further, Local Rule 2016-2(d) requires retained professionals to submit detailed time entries which set forth, among other things: a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue. Local Rule 2016-2(g), however, allows a retained professional to request a waiver of the requirements of Local Rule 2016-2, for cause.

29. The Debtors submit that the requirements of Local Rule 2016-2(d) should be modified for Houlihan Lokey due to the nature of Houlihan Lokey's engagement and its compensation structure. Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements typically are not hours-based, Houlihan Lokey does not ordinarily maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. Moreover, Houlihan Lokey has

12

requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees, including the Monthly Fees and the Transaction Fee(s) (if any), on a fixed-rate basis which, as set forth above, is customary in the investment banking and financial advisory services industry. As such, the submission of detailed time entries pursuant to Local Rule 2016-2(d) is unnecessary, and the Debtors request a modification of such reporting requirements.

30.     Notwithstanding the terms of the Engagement Agreement, the Debtors propose that Houlihan Lokey will file interim and final fee applications as required by the Local Rules and Order of this Court, including detailed descriptions of the expenses for which Houlihan Lokey has requested reimbursement, but Houlihan Lokey will only provide descriptions of those services it provided on behalf of the Debtors and the individuals who provided those professional services. Additionally, Houlihan Lokey will submit a separate application to this Court for approval of any Transaction Fee (as defined in the Engagement Agreement), if and when such Transaction Fee becomes payable. Alternatively, Houlihan Lokey may combine any request for payment of the Transaction Fee in these cases with its interim or final fee applications.

31.     Based on the foregoing, the Debtors request a modification of the informational requirements of Local Rule 2016-2(d).

### Disclosure of Compensation

32.     Prior to the Petition Date, the Debtors paid Houlihan Lokey (i) $457,500.00 as payment for monthly fees and (ii) $36,930.14 for reimbursement of reasonable out-of-pocket expenses. As of the Petition Date, Houlihan Lokey had a $55,569.86 credit with the Debtors. Such credit will be applied to expenses incurred during the pendency of these cases. In addition, as of the Petition Date, Houlihan Lokey did not hold a prepetition claim against the Debtors for services rendered.

13

33.     To the best of the Debtors' knowledge, and except as disclosed in the Declaration, Houlihan Lokey has not provided services to the Debtors' creditors, equity security holders, or any other parties-in-interest, or its respective attorneys, in any matter relating to the Debtors or their estates.

34.     The Debtors respectfully request that Houlihan Lokey be retained *nunc pro tunc* to the Petition Date. Since the Petition Date, Houlihan Lokey has provided valuable services that were time-sensitive and critical to the estate and maximizing value of the assets of the estate.

### Indemnification

35.     The Engagement Agreement provides for indemnity of Houlihan Lokey by the Debtors. *See* Engagement Agreement at 11-12. Notwithstanding the indemnification provisions set forth in the Engagement Agreement, such indemnity is modified, to the extent necessary, by the proposed order on this Application as follows (the "Modified Indemnification Provisions"):

(a)     subject to the provisions of subparagraph (c), *infra*, the Debtors are authorized to indemnify, and shall indemnify, Houlihan Lokey in accordance with the Engagement Agreement for any claim arising from, related to, or in connection with the services provided for in the Engagement Agreement, but not for any claim arising from, related to, or in connection with Houlihan Lokey's postpetition performance of any other services unless such postpetition services and indemnification therefore are approved by the Bankruptcy Court;

(b)     notwithstanding any provisions of the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify Houlihan Lokey or provide contribution or reimbursement to Houlihan Lokey (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Houlihan Lokey's bad faith, self dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Houlihan Lokey's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would not be prohibited by *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c) *infra*, to be a claim or expense for which Houlihan

14

Lokey should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement, as modified by this Order;

(c)    if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Houlihan Lokey believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement, including without limitation the advancement of defense costs, Houlihan Lokey must file an application therefore in this Court, and the Debtors may not pay any such amounts to Houlihan Lokey before the entry of an order by this Court approving such payment. This subparagraph (c) is intended only to specify the period during which the Court shall have jurisdiction over any request for indemnification, contribution or reimbursement by Houlihan Lokey and not a provision limiting the duration of the Debtors' obligation to indemnify Houlihan Lokey; and

(d)    any limitation on the amount of liability pursuant to the terms of the Engagement Agreement shall be eliminated.

36.    The Debtors and Houlihan Lokey believe that the Modified Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 proceedings. See, e.g., In re Foamex Int'l Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 18, 2005) (order authorizing retention of Miller Buckfire on similar terms); In re Comdisco, Inc., Case No. 02-C-1174 (N.D. Ill. Sep. 23, 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors); In re United Artists Theatre Co., Case No. 00-3514 (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan Lokey by debtors); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000). The Modified Indemnification Provisions are similar to other indemnification provisions that have been approved by bankruptcy courts in this and other districts. See, e.g., In re Burlington Indus., Inc., Case No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003) (order authorizing retention of Miller Buckfire on similar terms); In re PC

15

Landing Corp., Case No. 02-12086 (PJW) (Bankr. D. Del. Oct. 10, 2002) (same); In re

Metrocall, Inc., Case No. 02-11579 (RB) (Bankr. D. Del. Jul. 8, 2002) (order authorizing

retention of Lazard Freres & Co. LLC under similar terms); In re Kaiser Aluminum Corp., Case

No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (same); In re W.R. Grace & Co., Case

No. 01-01139 (JJF) (Bankr. D. Del. Jun. 22, 2001) (order authorizing retention of Blackstone

Group under terms of engagement letter, including, among other things, indemnification

provisions similar to the Modified Indemnification Provisions).

### Notice

37.     Notice of this Motion shall be provided to: (a) the U.S. Trustee, (b) the Debtors'

largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions,

(c) counsel to the Debtors' senior prepetition secured lenders, (d) counsel to the Debtors'

postpetition secured lenders, (e) counsel to the parties to the Support Agreement and (f) any

parties requesting notice in these cases pursuant to Bankruptcy Rule 2002. In light of the nature

of relief requested, the Debtors respectfully submit that no further notice of this Motion is

required.

LEGAL_US_W # 63554745. 8

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors' retention of Houlihan Lokey substantially in the form annexed hereto as Exhibit A and (ii) granting such other and further relief to the Debtors as the Court may deem proper.

Dated: February 19, 2010    Respectfully submitted,

        _____

        Craig Ferraro, Authorized Officer of East West Resort
        Development V, L.P., L.L.L.P. and its affiliated Debtors

17