# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

| | |
|---|---|
| | : Chapter 11 |
| In re | : Case No. 10-10452 (BLS) |
| | : |
| East West Resort Development V, L.P., L.L.L.P., *et al.*,[1] | : (Jointly Administered) |
| | : |
| | : **(Proposed) Bid Procedures Obj. Deadline: 3/9/2010** |
| Debtors. | : **at 4:00 p.m. (ET)** |
| | : **(Proposed) Bid Procedures Hearing Date: 3/11/10** |
| | : **at 11:30 a.m. (ET)** |
| | : **(Proposed) Sale Obj. Deadline: TBD** |
| | : **(Proposed) Sale Hearing Date: TBD** |
| | : |

------------------------------------------------------------x

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE FOR AN ORDER (I)(A) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF THE SALE DEBTORS' ASSETS; (B) SCHEDULING RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN OF THE SALE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED RELIEF; AND (II)(A) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS PROVIDED IN THE MODIFIED PURCHASE AGREEMENT; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE SALE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (C) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby move the Court for the entry of an order pursuant to sections 105(a), 363 and

---

[1] The Debtors are the following 12 entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): East West Resort Development V, L.P., L.L.L.P., a Delaware limited partnership registered as a limited liability limited partnership (9275), NMP Holdings, LLC, a Delaware limited liability company (9716), Northstar Mountain Properties, LLC, a Delaware limited liability company (0823), Northstar Iron Horse, LLC, a Delaware limited liability company (1031), Northstar Big Horn, LLC, a Delaware limited liability company (1132), Northstar Village Townhomes, LLC, a Delaware limited liability company (7166), Northstar Trailside Townhomes, LLC, a Delaware limited liability company (7251), Old Greenwood, LLC, a Delaware limited liability company (3812), Old Greenwood Realty Inc., a California corporation (4355), Gray's Station, LLC, a Delaware limited liability company (8308), Tahoe Mountain Resorts, LLC, a Delaware limited liability company (0093), and Tahoe Club Company, LLC, a Delaware limited liability company (5142). The address of each of the Debtors is 126 Riverfront Lane, 5th Floor, PO Drawer 2770, Avon, Colorado 81620.

365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for the District of Delaware (the "Local Rules") for an order (i)(a) approving procedures in connection with the sale of Assets (as that term is defined below) of Debtors Old Greenwood, LLC ("Greenwood LLC"), Gray's Station, LLC ("Gray's LLC"), and Tahoe Club Company, LLC ("Club Company LLC" and collectively with Greenwood LLC and Gray's LLC, the "Sale Debtors"); (b) scheduling the related auction and hearing to consider approval of sale; (c) approving procedures related to the assumption of certain of the Sale Debtors' executory contracts and unexpired leases; (d) approving the form and manner of notice thereof; and (e) granting related relief; and (ii)(a) authorizing the sale of such assets of the Sale Debtors free and clear of liens, claims, encumbrances, and other interests, except as provided in the Modified Purchase Agreement (defined below); (b) approving the assumption and assignment of certain of the Sale Debtors' executory contracts and unexpired leases related thereto; and (c) granting related relief (the "Motion"). In support of this Motion, the Debtors incorporate the statements contained in the *Affidavit of Craig Ferraro in Support of First-Day Motions* filed on the Petition Date (the "Ferraro Affidavit") [Docket No. 3] and further respectfully state as follows:

**Jurisdiction and Venue**

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

**Background**

2.     On February 16, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     Contemporaneously with the filing of this Motion, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). To date, no trustee or official committee of unsecured creditors has been appointed by the Office of the United States Trustee.

4.     Debtor East West Resort Development V, L.P., L.L.L.P. ("EWRD V") is a limited partnership between Crescent Resort Development, Inc. ("CRDI," a non-debtor entity) and long-standing developer East West Partners, Inc. (a non-debtor entity and together with its affiliates, "East West") that was formed to develop residential and commercial real estate projects on and around the Northstar at Tahoe Resort in Lake Tahoe, California. Through its various subsidiaries, EWRD V has co-developed four unique residential communities on fully-entitled land that provides a first-class year round resort experience:

- Northstar Village – a family-oriented ski village located at the base of Northstar Mountain. Completed phases include 12 townhomes and 213 condominium units in six buildings, and associated retail and dining amenities.

- Northstar Highlands – currently consisting of 16 distinguished ski-in/ski-out townhomes, with significant opportunity for future townhomes and condominiums, located mid-mountain on the slopes of Northstar Mountain and adjacent to the recently-completed Ritz-Carlton Hotel and Residences.

- Old Greenwood – a four season resort community located in Truckee, California featuring a Jack Nicklaus signature golf course.

- Gray's Crossing – located adjacent to Old Greenwood, consisting of four neighborhoods featuring a Jacobsen-Hardy golf course.

5.      EWRD V and its subsidiaries have several additional features that not only allow them to offer a "world class" resort experience, but also set the stage for future economic growth in the expanding Tahoe region.  First, EWRD V owns the Tahoe Mountain Club, a year-round non-equity club that offers a range of recreation opportunities and services to the owners of residences at EWRD V's four communities.  In addition, EWRD V is the majority owner of Debtor Northstar Mountain Properties, LLC, which owns approximately 335 undeveloped acres with rights to develop over 1000 residential units on Northstar Mountain.  When combined with the nearly $100 million of infrastructure improvements already made, EWRD V presents an unparalleled opportunity for a fully-integrated "world class" resort community.

