UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x
: 
In re : Chapter 11
 :
East West Resort Development V, L.P., L.L.L.P., : Case No. 10-10452 (BLS)
et al.,[1] :
 : (Joint Administration Pending)
Debtors. :
 : Re: Docket No. 10
------------------------------------------------------------------ x

# FINAL ORDER (A) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING TO GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO BANKRUPTCY CODE §§ 364(c) AND 364(d); AND (B) SCHEDULING A FINAL HEARING PURSUANT TO FED R. BANK. P. 4001

This matter came before this Court on the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (the "Debtors") requesting that this Court enter an order authorizing the Debtors to: (a) incur Postpetition Debt; and (b) grant certain liens and other relief to Barclays Bank PLC, (the "Agent"), for the benefit of itself and the lenders under the Postpetition Loan Agreement (the "Lenders").[2]

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

---

[1] The Debtors are the following 12 entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): East West Resort Development V, L.P., L.L.L.P., a Delaware limited partnership registered as a limited liability limited partnership (9275), NMP Holdings, LLC, a Delaware limited liability company (9716), Northstar Mountain Properties, LLC, a Delaware limited liability company (0823), Northstar Iron Horse, LLC, a Delaware limited liability company (1031), Northstar Big Horn, LLC, a Delaware limited liability company (1132), Northstar Village Townhomes, LLC, a Delaware limited liability company (7166), Northstar Trailside Townhomes, LLC, a Delaware limited liability company (7251), Old Greenwood, LLC, a Delaware limited liability company (3812), Old Greenwood Realty Inc., a California corporation (4355), Gray's Station, LLC, a Delaware limited liability company (8308), Tahoe Mountain Resorts, LLC, a Delaware limited liability company (0093), and Tahoe Club Company, LLC, a Delaware limited liability company (5142). The address of each of the Debtors is 126 Riverfront Lane, 5th Floor, PO Drawer 2770, Avon, Colorado 81620.

[2] Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A hereto .

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a hearing pursuant to Code § 364[3] and Fed. R. Bankr. P. 4001(c), and objections, if any, having been withdrawn or resolved or overruled by the Court,

THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:

A. On the Filing Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Code. The Court has authorized the joint administration of these Cases for procedural purposes. The Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B. The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C. [Intentionally Omitted.]

D. No Committee has been appointed in these Cases.

E. Even if the Debtors were authorized to use all available Cash Proceeds upon a showing of adequate protection of the interests therein of the Prepetition Lenders, such Cash Proceeds would be insufficient to provide the Debtors with the working capital necessary to prevent immediate and irreparable harm to the Debtors.

F. The Debtors are unable to obtain unsecured credit as an administrative claim allowable under Code § 503(b)(1) sufficient to finance the operations of the Debtors' business. Except as provided below, the Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by the Lenders.

---

[3] Unless otherwise indicated, all section references used herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq (2010).

G. Consequently, an immediate need exists for the Debtors to obtain the Postpetition Debt in order to minimize disruption to and avoid the termination of their business operations, and to enhance the possibility of a successful reorganization.

H. The Lenders have indicated a willingness to extend the Postpetition Debt, but only on the terms and conditions set forth in this Order and the Postpetition Documents. Under the circumstances of the Cases, the terms and conditions of this Order are a fair and reasonable response to the Debtors' request to incur Postpetition Debt, and the entry of this Order is in the best interests of the Debtors' estates and their creditors. Such terms and conditions have been negotiated in good faith and at arms' length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

I. The notice provided by the Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(c) and 9014, Local Rule 9014-1(m) and Code §§ 102 and 364 and were otherwise sufficient and appropriate under the circumstances.

WHEREFORE, IT IS HEREBY ORDERED THAT:

1. <u>Authorization to Incur Postpetition Debt</u>.

   (a) <u>Approval of Postpetition Documents</u>. As consideration for the extension of the Postpetition Debt, the Postpetition Documents are hereby approved in their entirety. The Debtors are hereby authorized and directed to: (1) execute all documents that the Agent deems are necessary to implement the transactions contemplated by the Postpetition Documents; and (2) perform each of their obligations under and comply with all of the terms and provisions of the

Postpetition Documents and this Order. The Postpetition Documents shall constitute valid and binding obligations of the Debtors, enforceable in accordance with their terms.

