IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
                                                        : Chapter 11
In re                                           : Case No. 10-10452 (BLS)
  :
East West Resort Development V, L.P., L.L.L.P.,   : (Jointly Administered)
et al.,[1]   :
  :
        Debtors.   : **Re: Dkt. No. 166**
  :
------------------------------------------------------------ x

**AMENDED ORDER (A) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF THE SALE DEBTORS' ASSETS; (B) SCHEDULING RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN OF SALE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "<u>Bankruptcy Rules</u>"), and Rule 6004-1 of the Local Rules of

---

[1] The Debtors are the following 12 entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): East West Resort Development V, L.P., L.L.L.P., a Delaware limited partnership registered as a limited liability limited partnership (9275), NMP Holdings, LLC, a Delaware limited liability company (9716), Northstar Mountain Properties, LLC, a Delaware limited liability company (0823), Northstar Iron Horse, LLC, a Delaware limited liability company (1031), Northstar Big Horn, LLC, a Delaware limited liability company (1132), Northstar Village Townhomes, LLC, a Delaware limited liability company (7166), Northstar Trailside Townhomes, LLC, a Delaware limited liability company (7251), Old Greenwood, LLC, a Delaware limited liability company (3812), Old Greenwood Realty Inc., a California corporation (4355), Gray's Station, LLC, a Delaware limited liability company (8308), Tahoe Mountain Resorts, LLC, a Delaware limited liability company (0093), and Tahoe Club Company, LLC, a Delaware limited liability company (5142). The address of each of the Debtors is 126 Riverfront Lane, 5th Floor, PO Drawer 2770, Avon, Colorado 81620.

Bankruptcy Practice and Procedures of the Bankruptcy Court for the District of Delaware (the "Local Rules") for an order (i)(a) approving procedures in connection with the sale of certain of the assets of Debtors Old Greenwood, LLC, Gray's Station, LLC, and Tahoe Club Company, LLC (the "Sale Debtors"); (b) scheduling the related auction and hearing to consider approval of sale; (c) approving procedures related to the assumption of certain of the Sale Debtors' executory contracts and unexpired leases; (d) approving the form and manner of notice thereof; and (e) granting related relief; and (ii)(a) authorizing the sale of such assets of the Sale Debtors free and clear of liens, claims, encumbrances, and other interests, except as provided by the Modified Purchase Agreement; (b) approving the assumption and assignment of certain of the Sale Debtors' executory contracts and unexpired leases related thereto; and (c) granting related relief (the "Motion");[2] the Court having reviewed the Motion and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

AND FURTHER FOUND AND DETERMINED THAT:

A. The Debtors' proposed notice of the Bidding Procedures, the Cure Procedures, the Auction and the hearing to approve any sale of the Sale Debtors' Assets (the

---

[2] Capitalized terms used herein shall have the meaning ascribed to them in the Motion.

"Sale Approval Hearing") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

B. The Bidding Procedures substantially in the form attached hereto as Exhibit A-1 are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Sale Debtors' Assets.

C. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Bidding Procedures attached hereto as Exhibit A-1 are APPROVED.

3. The Bid Deadline shall be set for April 7, 2010, at 5:00 p.m. (prevailing Eastern Time).

4. Subject to the terms of this Order, the Debtors shall have the exclusive right to determine whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been recognized as such prior to the Auction.[3]

---

[3] All rights granted in favor of the Debtors in these Bidding Procedures shall be exercised in accordance with their fiduciary obligations in consultation with the Committee and the Agent.

5.  The Auction, if necessary, shall be held on April 9, 2010 beginning at 9:00 a.m. (prevailing Pacific Time), at the offices of Paul, Hastings, Janofsky & Walker, LLP, 55 Second Street, Twenty-Fourth Floor, San Francisco, California 94105, or at such other place, date and time as may be designated in writing by the Debtors and served on Qualified Bidders via electronic mail.