6.      Unfortunately, the chaos in the real estate and finance markets has had a deleterious impact on EWRD V and its subsidiaries.  This in conjunction with a dramatic slowdown in consumer spending left EWRD V with a lack of liquidity, which led to defaults on a number of its existing obligations, while others will shortly come due.  With no available financing and continued sluggishness in consumer spending, the Debtors were left with no alternative but to commence these chapter 11 cases.

7.      East West, an affiliate of EWRD V's general partner, HF Holding Corp., is the entity through which all of the Debtors' affairs are conducted.  It provides the day-to-day management and oversight of the Debtors' operations, and provides personnel support to the Debtors, pursuant to a series of sub-management agreements between East West and the Debtors.

8.      For the twelve months ending December 31, 2009, the Debtors had total revenues on an unaudited consolidated basis of approximately $38.7 million and total net losses on an unaudited consolidated basis of approximately $31.8 million.  As of December 31, 2009, the

Debtors had total assets with book value of approximately $256 million and $61 million in total liabilities, excluding approximately $189.4 million in contingent guarantee liabilities and the Debtors' bond obligations as described in the Ferraro Affidavit.

9. During the weeks leading up to these chapter 11 cases, the Debtors and their management team, along with their financial advisors and counsel, engaged in extensive arms-length negotiations and discussions with their key stakeholders and dedicated significant time and resources toward a consensual restructuring. This process has resulted in a successfully negotiated term sheet ("Term Sheet") for a chapter 11 plan of reorganization that the Debtors' key stakeholders have agreed to support. The Term Sheet will serve as the foundation for reorganizing the Debtors and their prompt emergence from bankruptcy. In connection with the Term Sheet, the Debtors executed a plan support agreement (the "Support Agreement" and together with the Term Sheet, the "Plan Documents"), signed by their key stakeholders, under which these parties have agreed to support and assist in the Debtors' efforts to reorganize. The Plan Documents are discussed in more detail and attached to the Ferraro Affidavit.

10. Greenwood LLC and Gray's LLC each have a number of outstanding debt obligations to various lenders, including Citizens Bank of Northern California ("Citizens Bank"), Plumas Bank, JPMorgan Chase Bank, N.A. ("JPMorgan Chase"), and Societe Generale (collectively, the "Lenders"). Greenwood LLC's outstanding debt obligations are held by Citizens Bank, Plumas Bank and JPMorgan Chase, each of which issued loans to Greenwood LLC secured by certain of Greenwood LLC's real property. Gray's LLC's outstanding debt obligations are held by Citizens Bank and Societe Generale.[2] Citizens Bank issued a loan to

---

[2] International Fidelity Insurance Company, as surety for the repayment of certain bonds issued to Gray's LLC, has also asserted rights to the proceeds of the Sale (as defined below).

Gray's LLC secured by the real property known as the "Sunset Idea House in Truckee." Societe Generale issued a loan to Gray's Station secured by certain of Gray's Station's real property.

## Preliminary Statement

11.     The Debtors have determined, after the exercise of due diligence and in consultation with their financial advisor Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey") and with the consent of the parties to the Support Agreement, that their restructuring is best accomplished through the sale of certain tangible and intangible assets of the Sale Debtors free and clear of liabilities.

12.     Although a number of parties have expressed an interest in pursuing a transaction with the Debtors, the Debtors have determined at this time, in the exercise of their business judgment, to undertake a sales process without a lead or "stalking horse" bidder.  Accordingly, this Motion does not seek approval of stalking horse protections.

13.     The Debtors are not limiting the types of bids they will consider and will entertain bids for any and all of their Assets, individually or in lots.

14.     The sale of the Assets pursuant to the procedures and on the timeline proposed herein presents the best opportunity to maximize the value of the Assets for all interested parties. Moreover, the rapid transition to new ownership will maximize the value of the Assets.

## Relief Requested[3]

15.     *First*, the Debtors request entry of an order, attached hereto as Exhibit A (the "Bidding Procedures Order"):  (A) approving procedures (the "Bidding Procedures," the form of which is attached hereto as Exhibit A-1) for (i) submitting bids for any or all of the Assets of the Debtors and (ii) conducting an auction (the "Auction") with respect to any Assets on which the

---

[3]     Attached as Exhibit 1 hereto are the highlighted provisions of the Motion pursuant to Local Rule 6004-1.

Sale Debtors receive more than one bid; (B) scheduling the Auction for April 9, 2010 at 9:00 a.m. (prevailing Pacific Time) at the offices of Paul, Hastings, Janofsky & Walker, LLP, 55 Second Street, Twenty-Fourth Floor, San Francisco, California 94105, or at such other place, date and time as may be designated by the Debtors; (C) scheduling a hearing to approve any sale of Assets (the "Sale Approval Hearing") with respect to any bid(s) accepted by the Debtors on or before April 14, 2010 at 2:00 p.m. (prevailing Eastern Time), and requiring any objections to the Sale (defined below) be filed by 4:00 p.m. (prevailing Eastern time) three days prior to the Sale Approval Hearing; (D) approving procedures (the "Cure Procedures"), as set forth below, for the assumption and assignment of certain executory contracts (the "Contracts") and unexpired leases (the "Leases") of the Sale Debtors to any purchaser(s) of the Assets, and to resolve any objections thereto; and (E) approving (i) the form of notice of the Bidding Procedures and the Sale (the "Procedures Notice"), attached hereto as Exhibit B, to be served on the Notice Parties (defined below); and (ii) the form of notice to parties holding Contracts and Leases likely to be assumed and assigned in connection with the sale of Assets, in the form attached hereto as Exhibit C (the "Cure Notice").