(b) <u>Permitted Uses of Postpetition Debt</u>. The Debtors are hereby authorized and directed to incur Postpetition Debt: (1) solely in accordance with and pursuant to the terms and provisions of this Order and the Postpetition Documents; (2) solely to the extent required to pay those expenses enumerated in the Budget as and when such expenses become due and payable for the purposes allowed under Section 6.13 of the Postpetition Loan Agreement; and (3) to fund from the Postpetition Debt a cash collateral account for the benefit of International Fidelity Insurance Company ("IFIC") in the amount of $700,000 to secure Debtors' postpetition obligations under HOA bonds issued by IFIC, as set forth on <u>Exhibit F</u> hereto. In the event Debtors default on their postpetition obligations on the HOA bonds issued by IFIC, and fail to cure the default in 5 days, IFIC shall be entitled to the cash collateral account and to terminate all HOA bonds without further order. Notwithstanding anything to the contrary in this Paragraph 1(b), however: (1) the Debtors are hereby authorized to incur Postpetition Debt to pay the Postpetition Charges and the Carveout when due and payable; and (2) if the Agent or Lenders advance monies to the Debtors and the Debtors use such monies other than in accordance with the terms and provisions of this Order or the Postpetition Documents, such advances shall be considered Postpetition Debt for purposes of this Order.

2. <u>Procedure for Delivery of Cash Proceeds</u>.

(a) <u>Delivery of Cash Proceeds to Agent</u>. Subject to Section 2.4(e)(i)(y) of the Postpetition Loan Agreement, the Debtors are authorized and directed to deliver all Cash Proceeds, regardless of the source of such Cash Proceeds, now or hereafter in their possession or

under their control to the Agent, into the Designated Account. The Agent shall thereafter apply such Cash Proceeds in accordance with Paragraph 6(a) of this Order.

(b) <u>Account Debtors</u>. Without further order of court, the Agent may direct the Debtors to, or the Agent may directly, instruct all account Debtors to make payments directly into the Designated Account or such other accounts satisfactory to the Agent, in which event all such Cash Proceeds shall applied to the Postpetition Debt in accordance with Paragraph 6(a) of this Order.

(c) <u>Cash Proceeds in Agent's Possession</u>. The Agent is authorized to collect upon, convert to Cash Proceeds and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or under its control which constitute Postpetition Collateral or proceeds of Postpetition Collateral.

3. <u>Superpriority Administrative Expense Status; Postpetition Liens</u>. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code, other than the Carveout. In addition, the Agent, for the benefit of itself and the Lenders, is hereby granted, pursuant to Code §§ 364(c)(2), and 364(c)(3), and 364(d), the Postpetition Liens in the Postpetition Collateral to secure the Postpetition Debt. The Postpetition Liens: (1) are and shall be First Priority Liens in the Postpetition Collateral (but shall not prime any Permitted Liens, including, without limitation, with respect to the Second Lien Collateral only, the Existing U.S. Bank Liens thereon) without any further action by the Debtors, Agent, or Lenders, and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (2) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; and (3) shall remain in full

force and effect notwithstanding any subsequent conversion or dismissal of the Cases. Notwithstanding the foregoing, the Debtors are authorized and directed to execute and deliver to Agent such financing statements, mortgages, instruments and other documents as Agent may deem necessary or desirable from time to time. For purposes of clarification, the Postpetition Collateral shall not include any assets of Gray's Station, LLC, and nothing in this Order shall fix or purport to fix the extent, validity, or priority of any lien or subrogation rights in the assets of Gray's Station, LLC.