6.  At such Auction, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale and the Auction shall be open to all creditors, conducted openly and transcribed.

7.  The Debtors, shall determine which offer is the highest and best offer for the Sale Debtors' Assets.

8.  The Sale Approval Hearing shall be held on April 13, 2010 at 11:00 a.m. (prevailing Eastern Time) before this Court, the U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, 6th Floor, Courtroom 1. The deadline to object to the Sale is April 8, 2010 at 4:00 p.m. (prevailing Eastern Time)

9.  The Sale Approval Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Approval Hearing, and the Debtors shall have the exclusive right, in the exercise of their fiduciary obligations and business judgment, to cancel the Sale at anytime.

10.  The following forms of notice are approved: (a) Notice of Sale Procedures, Auction Date, and Sale Approval Hearing, in the form substantially similar to that attached hereto as Exhibit B (the "Procedures Notice") and (b) the Notice to Counterparties to

Executory Contracts and Unexpired Leases of the Sale Debtors That May be Assumed and Assigned (the "Cure Notice"), in the form substantially similar to that attached hereto as Exhibit C.

11. The Debtors will serve a copy of the Procedures Notice together with the Bidding Procedures Order, when entered, on the following parties: (a) the U.S. Trustee, (b) the Debtors' largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions, (c) any parties requesting notices in these cases pursuant to Bankruptcy Rule 2002, (d) all creditors or their counsel known to the Debtors to assert a lien (including a security interest), claim, right, interest or encumbrance of record against all or any portion of the Assets, and (e) all parties who have expressed an interest in purchasing the Assets (the "Potential Bidders") (collectively, the "Notice Parties").

12. The Debtors shall serve the Procedures Notice within three (3) business days following entry of this Order, by first-class mail, postage prepaid as set forth above.

13. The Debtors will serve the Motion and the Cure Notice upon each counterparty to the Assumed Executory Contracts, and their counsel (if known), by no later than March 17, 2010. The Cure Notice will state the date, time and place of the Sale Approval Hearing as well as the date by which any objection to the assumption and assignment of Assumed Executory Contracts must be filed and served. The Cure Notice also will identify the amounts, if any, that the Debtors believe are owed to each counterparty to an Assumed Executory Contract in order to cure any defaults that exist under such contract (the "Cure Amounts"). The Debtors also will serve upon all Notice Parties a complete list of Assumed

Executory Contracts as set forth in the Asset Purchase Agreement and the corresponding Cure Amounts by no later than April 2, 2010. If a Contract or Lease is assumed and assigned pursuant to Court Order, then unless the Assumed Executory Contract counterparty properly files and serves a timely objection to the Cure Amount contained in the Cure Notice on or before April 9, 2010 at 5:00 p.m. (prevailing Eastern Time), the Assumed Executory Contract counterparty will receive no later than one business day following the Closing of the Sale, the Cure Amount as set forth in the Cure Notice, if any, with payment to be made pursuant to the terms of the Prevailing Bidder's Modified Purchase Agreement. If an objection is filed by a counterparty to an Assumed Executory Contract with respect to the Cure Amounts, such objection must set forth a specific default in any executory contract or unexpired lease and claim a specific monetary amount that differs from the amount, if any, specified by the Debtors in the Cure Notice.

14. If any counterparty objects for any reason to the assumption and assignment of an Assumed Executory Contract, including, but not limited to, whether such contract may be assumed and assigned (a "Cure Amount Objection"), the counterparty must file the objection by no later than (i) 5:00 p.m. (prevailing Eastern Time) on April 9, 2010 or (ii) the date otherwise specified in the Cure Notice (or, alternatively, the date set forth in the motion to assume such Assumed Executory Contract if such contract is to be assumed and assigned after the Sale Approval Hearing), provided, however, that any counterparty may raise at the Sale Approval Hearing an objection to the assumption and assignment of the Assumed Executory Contract solely with respect to the Prevailing Bidder's ability to provide adequate assurance of future performance under the Assumed Executory Contract. In the event that the Debtors and the non-debtor party cannot resolve the Cure Amount Objection, the Debtors may, in their

discretion, segregate any disputed Cure Amounts pending the resolution of any such disputes by the Court or mutual agreement of the parties.