16.    *Second*, the Debtors will request entry of an order in the form attached hereto as Exhibit D (the "Sale Order"), pursuant to sections 105, 363, and 365 of the Bankruptcy Code: (A) approving the sale of the Assets of the Sale Debtors to the purchaser, free and clear of all liens, claims, encumbrances and liabilities, except as provided in the Modified Purchase Agreement; and (B) authorizing the Debtors to consummate the Sale (as defined below) and all documents, agreements and contracts executed in conjunction therewith.

## I.  PROPOSED BID AND SALE PROCEDURES

### Assets to be Sold

17.  The Debtors seek to complete a sale (the "Sale") of the following: (i) substantially all the assets of Greenwood LLC, (ii) substantially all the assets of Gray's LLC, (iii) the Jack Nicklaus signature golf course owned by Club Company LLC and (iv) the Peter Jacobson/Jim Hardy golf course owned by Club Company LLC (collectively, the "Assets"). The Debtors shall entertain bids for any of the Assets either individually or in lots designated by any potential purchaser or the Debtors, including bids for fewer than all of the assets of any Sale Debtor. The Debtors will not entertain bids for all or substantially all of the Assets that do not at least meet or exceed an amount that is both sufficient to meet the Sale Debtors' obligations and consistent with their sound business judgment (the "Minimum Qualifying Bid Amount").[4]

18.  Except as otherwise provided in the proposed Asset Purchase Agreements, attached hereto as Exhibit E (individually, the "Greenwood Asset Purchase Agreement," the "Gray's Asset Purchase Agreement," and the "Club Asset Purchase Agreement" and together, the "Asset Purchase Agreements"), all of the Sale Debtors' right, title and interest in all of the Assets shall be sold free and clear of any liens, security interests, claims, charges or encumbrances in accordance with section 363 of the Bankruptcy Code. The Debtors propose that any such liens, security interests, claims, charges or encumbrances shall attach to the amounts payable to the Debtors resulting from the Sale, net of any transaction fee payable to the Debtors' financial advisor (the "Sale Proceeds"), in the same order of priority and subject to the

---

[4]  Pursuant to Section 5.2 of the Asset Purchase Agreement, the Debtors shall retain access to the Sale Debtors' books and records.

rights, claims, defenses, and objections, if any, of all parties with respect thereto, subject to any further order of the Court.

**Summary of Proposed Bidding Procedures**

**A.      Confidentiality Agreement**

19.      Any party that wishes to conduct due diligence regarding the Assets may be granted access to all material information that was or will be provided to any Qualified Bidder (as defined below), <u>provided</u> that such party first agree to and execute a confidentiality agreement with respect thereto.

**B.      Qualified Bidder**

20.      In order to participate in the bidding process and be deemed a "Qualified Bidder," each potential bidder must deliver to the Debtors' Counsel (as defined below) a written offer or group of offers (a "<u>Qualifying Bid</u>," and the party or parties to such Qualifying Bid, a "<u>Qualified Bidder</u>") so as to be received by no later than 5:00 p.m. (prevailing Eastern Time) on or before April 7, 2010 (the "<u>Bid Deadline</u>"). Each potential bidder shall also deliver such copies of such Qualifying Bids to: (i) counsel to the Debtors: Paul, Hastings, Janofsky & Walker, LLP, 191 N. Wacker Drive, 30th Floor, Chicago, Illinois 60606 (Fax: 312-499-6100) (Attn: Richard A. Chesley, Esq.), and Richards, Layton and Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Fax: 302-651-7701) (Attn: Daniel J. DeFranceschi, Esq.) (the "<u>Sale Debtors' Counsel</u>"), (ii) counsel to the Agent for the postpetition lenders (the "<u>Agent</u>"): Greenberg Traurig, LLP, MetLife Building, 200 Park Avenue, New York, New York 10166 (Fax: 212-801-6400) (Attn: Nathan A. Haynes, Esq.) (the "<u>Agent's Counsel</u>"), and (iii) the Debtors' financial advisor: Houlihan Lokey Howard & Zukin Capital, Inc., 1930 Century

Park West, Los Angeles, California 90067 (Fax: 310-553-2173) (Attn: Amit Patel). In order to be considered a Qualifying Bid, such bid must:

(1)    state such Qualified Bidder offers to purchase all or some of the Assets upon the terms and conditions as set forth in the Asset Purchase Agreement or through an alternative structure (or series of transactions) on such different or additional terms as appropriate and desirable for such transaction structure that the Debtors determine are no less favorable than the terms and conditions of the Asset Purchase Agreement;

(2)    state that such Qualified Bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Assets on terms and conditions no less favorable to the Debtors than the terms and conditions contained in the Asset Purchase Agreement (as determined by the Debtors in their reasonable business judgment);

(3)    be accompanied by a clean and duly executed Asset Purchase Agreement (the "Modified Purchase Agreement") and a marked Modified Purchase Agreement reflecting the variations from the Asset Purchase Agreement;

(4)    state that such Qualified Bidder is financially capable of consummating the transactions contemplated by the Modified Purchase Agreement;

(5)    state that such Qualified Bidder's offer is irrevocable until the closing of the purchase of the Assets if such Qualified Bidder is the Prevailing Bidder or the Back-Up Bidder (both, as defined below);