4. <u>Carveout Terms</u>. (a) The Carveout shall include the following expenses: (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii) subject to the terms and conditions of the Order, all fees and disbursements incurred by the Borrowers and/or the Committee for Carveout Professionals, retained by final order of the Bankruptcy Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated) pursuant to Code §§ 327 or 1103(a) to the extent allowed by order of the Bankruptcy Court (which order has not been reversed, vacated, or stayed, unless such stay has been vacated) under Code §§ 328, 330 and/or 331 and any interim compensation procedures order, but solely to the extent such fees and disbursements are within the corresponding amounts set forth in the Budget and were reflected as estimated fees and expenses of such professionals in the most recent Budget delivered by the Borrowers to the Agent prior to the date that such fees and disbursements were incurred; <u>provided, that</u>: (a) following a notice to the Borrowers from the Agent of the occurrence of an Event of Default, the amount of the Carveout shall not exceed $1,000,000 plus the amount of any compensation or reimbursement of budgeted expenses and fees incurred, awarded or paid prior to the occurrence of an Event of Default in respect of which the Carveout is invoked; (b) the Carveout shall be reduced on a dollar-for-dollar basis by any

payments of fees or expenses of the Carveout Professionals, (c) all prepetition retainers and any other property of the estates (other than property subject to an unavoidable lien in favor of Agent) shall be used to pay any allowed fees and expenses of the Carveout Professionals before any payments of such fees or expenses are made from the Postpetition Debt or the Postpetition Collateral, (d) upon the Termination Date, and with the exception of the $1,000,000 portion of the Carveout which Lender has agreed to fund on or after the Termination Date, Lender shall have no obligation to fund any fees or expenses of the Carveout Professionals. Notwithstanding anything to the contrary in the foregoing sentence, the Carveout shall not include, and no Postpetition Debt or Postpetition Collateral may be used to pay, any fees or expenses incurred by any entity, including the Debtors, the Committee, or the Carveout Professionals in connection with claims, actions or services adverse to Agent or Lenders, or any of Agent's or Lenders' interests in any of the Postpetition Collateral, including (i) preventing, hindering or delaying Agent's or Lenders' enforcement or realization upon any of the Postpetition Collateral once an Event of Default has occurred, (ii) using or seeking to use Cash Proceeds or selling any other Postpetition Collateral without Agent's consent, (iii) incurring indebtedness without Agent's consent, except as expressly permitted by the Postpetition Documents, or (iv) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Postpetition Debt or the Postpetition Liens or any other rights or interests of Agent or Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Agent or Lenders; provided, however, that up to $50,000 of the Carveout may be used to pay fees and expenses of any Committee in investigating the claims and causes of action identified in this subparagraph. Nothing herein shall be construed as consent to the allowance of any fees or expenses of the

Carveout Professionals or shall affect the right of Agent to object to the allowance and payment of such fees, costs or expenses.

5. Termination of Right To Incur Postpetition Debt.

(a) Termination Date. Unless extended by the Court upon the written agreement of the Agent, this Order and the Debtors' authorization to incur Postpetition Debt pursuant to this Order will automatically terminate on the Termination Date without further notice or order of Court.

(b) Rights Upon Termination. Upon the Termination Date, without further notice or order of the Court, at the Agent's election: (1) the Postpetition Debt shall be immediately due and payable; (2) the Agent shall be entitled to apply or set off any Cash Proceeds in the Agent's possession or control to the Postpetition Debt in accordance with Paragraph 6(a) of this Order, until such Postpetition Debt is indefeasibly and finally paid in full; and (3) the Debtors shall be prohibited from using any Cash Proceeds for any purpose other than application to the Postpetition Debt in accordance with Paragraph 6(a) of this Order, until such Postpetition Debt is indefeasibly and finally paid in full. On the third Business Day after the Termination Date, but subject in each instance to Paragraph 5(c) of this Order: (x) at Agent's election this Court will conduct a Code § 363 sale on not less than 20 days notice of all or such part of the Postpetition Collateral designated by Agent, in its sole discretion, and on terms acceptable to Agent, in its sole discretion, with all proceeds to be used to pay the Postpetition Debt in the manner set forth in the Postpetition Loan Agreement (and with Agent preserving the right to credit bid in such sale); (y) at the Agent's election, without further order of the Court, the Agent shall have automatic and immediate relief from the automatic stay with respect to the Postpetition Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P.