15. The Prevailing Bidder shall satisfy any requirements regarding adequate assurance of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Executory Contract, and the failure to provide adequate assurance of future performance to any counterparty to any Assumed Executory Contract shall not excuse the Prevailing Bidder from performance of any and all of its obligations pursuant to the Prevailing Bidder's Modified Purchase Agreement. The Court shall make any and all determinations concerning adequate assurance of future performance under the Assumed Executory Contracts pursuant to section 365(b) of the Bankruptcy Code at the Sale Approval Hearing. Cure Amounts disputed by any counterparty will be resolved by the Court at the Sale Approval Hearing.

16. Except to the extent otherwise provided in the Modified Purchase Agreement with the Prevailing Bidder, the Sale Debtors shall be relieved of all liability accruing or arising under the Assumed Executory Contracts after the assumption and assignment of the Assumed Executory Contracts pursuant to section 365(k) of the Bankruptcy Code.

17. Nothing in this Order, the Bidding Procedures, any of the attached forms of Notices or otherwise, shall be construed to modify, impair or adversely affect, in any way, any of the liens, claims, rights, protections and interests granted in favor of the DIP lenders as set forth in (i) the DIP credit agreement, and (ii) the Orders entered by the Court approving the DIP credit agreement, including, without limitation, the right of the DIP lenders and the agent to the DIP lenders to consent to any sale arising or resulting from the Bidding Procedures.

RLF1 3545242v.1
LEGAL_US_E # 87431967.3

18.  Nothing in this Order, the Bidding Procedures, any of the attached forms of Notices or otherwise shall be construed to modify, impair or adversely affect in any way, the rights of any committee appointed in the Bankruptcy Cases to object to the terms of the sale that the Debtors seek approval of at the Sale Approval Hearing.

19.  Notwithstanding anything in this Order, the Bidding Procedures, any of the attached forms of Notices, deadline or otherwise: (a) the Debtors shall not proceed with any sale of the SG Collateral[4] unless the entire indebtedness and sums owed to SG (the "SG Indebtedness") under the SG Loan Documents is paid in cash in full upon closing of the Sale or SG provides further written consent to such a sale, (b) any prospective bidder that makes a bid on Assets that includes the SG Collateral shall be required to allocate the portion of the bid purchase price that is applicable to the SG Collateral; (c) SG shall be provided with copies of all bids that are for some or all of SG Collateral when received by the Debtors and, in any case, on the Bid Deadline or immediately at the Auction; (d) SG shall have the right to credit bid up to the full amount of the SG Indebtedness as a bid for the SG Collateral (including at the Auction or otherwise) by a written submission sent by SG to Debtors counsel; (e) notwithstanding any other deadline, SG may make a credit bid for the SG Collateral by 5:00 p.m. prevailing Eastern Time on the second business day after the day SG receives a copy of the prevailing or highest and best

---

[4] Societe Generale ("SG") is the senior secured lender to Gray's Station. The term "SG Collateral" means all property that secures SG's loan to Gray's Station made pursuant to a Construction Loan Agreement and secured by, among other things, a Deed of Trust, Security Agreement, Assignment of Rents and Financing Statement, including eighty-one (81) lots in Gray's Crossing, Phases 2 and 3, plus two (2) additional development lots referred to as "Lot F" and the "Townhome Lot", together with all of Gray's Station's rights, titles and interests in and to all related entitlements, development rights, permits, contracts, improvements, plans and specifications, and together with all profits and proceeds of the foregoing. The term "SG Loan Documents" means the Construction Loan Agreement, Deed of Trust, Security Agreement, Assignment of Rents and Financing Statement, and all other documents evidencing, governing and securing the loan from SG to Gray's Station, as amended from time to time.