(6)    contain such financial and other information, including contact information, that will allow the Debtors to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement, including adequate assurance of such bidder's ability to perform under any Assumed Executory Contract (as defined below);

(7)    identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to closing;

(8)    acknowledge that such bid does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

(9)    fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

(10)    (a) state that such bid does not contain any due diligence or financing contingencies of any kind; and (b) provide evidence satisfactory to the Debtors that the bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to finance the purchase of the Assets;

(11)    include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Purchase Agreement;

(12)    be accompanied by a cash deposit at least equal to 10% of the purchase price (the "Deposit") to be wired to an account maintained and specified by the Debtors' Counsel; provided, however, that any Lender shall not be required to make such a deposit if the Sale Debtors are indebted to such Lender in excess of 10% of the purchase price of the Lender's Qualifying Bid.

Notwithstanding any of the foregoing, any Lender automatically shall be considered a Qualifying Bidder.

21.    The Debtors shall have the exclusive right to determine whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been recognized as such prior to the Auction.[5]

## C.    Aggregate Bids

22.    The Debtors may aggregate separate bids from unaffiliated persons to create one "Qualifying Bid" from a "Qualified Bidder"; provided, however, that all bidders shall remain subject to the provisions of section 363(n) of the Bankruptcy Code regarding collusive bidding.

## D.    As Is, Where Is

23.    The sale of the Assets shall be on an "as is where is" basis, without representations or warranties of any kind, nature or description by the Debtors, the Sale Debtors,

---

[5]    All rights granted in favor of Debtors in these Bidding Procedures shall be exercised in accordance with their fiduciary obligations.

the Debtors' estates or the Sale Debtors' estates except as specifically set forth in the Asset Purchase Agreement.

**E.    Only One Qualifying Bid**

24.    If only one timely Qualifying Bid is submitted, the Debtors shall not hold the Auction, but may proceed with the Sale Approval Hearing.

**F.    Auction**

25.    In the event that the Debtors timely receive more than one Qualifying Bid, the Debtors shall conduct the Auction with respect to the Assets.  The Auction will take place at the offices of Paul, Hastings, Janofsky & Walker, LLP, 55 Second Street, Twenty-Fourth Floor, San Francisco, California 94105 starting at 9:00 a.m. (prevailing Pacific Time) on April 9, 2010, or at such other place, date and time as may be designated in writing by the Debtors.

26.    The Auction shall be governed by the following procedures:

    (1)    only the Qualified Bidders shall be entitled to make any subsequent bids at the Auction and only Qualified Bidders or their authorized representative are entitled to attend and/or participate in the Auction, except that the Agent and its counsel are entitled to attend the Auction;

    (2)    each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

    (3)    each Qualified Bidder shall appear in person at the Auction, or through a duly authorized representative;

    (4)    bidding shall commence at the amount of the best Qualifying Bid submitted prior to the Auction;

    (5)    Qualified Bidders may then submit successive bids in increments to be determined by the Debtors;

    (6)    all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Asset Purchase Agreement or Modified Purchase Agreement, as applicable, at the Auction, so long as any further bids or the Modified Purchase Agreement as further modified otherwise constitute a Qualifying Bid;

(7)     the Auction will be conducted openly and each Qualified Bidder will be informed of the terms of the previous bid;

(8)     the Auction shall continue until there is only one offer that the Debtors determine, subject to Court approval, is the highest and best offer from among the Qualifying Bids submitted at the Auction (the "Prevailing Bid"). In making this decision, the Debtors shall consider, without limitation, the amount of the purchase price, the net benefit to the Sale Debtors' estates, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, and the number, type and nature of any changes to the Asset Purchase Agreement requested by each bidder. The bidder submitting such Prevailing Bid shall become the "Prevailing Bidder," and shall have such rights and responsibilities of the Purchaser, as set forth in the applicable Modified Purchase Agreement. Within three (3) days after adjournment of the Auction (but in any event prior to the commencement of the Sale Approval Hearing), the Prevailing Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Prevailing Bid was made. Absent irregularities in the conduct of the Auction, or reasonable and material confusion during the bidding, bids made after the close of the Auction shall not be considered by the Court; and

(9)     the bidding at the Auction will be transcribed.

27.     The Lenders reserve their rights to submit a credit bid at any time on or before the Auction in accordance with section 363(k) of the Bankruptcy Code.

28.     The distribution of the proceeds will remain subject to the Court's continuing jurisdiction to resolve any disputes regarding amounts owed.

## G.    Sale Approval Hearing

29.     The Prevailing Bid will be subject to approval by the Court. The Debtors request that the Sale Approval Hearing take place at 2:00 p.m. (prevailing Eastern Time) on or before April 14, 2010. The Sale Approval Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Approval Hearing, and the Debtors reserve their rights, in the exercise of their fiduciary obligations, to cancel the Sale at anytime.

**H. Closing Conditions and Deadlines**

30.     Subject to the satisfaction of the conditions set forth in the Modified Purchase Agreement (or the waiver thereof by the party entitled to waive that condition), the closing of the purchase and sale of the Assets and the assumption of the Assumed Liabilities provided for in the Modified Purchase Agreement (the "Closing") shall take place at the offices of Paul, Hastings, Janofsky & Walker, LLP, 55 Second Street, Twenty-Fourth Floor, San Francisco, California 94105 (or at such other place as the parties may designate in writing) no later than five (5) Business Days after the entry by the Court of the Sale Order, unless another time or date, or both, are agreed to in writing by the parties to the Modified Purchase Agreement.