4001(a)(3)), and shall be entitled to exercise all rights and remedies available to it under the Postpetition Documents (including, without limitation, this Order) and applicable nonbankruptcy law with respect to the Postpetition Collateral; and (z) at Agent's election, the Debtors shall be authorized and directed (subject to notice requirements in these Cases, to the extent applicable) to execute a deed in lieu of foreclosure of all or part of the Postpetition Collateral, in form and substance satisfactory to the Agent, in its sole discretion, and otherwise surrender the Postpetition Collateral and to cooperate to assist the Agent in the exercise of the rights and remedies available to the Agent under the Postpetition Documents (including this Order) and applicable nonbankruptcy law with respect to the Postpetition Collateral; provided, however, that (a) during the three Business Day period following the Termination Date, the Debtors shall have the right to obtain an order of this Court determining that the Termination Date has not occurred, but during such three Business Day period, the Debtors may not use Cash Proceeds (other than to pay the Carveout) unless such use is agreed to in writing by the Agent, and the Agent shall have no obligation to advance Postpetition Debt to the Debtors; and (b) solely for purposes of determining if the Postpetition Debt has been paid in full, the value of any deed in lieu accepted by the Agent shall be determined on the date of acceptance by a certified financial appraiser selected by Agent, and reasonably acceptable to the Debtors and TLH.

(c) <u>State Law Restrictions</u>. Effective upon entry of this Order: (1) in connection with any exercise of rights and remedies by Agent with respect to the Postpetition Collateral, including, without limitation, any credit bid at any sale of the Postpetition Collateral under Code § 363, Debtors hereby expressly waive their rights under any "single action," collateral first, anti-deficiency, or other similar state law rules and restrictions, including, without limitation, California Code Of Civil Procedure § 726, and this Court hereby finds and concludes

that all such state law rules and restrictions with respect to the Postpetition Collateral are superseded by this Order; (2) in reliance on the Debtors' waivers and this Court's findings and conclusions, Agent hereby covenants and agrees that, in exercising its rights and remedies pursuant to this Order and the other Postpetition Documents, it shall ask this Court to conduct a Code § 363 Sale, or shall accept a deed in lieu of foreclosure, or attempt to foreclose (either judicially or nonjudicially), on the Trailside Townhomes Collateral prior to doing so on, or otherwise exercising any remedy in respect of, any of the other Postpetition Collateral; (3) if the Postpetition Debt has not been paid in full from the proceeds of a sale or foreclosure on the Trailside Townhomes Collateral by the earlier of (a) the 180th day following the date on which the Agent provides written notice to the Debtors and TLH that the Agent will exercise its remedies in respect of the Trailside Townhomes Collateral (the "180th Day"), or (b) the completion of the sale or foreclosure on the Trailside Townhomes Collateral (the "Sale Completion Date"), the Agent shall be released from the covenant and agreement contained in the preceding sentence on the earlier to occur of the 180th Day and the Sale Completion Date, and shall be entitled to exercise its rights and remedies with respect to the remaining Postpetition Collateral under the Postpetition Documents (including this Order) and applicable nonbankruptcy law immediately; provided that, solely for purposes of determining if the Postpetition Debt has been paid in full from the proceeds of a foreclosure on the Trailside Townhomes Collateral, the value of any deed in lieu accepted by the Agent shall be determined on the date of acceptance by a certified financial appraiser selected by Agent, in its sole discretion, and reasonably acceptable to the Debtors and TLH; (4) the Agent further covenants that it shall use commercially reasonable efforts to realize upon the Trailside Townhomes Collateral by the earlier of the 180th Day and the Sale Completion Date; and (5) if for any reason

the waivers, findings and conclusions in this Section 5(c) are invalidated by any court of competent jurisdiction after the entry of this Order, Agent's covenants and agreements under this Paragraph 5(c) shall immediately cease, and Agent shall be entitled to exercise its rights and remedies with respect to the Postpetition Collateral in the same manner it would have as if Agent had never exercised any of its rights and remedies under the Postpetition Documents (including this Order) or applicable nonbankruptcy law.