bid (as so designated by the Debtors) for any part of the SG Collateral; (f) if SG's credit bid exceeds the cash portion of a competing bid that is allocated to the SG Collateral, SG shall be deemed to be the highest and best bidder for the SG Collateral; (g) the cash proceeds of a permitted sale of the SG Collateral sufficient to pay the SG Indebtedness shall be paid directly to SG at the Closing, rather than being delivered to the agent for the DIP lenders for later delivery to SG; (h) SG shall not be required to execute a Modified Purchase Agreement; rather, if SG is the successful bidder by credit bid, the sale transaction shall be consummated by a mutually acceptable deed free and clear of all liens, claims, encumbrances and interests; and (i) SG is a Qualified Bidder, without need for a deposit, with respect to the SG Collateral and any credit bid made by SG shall constitute a "Qualified Bid."

20. Notwithstanding anything in this Order, the Bidding Procedures, any of the attached forms of Notices or otherwise to the contrary, no Sale transaction fee shall be paid to the Debtors' financial advisor, Houlihan Lokey Howard & Zukin, from the proceeds of SG Collateral, except to the extent of any proceeds remaining after the full satisfaction of the SG Indebtedness.

21. Notwithstanding anything to the contrary in this Order, no provision of this Order shall constitute the Court's determination of the relative priority of SG's liens in the SG Collateral.

22. Nothing in this Order shall fix or purport to fix the extent, validity, or priority of any alleged lien, statutory or subrogation rights in the assets of Gray's Station, LLC, Old Greenwood, LLC and/or Tahoe Club Company, LLC.

RLF1 3545242v.1
LEGAL_US_E # 87431967.3

23. Notwithstanding anything to the contrary in this Order, if a sale of the SG Collateral otherwise permitted by this Order is in exchange for, in whole or in part, a permitted credit bid by SG then, with respect to any part of the SG Collateral, if any, that is subject to a valid, enforceable and perfected lien, right of subrogation, or right under statute held by IFIC or the Town of Truckee or Truckee Donner Public Utility District Community Facilities District No. 04-1 or the Truckee Donner Public Utility District Community Facilities District No. 03-1 (collectively, the "Districts") against such SG Collateral which is senior in priority in such SG Collateral under otherwise applicable non-bankruptcy law to the liens and security interests under the SG Loan Documents in or against such SG Collateral, the conveyance of such part of the SG Collateral shall be subject, as applicable, to such senior lien, senior statutory right or senior subrogation right of IFIC, the Town of Truckee or the Districts. No party makes any admissions concerning, and all parties reserve their rights, claims and defenses with respect to, the existence, extent, perfected status, validity and priority of any alleged lien or statutory right or subrogation right asserted by or on behalf of IFIC, the Town of Truckee or the Districts against the SG Collateral. This provision does not apply to any sale outside the Auction.

24. Notwithstanding anything in the Motion, this Order, the Bidding Procedures, any of the attached forms of Notices or otherwise to the contrary, the term "Lenders" as used therein includes, in addition, Barclays Bank PLC as DIP Lender. Nothing in this Order shall modify or otherwise affect (i) the Order (A) Authorizing Debtors to Obtain Interim Postpetition Financing to Grant Security Interests and Superpriority Administrative Expense Status Pursuant to Bankruptcy Code §§ 364(c) and 364(d); and (B) Scheduling a Final Hearing Pursuant to Fed. R. Bank. P. 4001 and (ii) the Final Order (A) Authorizing Debtors to Obtain

Postpetition Financing to Grant Security Interests and Superpriority Administrative Expense Status Pursuant to Bankruptcy Code §§ 364(c) and 364(d).

25. The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: March 31, 2010
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

RLF1 3545242v.1
LEGAL_US_E # 87431967.3