**I. Failure to Consummate Purchase**

31.     If an Auction is conducted, the party with the next highest or otherwise best Qualifying Bid, as determined by the Debtors, in the exercise of their business judgment, at the Auction shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Pacific Time) on (i) the first business day that is 30 days following the entry of the Sale Order or (ii) the closing of the Sale with the Prevailing Bidder.

32.     Following the Sale Approval Hearing, if the Prevailing Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Prevailing Bidder, the Back-Up Bidder's bid will be deemed to be the new Prevailing Bid, and the Debtors will be authorized, but not required, to consummate the Sale with the Backup Bidder without further order of the Court upon at least 24 hours' notice to the Notice Parties (as defined below). In such case, the Prevailing Bidder's deposit shall be dealt with in accordance with the terms of its Modified Purchase Agreement, and the Debtors specifically reserve the right to seek all available damages from the defaulting Prevailing Bidder in accordance with the terms of that

party's Modified Purchase Agreement. In the event that the Debtors fail to consummate a transaction with the Back-Up Bidder, the Back-Up Bidder's deposit shall be dealt with in accordance with the terms of its Modified Purchase Agreement and the Debtors specifically reserve the right to seek all available damages from the defaulting Back-Up Bidder in accordance with the terms of its Modified Purchase Agreement.

33. Except as otherwise provided herein, all deposits shall be returned to each bidder not selected by the Debtors in accordance with the above procedures as the Prevailing Bidder or the Back-Up Bidder by no later than the fifth (5th) business day following the entry of the Sale Order. The deposit of the Back-Up Bidder shall be held by the Debtors until the earlier of (i) the first business day that is 30 days following the entry of the Sale Order or (ii) 24 hours after the closing of the sale transaction with the Prevailing Bidder.

**J.      Extension of Deadlines and Modification of Auction Procedures**

34. The Debtors reserve their rights, in the exercise of their fiduciary obligations, to modify the Bidding Procedures in a manner not inconsistent with the terms of the Modified Purchase Agreement or to impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction or adjourning the Sale Approval Hearing in open court without further notice, withdrawing from the Auction any or all of the Assets at any time prior to or during the Auction or canceling the Auction and the Sale, and Sale Approval Hearing, and rejecting all Qualifying Bids if, in the Debtors' business judgment, no such bid is for a fair and adequate price on terms acceptable to the Debtors. The decision to undertake any such modifications, adjournments, extensions or otherwise, remains within the sole discretion of the Debtors.

## Notice of Sale Approval Hearing

35.     As stated above, the Debtors request that this Court schedule the Sale Approval Hearing on or before April 14, 2010 at 2:00 p.m. (prevailing Eastern time). The Debtors propose that objections, if any, to the Sale be filed by 4:00 p.m. (prevailing Eastern time) three days prior to the Sale Approval Hearing.

36.     The Debtors also request that the Court approve the form of the Procedures Notice, substantially in the form of <u>Exhibit B</u> hereto. The Debtors will serve a copy of the Procedures Notice on the following parties: (a) the U.S. Trustee, (b) the Debtors' largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions, (c) any parties requesting notices in these cases pursuant to Bankruptcy Rule 2002, (d) all creditors or their counsel known to the Debtors to assert a lien (including a security interest), claim, right, interest or encumbrance of record against all or any portion of the Assets, and (e) all parties who have expressed an interest in purchasing the Assets (the "<u>Potential Bidders</u>") (collectively, the "<u>Notice Parties</u>").

37.     The Debtors propose to serve the Procedures Notice within three (3) business days following entry of the Bidding Procedures Order, by first-class mail, postage prepaid on the parties listed above. The Procedures Notice provides that any party that has not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy of the Motion or the Bidding Procedures Order, including all exhibits thereto, may make such a request calling the following toll-free number: (866) 212-0222.

## Sale Approval Hearing

38.     At the Sale Approval Hearing, the Debtors will seek Court approval of the Sale to the Prevailing Bidder(s), free and clear of all liens, claims and encumbrances pursuant to section

363 of the Bankruptcy Code, with all liens, claims and encumbrances to attach to the Sale Proceeds with the same validity and in the same order of priority as they attached to the Assets prior to the Sale, including the assumption by the Sale Debtors and assignment to the Prevailing Bidder(s) of the assumed Contracts and Leases pursuant to section 365 of the Bankruptcy Code. The Debtors will submit and present additional evidence, as necessary, at the Sale Approval Hearing demonstrating that the Sale is fair, reasonable and in the best interest of the Sale Debtors' estates and all interested parties.

### Procedures for the Assumption and Assignment of Assumed Contracts and Leases

39.     As noted above, the Sale Debtors may seek to assume and assign certain Contracts and Leases to be identified on schedules to the Asset Purchase Agreement, other than those agreements excluded by the Prevailing Bidder pursuant to the Modified Purchase Agreement (collectively, the "Assumed Executory Contracts").

40.     At least initially, the Assumed Executory Contracts will be those Contracts and Leases that the Sale Debtors believe may be assumed and assigned as part of the orderly transfer of the Assets.  The Prevailing Bidder may choose to exclude (or to add) certain Contracts or Leases to the list of Assumed Executory Contracts, subject to further notice.