6. <u>Additional Consideration For Postpetition Debt</u>. As additional consideration for the extension of the Postpetition Debt:

(a) <u>Application of Cash Proceeds</u>. The Agent, at its election, is authorized to apply all Cash Proceeds (and all monies received by the Agent under Paragraph 1(b) of this Order) now or hereafter coming into the Agent's possession or control in accordance with the terms of the Postpetition Loan Agreement. All such applications shall be final and not subject to challenge by any person, including any Trustee, subject only to the right of parties in interest to object solely to applications to Postpetition Charges consisting of attorneys' fees and expenses under and in accordance with Paragraph 7(a) of this Order. Any amounts disgorged in connection with any such objection or determination shall be first applied to repay other Postpetition Debt in accordance with this Paragraph 6(a).

(b) <u>Prohibition Against Use of Cash Proceeds</u>. Other than as necessary to comply with Section 2.4(e)(i)(y) of the Postpetition Loan Agreement with respect to proceeds from the sale or disposition of assets securing any Existing Loans, the Debtors will not use or seek to use Cash Proceeds (including, without limitation, Cash Collateral), unless, in addition to the satisfaction of all requirements of Code § 363 for the use of such Cash Proceeds: (i) the Agent has consented to such order; (ii) at the time of the entry of such an order, there is no

Postpetition Debt outstanding, and no obligation of the Agent to extend additional Postpetition Debt; or (iii) such Cash Proceeds are first used to immediately and indefeasibly pay the Postpetition Debt in cash in full. Notwithstanding anything else in this Order, as set forth in Section 2.4(e)(i) of the Postpetition Loan Agreement, in connection with the sale or disposition of any Postpetition Collateral owned by Debtor Northstar Trailside Townhomes, LLC, 72.4% of the Net Cash Proceeds (as that term is defined in the Postpetition Loan Agreement) shall be utilized to prepay Obligations in accordance with the first sentence of Section 2.4(e)(1) of the Postpetition Loan Agreement, and 27.6% of the net proceeds shall be held as collateral for the Postpetition Debt in the Trailside Purchase Deposit Account for the benefit of the Agent and Lenders until it is disbursed to the agent on the Termination Date and applied on such date pursuant to Section 2.4(f)(i) of the Postpetition Loan Agreement.

(c)  Prohibition Against Additional Debt. The Debtors will not incur or seek to incur debt secured by a lien which is equal to or superior to the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364 for the incurrence of such debt: (a) the Agent has consented to such order; (b) at the time of the entry of such an order, there is no Postpetition Debt outstanding, and no obligation of the Agent to extend additional Postpetition Debt; or (c) such credit or debt is first used to immediately and indefeasibly pay the Postpetition Debt in cash in full.

(d)  No Surcharge. At no time during these Cases shall the surcharge provisions of Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) be imposed upon Lenders or the Agent or any of the Postpetition Collateral for the benefit of any party in

interest, including the Debtors, the Committee, or any of the Carveout Professionals; provided, however, that a chapter 7 Trustee may attempt to use the surcharge provisions of Code § 506(c) with respect to post-conversion expenses of the estates in the Cases, and Agent reserves its rights to contest any such attempt.

(e) <u>Right to Credit Bid</u>. Pursuant to Code § 363(k), the Agent shall have the right to use the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Postpetition Collateral under Code § 363(b).

(f) <u>Plan</u>. Unless the Agent consents thereto, no order shall be entered confirming a plan in any of these Cases unless such order provides for payment in full in cash of all Postpetition Debt on the effective date thereof, together with releases, exculpations, waivers and indemnification, acceptable to the Agent and Required Lenders, in their sole discretion.