41.     In the interim, the Debtors will serve the Motion and the Cure Notice, substantially the form of Exhibit C hereto, upon each counterparty to the Assumed Executory Contracts by no later than March 17, 2010.  The Cure Notice will state the date, time and place of the Sale Approval Hearing as well as the date by which any objection to the assumption and assignment of Assumed Executory Contracts must be filed and served.  The Cure Notice also will identify the amounts, if any, that the Debtors believe are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the

"Cure Amounts"). The Debtors also will serve upon all Notice Parties a complete list of Assumed Executory Contracts as set forth in the Asset Purchase Agreement and the corresponding Cure Amounts by no later than April 2, 2010. If a Contract or Lease is assumed and assigned pursuant to Court Order, then unless the Assumed Executory Contract counterparty properly files and serves an objection to the Cure Amount contained in the Cure Notice, the Assumed Executory Contract counterparty will receive at the time of the Closing of the sale (or as soon as reasonably practicable thereafter), the Cure Amount as set forth in the Cure Notice, if any, with payment to be made pursuant to the terms of the Prevailing Bidder's Modified Purchase Agreement. If an objection is filed by a counterparty to an Assumed Executory Contract, the Debtors propose that such objection must set forth a specific default in any executory contract or unexpired lease and claim a specific monetary amount that differs from the amount, if any, specified by the Debtors in the Cure Notice. To the extent there is a Contract or Lease to be assumed pursuant to the Modified Purchase Agreement, this Motion constitutes a separate motion to assume and assign that Contract or Lease to the Prevailing Bidder pursuant to section 365 of the Bankruptcy Code.

42.     If any counterparty objects for any reason to the assumption and assignment of an Assumed Executory Contract (a "Cure Amount Objection"), the Debtors propose that the counterparty must file the objection by no later than (i) 5:00 p.m. (prevailing Eastern Time) on April 9, 2010 or (ii) the date otherwise specified in the Cure Notice (or, alternatively, the date set forth in the motion to assume such Assumed Executory Contract if such contract is to be assumed and assigned after the Sale Approval Hearing), provided, however, that any counterparty may raise at the Sale Approval Hearing an objection to the assumption and assignment of the Assumed Executory Contract solely with respect to the Prevailing Bidder's

ability to provide adequate assurance of future performance under the Assumed Executory Contract. After receipt of a Cure Amount Objection, the Sale Debtors will attempt to reconcile any differences in the Cure Amount. In the event that the Sale Debtors and the non-debtor party cannot resolve the Cure Amount Objection, and the Court does not otherwise make a determination at the Sale Approval Hearing, the Sale Debtors may, in their discretion, segregate any disputed Cure Amounts pending the resolution of any such disputes by the Court or mutual agreement of the parties.

43. The Prevailing Bidder shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Executory Contract, and the failure to provide adequate assurance of future performance to any counterparty to any Assumed Executory Contract shall not excuse the Prevailing Bidder from performance of any and all of its obligations pursuant to the Prevailing Bidder's Modified Purchase Agreement. The Debtors propose that the Court make its determinations concerning adequate assurance of future performance under the Assumed Executory Contacts pursuant to section 365(b) of the Bankruptcy Code at the Sale Approval Hearing. Cure Amounts disputed by any counterparty will be resolved by the Court at the Sale Approval Hearing or such later date as may be agreed or ordered by the Court.

44. Except to the extent otherwise provided in the Prevailing Bidder's Modified Purchase Agreement, the Sale Debtors shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Executory Contracts pursuant to section 365(k) of the Bankruptcy Code.

## II. APPLICABLE AUTHORITY

**A.    The Sale of the Sale Debtors' Assets is Authorized by Section 363 as a Sound Exercise of the Sale Debtors' Business Judgment**

45.    Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, a sale of a debtor's assets should be authorized if a sound business reason exists for doing so.  See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 289, 295 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1990; In re Abbotts Dairies of Pennsylvania, Inc., 788 P.2d 143 (2d Cir. 1986); In re Titusville Country Club, 128 BR. 396 (W.D. Pa. 1991); In re Delaware & Hudson Railway Co., 124 BR. 169, 176 D. Del. 1991)); see also Official Committee of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143 (2d Cir. 1992); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). The Delaware & Hudson Railway court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under McClung and Lionel, observed that:

> [a] non-exhaustive list of factors to be considered in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the

sale versus appraised values of the property; and whether the asset is decreasing or increasing in value. 124 B.R. at 176.

46.     The business judgment rule shields a debtor's management from judicial second-guessing. Johns-Manville Corp., 60 B.R. at 615-16 ("a presumption of reasonableness attaches to a debtor's management decisions"). Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1). Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.), 1989 WL 106838, at *3 (N.D. Ill. 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

47.     As set forth above, the Debtors have determined that the best method of preserving the Debtors' business would be through the Sale of the Sale Debtor's assets. The fairness and reasonableness of the consideration to be paid by the purchaser(s) will be demonstrated by adequate "market exposure" and an open and fair auction process — the best means for establishing whether a fair and reasonable price is being paid. In order to ensure a fair auction process, the Debtors have and will continue to solicit interest from numerous potential purchasers.

48.     Notably, the proposed Sale is not a *sub rosa* plan of reorganization because it seeks only to liquidate assets and will not restructure the rights of creditors. See Institutional Creditors of Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.), 780 F.2d 1223 (5th Cir. 1986); PBGC v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 700 F.2d 935 (5th Cir. 1983), reh'g denied, 705 F.2d 450 (5th Cir. 1983); see also In re Decora Industries, Inc., 2002 WL 32332749 (D. Del. 2002) (proposed sale not *sub rosa* plan where sale has sound business purpose, adequate notice procedures, and does not unfairly benefit insider, creditor or class of creditors); In re Naron & Wagner, Chartered, 88 B.R. 85 (Bankr. D. Md. 1988) (proposed sale is not a *sub rosa* plan because it seeks only to liquidate assets and will not restructure the rights of creditors).

**B.      The Sale of the Sale Debtors' Assets Free and Clear of Liens and Other Interests is Authorized by Section 363(f)**

49.     The Debtors further submit that it is appropriate to sell the Assets of the Sale Debtors free and clear of liens pursuant to section 363(f) of the Bankruptcy Code, with any such liens attaching to the Sale Proceeds of the Assets to the extent applicable. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interests;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

50. This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

51. Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests. In re Dundee Equity Corp., 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("[s]ection 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); In re Bygaph, Inc., 56 B.R. 596, 606, n.8 (Bankr. S.D.N.Y. 1986) (same); Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

52. The Debtors believe that one or more of the tests of section 363(f) are satisfied with respect to the transfer of the Assets pursuant to the Asset Purchase Agreement. In particular, the Debtors believe that at least section 363(f)(2) will be met in connection with the transactions proposed under the Asset Purchase Agreement because each of the parties holding liens on the Assets will consent or, absent any objection to this motion, will be deemed to have consented to the Sale. Any lienholder also will be adequately protected by having their liens, if any, in each instance against the Sale Debtors or their estates, attach to the Sale Proceeds ultimately attributable to the Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Sale Debtors and their estates may possess with respect

thereto. Accordingly, section 363(f) authorizes the transfer and conveyance of the Assets free and clear any such claims, interests, liabilities or liens.

53. Under the terms of the Asset Purchase Agreement, the purchaser(s) assumes and agrees to pay, to perform and to discharge as and when they become due and payable, or are required to be performed, all liabilities that are to be performed on and after consummation of the Sale. The purchaser is not liable for any of the Sale Debtors' liabilities in connection with the Sale of the Assets as successors to the Sale Debtors' business or otherwise.

54. Although section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests," the term "any interest" is not defined anywhere in the Bankruptcy Code. Folger Adam Security v. DeMatteis/MacGregor JV, 209 F.3d 252, 257 (3d Cir. 2000). In the case of In re Trans World Airlines, Inc., 322 F.3d 283, 288-89 (3d Cir. 2003), the Third Circuit specifically addressed the scope of the term "any interest." The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only in rem interests in property," the trend in modern cases is towards "a more expansive reading of 'interests in property' which 'encompasses other obligations that may flow from ownership of the property.'" Id. at 289 (citing 3 Collier on Bankruptcy 15th Ed. Rev., ¶ 363.06[1] (L. King, 15th rev. ed. 1988)). As determined by the Fourth Circuit in In re Leckie Smokeless Coal Co., 99 F.3d 573, 581-582 (4th Cir. 1996), a case cited with approval and extensively by the Third Circuit in Folger, supra, the scope of section 363(f) is not limited to in rem interests. Thus, the Third Circuit in Folger stated that Leckie held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." Folger, 209 F.3d at 258.

55.     Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes such assets free from successor liability resulting from pre-existing claims. See The Ninth Avenue Remedial Group v. Allis-Chalmers Corp., 195 B.R. 716, 732 (Bankr. N.D. Ind. 1996) (stating that a bankruptcy court has the power to sell assets free and clear of any interest that could be brought against the bankruptcy estate during the bankruptcy); MacArthur Company v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94 (2d Cir. 1988) (channeling of claims to proceeds consistent with intent of sale free and clear under section 363(f) of the Bankruptcy Code); In re New England Fish Co., 19 B.R. 323, 329 (Bankr. W.D. Wash. 1982) (transfer of property in free and clear sale included free and clear of Title VII employment discrimination and civil rights claims of debtor's employees); In re Hoffman, 53 B.R. 874, 876 (Bankr. D.R.I. 1985) (transfer of liquor license free and clear of any interest permissible even though the estate had unpaid taxes); American Living Systems v. Bonapfel (In re All Am. of Ashburn, Inc.), 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986) (product liability claims precluded on successor doctrine in a sale of assets free and clear); WBO Partnership v. Virginia Dept. of Medical Assistance Servs. (In re WBO Partnership), 189 B.R. 97, 104-05 (Bankr. E.D. Va. 1995) (Commonwealth of Virginia's right to recapture depreciation is an "interest" as used in section 363(f)). The purpose of an order purporting to authorize the transfer of assets free and clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against the purchaser arising from the Sale Debtors' pre-sale conduct. Under section 363(f) of the Bankruptcy Code, the purchaser is entitled to know that the Sale Debtors' assets are not infected with latent claims that will be asserted against the purchaser after the proposed transaction is completed. Accordingly, consistent with the above-cited case law, the

order approving the Sale should state that the Prevailing Bidder is not liable as a successor under any theory of successor liability, for claims that encumber or relate to the Assets.

## C.      The Proposed Notice of Bidding Procedures and Auction Is Appropriate

56.      The Debtors believe that they will obtain the maximum recovery for their creditors if the Assets of the Sale Debtors are sold through a well-advertised sale and auction. The Debtors already have taken significant steps to identify potential purchasers.

57.      Under Bankruptcy Rules 2002(a) and (c), the Debtors are required to notify creditors of the proposed sale of the Assets, including a disclosure of the time and place of an auction, the terms and conditions of a sale, and the deadline for filing any objections. The Debtors submit that the notice procedures herein comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the sale by auction to the Debtors' creditors and other interested parties, as well as to those parties who have expressed an interest, or may express an interest, in bidding on the Assets. The Debtors, through their financial advisor Houlihan Lokey, have been marketing the businesses of the Sale Debtors on an ongoing basis. The proposed time frame between the filing of this Motion, the commencement of the bidding process and the Auction should give interested purchasers more than enough time to participate in the Auction.

## D.      Assumption and Assignment of Certain of the Sale Debtors' Executory Contracts and Unexpired Leases

58.      Section 365(a) of the Bankruptcy Code provides a debtor-in-possession "subject to the court's approval, may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a). Upon finding that debtors have exercised their sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code. See Nostas Assocs. v. Costich (In

re Klein Sleep Prods., Inc.), 78 F.3d 18, 25 (2d Cir. 1996); Orion Pictures Corp. v. Showtime

Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993).

59.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor-in-possession may

assign an executory contract or unexpired lease of nonresidential real property if

> (1)     the debtor-in-possession assumes such contract or lease in accordance
> with the provisions of this section; and

> (2)     adequate assurance of future performance by the assignee of such contract
> or lease is provided, whether or not there has been a default in such
> contract or lease.

11 U.S.C. § 365(f)(2).

60.     The meaning of "adequate assurance of future performance" depends on the facts

and circumstances of each case, but should be given "practical, pragmatic construction." See

Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J.

1989); see also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate

assurance of future performance does not mean absolute assurance that debtor will thrive and pay

rent); In re Bon Ton Rest. & Pastry Shop, Inc., 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985)

("Although no single solution will satisfy every case, the required assurance will fall

considerably short of an absolute guarantee of performance.").

61.     Among other things, adequate assurance may be given by demonstrating the

assignee's financial health and experience in managing the type of enterprise or property

assigned. In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance

of future performance is present when prospective assignee of lease has financial resources and

expressed willingness to devote sufficient funding to business to give it strong likelihood of

succeeding; chief determinant of adequate assurance is whether rent will be paid).

62.     The Debtors or the Prevailing Bidder will present evidence at the Sale Approval Hearing to prove the financial wherewithal, willingness and ability of the Prevailing Bidder to perform under the Contracts or Leases. The Court and other interested parties therefore will have the opportunity to evaluate the ability of any Prevailing Bidder to provide adequate assurance of future performance under the Contracts or Leases, as required by section 365(b)(1)(C) of the Bankruptcy Code.

63.     In addition, the Cure Procedures are appropriate and consistent with section 365 of the Bankruptcy Code. To the extent that any defaults exist under any Assumed Executory Contracts, any such defaults will be cured pursuant to the Modified Purchase Agreement with the Prevailing Bidder. Any provision in the Assumed Executory Contracts that would restrict, condition, or prohibit an assignment of such contracts will be deemed unenforceable pursuant to section 365(f)(1) of the Bankruptcy Code.

64.     Accordingly, the Debtors submit that the Cure Procedures for effectuating the assumption and assignment of the Assumed Executory Contracts as set forth herein are appropriate and should be approved.

**E.     The     Prevailing     Bidder     should     be     Afforded     All     Protections Under Section 363(m) as a Good Faith Purchaser**

65.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal. Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" In re Chateaugay Corp., 1993 U.S. Dist. LEXIS 6130, *9 (S.D.N.Y. 1993) (quoting In re Abbotts Dairies of Penn., Inc., 788 F.2d 143, 147 (3d Cir. 1986)). See also Allstate Ins. Co. v. Hughes, 174 BR. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

66.     The selection of the Prevailing Bidder will be the product of arm's-length, good faith negotiations in an anticipated competitive purchasing process. The Debtors intend to request at the Sale Approval Hearing a finding that the Prevailing Bidder is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

**F.      Relief from the Fourteen Day Waiting Period Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.**

67.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtors request that the Order be effective immediately by providing that the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

68.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen (14) day stay period, Collier suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Collier on Bankruptcy 15th Ed. Rev., ¶ 6064.09 (L. King, 15th rev. ed. 1988).  Furthermore, Collier on Bankruptcy provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

69.     The Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d) or, in the alternative, if an objection to the Sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

### Notice

70.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) all other Notice Parties as that term is defined herein; and (iii) any parties requesting notice in these cases pursuant to Bankruptcy Rule 2002.  The Sale Debtors respectfully submit that no further notice of this Motion is required.

WHEREFORE, the Debtors respectfully request that the Court enter orders substantially in the form attached hereto as <u>Exhibit A</u> and <u>Exhibit D</u> (a) granting the relief requested herein and (b) granting to the Sale Debtors such other and further relief as the Court may deem proper.

Dated: March 4, 2010
      Wilmington, Delaware

Respectfully submitted,

*Katherine Good*

Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Dana L. Reynolds (No. 4930)
L. Katherine Good (No. 5101)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: defranceschi@rlf.com
       heath@rlf.com
       reynolds@rlf.com

-and-

Richard A. Chesley (IL 6240877)
Gregory S. Otsuka (IL 6270388)
Hilla Uribe Jimenez (IL 6293064)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email: richardchesley@paulhastings.com
      gregoryotsuka@paulhastings.com
      hillauribe@paulhastings.com

PROPOSED COUNSEL TO DEBTORS AND
DEBTORS IN POSSESSION