7. Miscellaneous Provisions.

(a) Notice of and Objections to Postpetition Charges. The Agent shall provide summaries of all invoices with respect to the Agent's attorneys' fees and related costs and expenses asserted as Postpetition Charges that are incurred after the entry of this Order to: (i) Paul, Hastings, Janofsky & Walker, LLP, Attn: Richard A. Chesley; 191 North Wacker Drive, Chicago, Illinois, 60640; (ii) Richards, Layton & Finger, P.A., Attn: Daniel J. DeFranceschi; One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801; (iii) the Office of the United States Trustee, Attn: Joseph J. McMahon, Esq., J. Caleb Boggs Federal Building, 844 King Street, Suite 2313, Lockbox 35, Wilmington, Delaware, 19801 and (iv) counsel for any Committee. Any such party may object to the reasonableness of any such fees, costs and expenses. However, any such objection shall be forever waived and barred unless, within 30 days of receipt of the summary of the invoice to which the objection relates: (1) the objection is filed with the Court and served upon the Agent and its counsel; and (2) the objection describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis of the objection to each such item or category of fees, costs and expenses to the extent practicable based upon documentation provided by the Agent. Any hearing on an objection to the fees, costs and expenses set forth on any invoice summary shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection. The disallowance of any such fees and expenses shall not affect the Agent's right to collect such amounts from any person or entity other than the Debtors.

(b) Force and Effect of Postpetition Documents. To the extent there exists any conflict among the Motion, the Postpetition Documents and the terms of this Order, this Order shall govern and control.

(c) Modification of Stay. The automatic stay of Code § 362 is hereby modified with respect to the Agent to the extent necessary to effectuate the provisions of this Order, including, after the Termination Date, to permit the Agent to exercise its rights contemplated by Paragraph 5(b) above.

(d) Financial Information. The Debtors are hereby directed to deliver to the Agent such financial and other information concerning the business and affairs of the Debtors and any of the Postpetition Collateral as may be required pursuant to the Postpetition Documents and/or as the Agent shall reasonably request from time to time. The Debtors are also directed to allow the Agent access to the premises in accordance with the terms of the Postpetition Loan Agreement for the purpose of enabling the Agent to inspect and audit the Postpetition Collateral and the Debtors' books and records.

(e) No Waiver. The Agent's or the Lenders' failure, at any time or times hereafter, to require strict performance by the Debtors (or by any Trustee) of any provision of this Order or the Postpetition Documents shall not waive, affect or diminish any right of the Agent or the Lenders, as the case may be, thereafter to demand strict compliance and performance therewith. No delay on the part of the Agent or the Lenders in the exercise of any right or remedy under this Order, the Postpetition Documents, the Code, or applicable nonbankruptcy law shall preclude any other or further exercise of any right or remedy. Neither the Agent nor the Lenders shall be deemed to have suspended or waived any of their rights or remedies under this Order, the Postpetition Documents, the Code, or applicable nonbankruptcy

law unless such suspension or waiver is in writing, signed by a duly authorized officer of such party, and directed to the Debtors.

(f) "Responsible Person." By executing the Postpetition Documents or taking any actions pursuant to this Order, the Agent shall not: (1) be deemed to be in control of the operations or liquidation of the Debtors; or (2) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of the Debtors.

8. Binding Effect.

(a) Order. This Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and hearing. If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect (a) the stipulations, representations and findings contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interests or any other benefit or claim authorized hereby with respect to any Postpetition Debt incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits incurred prior to the effective date of such termination or subsequent order shall be governed in all respects by the original provisions of this Order, and the Agent shall be entitled to all the rights, remedies, privileges and benefits granted herein, including the liens and priorities granted herein, with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

(b) <u>Survival</u>. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (1) confirming any chapter 11 plan; (2) converting the Cases to cases under chapter 7; or (3) solely to the extent authorized by applicable law, dismissing the Cases. The terms and provisions of this Order, including the rights granted to the Agent and the Lenders under Code §§ 364(c) and (d), shall continue in full force and effect until all of the Postpetition Debt is indefeasibly and finally paid in cash in full and discharged.

9. <u>Notice of Entry of Final Order</u>. The Debtors are directed to immediately serve a copy of this Order by first class mail, postage prepaid, on the Agent, the Lenders, the Existing Lenders, the Debtors' other secured creditors and the United States Trustee, which service shall constitute adequate and proper notice of the entry of this Order.

Dated: March 11, 2010
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE