**Exhibit A**

**Debtors' Chapter 11 Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

|  |  |
|---|---|
| EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P., ET AL., | **JOINTLY ADMINISTERED CASE NO. 10-10452** |

Debtors.

(includes:

| | |
|---|---|
| NMP Holdings, LLC; | **10-10455** |
| Northstar Mountain Properties, LLC; | **10-10463** |
| Northstar Iron Horse, LLC; | **10-10462** |
| Northstar Big Horn, LLC; | **10-10460** |
| Northstar Village Townhomes, LLC; | **10-10459** |
| Northstar Trailside Townhomes, LLC; | **10-10461** |
| Old Greenwood, LLC; | **10-10457** |
| Old Greenwood Realty Inc; | **10-10458** |
| Gray's Station, LLC; | **10-10456** |
| Tahoe Mountain Resorts, LLC; | **10-10454** |
| Tahoe Club Company, LLC) | **10-10453** |

Chapter 11 Cases
Judge Brendan Linehan Shannon

---

## DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED

**RICHARDS, LAYTON & FINGER, P.A.**

Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
L. Katherine Good (No. 5101)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**

Richard A. Chesley (IL 6240877)
Gregory S. Otsuka (IL 6270388)
Hilla Uribe Jimenez (IL 6293064)
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

**Counsel for the Debtors and Debtors in Possession**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARTICLE I.        DEFINITIONS AND INTERPRETATION ............................... 1

    A.    Defined Terms ......................................................................... 1

    B.    Other Terms ........................................................................... 13

    C.    Exhibits ................................................................................. 13

ARTICLE II.       CLASSIFICATION & TREATMENT OF CLAIMS ................. 13

    A.    Summary ................................................................................ 13

    B.    Classification ......................................................................... 13

    C.    Unclassified Claims: Administrative Claims, Priority Tax Claims, Secured Tax Claims and DIP Lenders Secured Claims ..................................................... 16

    D.    Classes of Claims and Interests: Classification, Treatment and Voting Rights ............................................................................... 18

ARTICLE III.      ACCEPTANCE AND REJECTION OF THE PLAN ................ 26

    A.    Impaired Classes of Claims Entitled to Vote ...................... 26

    B.    Classes Deemed to Accept the Plan ..................................... 26

    C.    Classes Deemed to Reject the Plan ...................................... 26

    D.    Nonconsensual Confirmation ............................................... 27

ARTICLE IV.      MEANS FOR IMPLEMENTATION OF THE PLAN ............... 27

    A.    Continued Corporate Existence ........................................... 27

    B.    New EWRD V ...................................................................... 27

    C.    Dissolution of Gray's ............................................................ 27

    D.    The Dissolving Subsidiaries ................................................ 28

    E.    Transfer of Assets ................................................................ 28

    F.    Asset Sales ............................................................................ 28

    G.    Tahoe Club Member Rights .................................................. 29

    H.    Consummation of the Transactions Contemplated by the PSA ........................... 29

    I.    Terms of New Money Investment ........................................ 29

    J.    Execution of Documents and Limited Liability Action ....... 29

    K.    NMP Consents ..................................................................... 31

    L.    Effectuating Documents; Further Transactions .................. 32

ARTICLE V.       TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................................. 33

    A.    Rejection of Remaining Executory Contracts and Unexpired Leases ................. 33

LEGAL_US_E # 86955772.17

B.     Assumption and Cure of Executory Contracts.................................................... 33

C.     Cure of Defaults of Assumed Executory Contracts............................................ 33

D.     Effect of Assumption Assignment ....................................................................... 34

E.     Rejection Damages Bar Date .............................................................................. 34

F.     Insurance Policies ............................................................................................... 34

G.     Trailside Closings ............................................................................................... 35

ARTICLE VI.     DISTRIBUTIONS ................................................................................. 35

A.     Distributions on Allowed Unsecured Claims ..................................................... 35

B.     Date of Distributions........................................................................................... 35

C.     Disbursing Agent ................................................................................................ 36

D.     Delivery of Distributions .................................................................................... 36

E.     Unclaimed Distributions ..................................................................................... 36

F.     Manner of Payment............................................................................................. 36

G.     Limitation on Cash Distributions........................................................................ 36

H.     Allocation of Plan Distributions Between Principal and Interest ....................... 36

ARTICLE VII.     PROCEDURES FOR TREATING DISPUTED CLAIMS .......................... 37

A.     Claims Administration Responsibility................................................................ 37

B.     Procedures for Treating and Resolving Disputed and Contingent Claims .......... 38

C.     Setoffs and Recoupment ..................................................................................... 38

D.     Allowance and Disallowance of Claims Subject to Section 502 of the
Bankruptcy Code ............................................................................................... 38

E.     Adjustment to Certain Claims Without a Filed Objection................................... 39

F.     Resolution of Administrative Claims and Claims ............................................... 39

G.     Offer of Judgment............................................................................................... 39

H.     Amendments to Claims....................................................................................... 39

I.     Cancellation of Instruments and Agreements..................................................... 39

J.     No Interest on Claims ......................................................................................... 40

K.     Withholding Taxes.............................................................................................. 40

ARTICLE VIII.     EFFECT OF CONFIRMATION .............................................................. 40

A.     Vesting of Assets ................................................................................................ 40

B.     Binding Effect..................................................................................................... 40

C.     Discharge of Claims and Termination of Interests ............................................. 40

D. Injunction ............................................................................................................ 41

E. Term of Injunctions or Stays ................................................................................ 41

F. Exculpation and Releases ..................................................................................... 42

G. Reservation of Causes of Action/Reservation of Rights ...................................... 42

H. Avoidance Actions/Objections ............................................................................. 42

I. Discharge of the Debtors' Professionals ............................................................... 42

ARTICLE IX. CONDITIONS PRECEDENT ...................................................................... 43

A. Conditions Precedent to Effectiveness ................................................................. 43

B. Waiver of Conditions ........................................................................................... 43

C. Satisfaction of Conditions .................................................................................... 43

ARTICLE X. ADMINISTRATIVE PROVISIONS .............................................................. 44

A. Retention of Jurisdiction by the Bankruptcy Court ............................................. 44

B. Payment of Statutory Fees ................................................................................... 45

C. Headings ............................................................................................................... 45

D. Binding Effect of Plan .......................................................................................... 45

E. Final Order ............................................................................................................ 46

F. Withholding and Reporting Requirements ........................................................... 46

G. Tax Exemption and Expedited Tax Determination .............................................. 46

H. Governing Law ..................................................................................................... 46

I. Plan Supplement ................................................................................................... 47

J. Severability ........................................................................................................... 47

K. Revocation ............................................................................................................ 47

L. Substantial Consummation ................................................................................... 47

M. Construction .......................................................................................................... 47

N. Conflict ................................................................................................................. 48

O. Amendments and Modifications ........................................................................... 48

P. Notices .................................................................................................................. 48

Q. Filing of Additional Documents ........................................................................... 49

R. Direction to a Party .............................................................................................. 49

S. Successors and Assigns ......................................................................................... 49

# INTRODUCTION

Debtors NMP Holdings, LLC, Northstar Mountain Properties, LLC, Northstar Iron Horse, LLC, Northstar Big Horn, LLC, Northstar Village Townhomes, LLC, Northstar Trailside Townhomes, LLC, Old Greenwood, LLC, Old Greenwood Realty Inc., Gray's Station, LLC, Tahoe Mountain Resorts, LLC, and Tahoe Club Company, LLC propose this Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code. The Plan constitutes a separate chapter 11 plan for each of the Debtors except for EWRD V, which is not subject to the Plan and will be resolved through a separate plan of liquidation or alternative process.

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

### A. Defined Terms

Unless otherwise provided in this Plan, all terms used herein shall have the meanings assigned to such terms in the Bankruptcy Code or the Bankruptcy Rules. For the purposes of this Plan, the following terms (which appear in this Plan in capitalized form) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and to the plural form of the terms defined, unless the context otherwise requires.

1. **"Administrative Claim"** shall mean any Claim for costs and expenses of administration of these Chapter 11 Cases with priority under Bankruptcy Code section 507(a)(2), including, without limitation, costs and expenses allowed under Bankruptcy Code section 503(b), the actual and necessary costs and expenses of preserving the Estates of the Debtors, any Claim arising under Bankruptcy Code section 503(b)(9) with respect to which an Administrative Expense Request was filed on or prior to the Bar Date established for Claims, any claim relating to the right of reclamation to the extent afforded such priority under the Bankruptcy Code, any Professional Fee Claims, and any fees or charges assessed against the Estates of the Debtors under 28 U.S.C. §1930.

2. **"Administrative Expense Request"** shall mean a request for allowance and/or payment of an Administrative Claim in the form to be attached to the Confirmation Order.

3. **"Administrative Expense Request Deadline"** shall mean the date set by the Confirmation Order as the deadline for filing Administrative Expense Requests for Administrative Claims (excluding Professional Fee Claims) that are not subject to the Bar Date Order, which deadline shall be thirty (30) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

4. **"Affiliate"** has the meaning set forth at section 101(2) of the Bankruptcy Code.

5. **"Allowed"** shall mean with respect to any Claim or Interest, respectively, a Claim or Interest that: (a) has been allowed by a Final Order of the Bankruptcy Court; (b) has been Scheduled, other than a Claim that is Scheduled as disputed, contingent or unliquidated, which Scheduled claim has not been superseded by filed Proof of Claim; (c) is the subject of a

timely Proof of Claim that has been filed as of the relevant Bar Date and no objection thereto, or motion to subordinate, disallow or otherwise limit recovery, has been made prior to the claim objection deadline provided in Article VII of the Plan; or (d) has been specifically "Allowed" pursuant to the Plan. An "Allowed Claim" shall not include interest on the amount of any Claim except (i) with respect to an Allowed Claim filed pursuant to Bankruptcy Code section 506(b), (ii) as specifically provided in the Plan, or (iii) as provided by Final Order of the Bankruptcy Court. If the Debtors shall object to any Claim in accordance with section 502(d) of the Bankruptcy Code, such Claim shall not be an Allowed Claim until the avoidable transfer is returned, a Final Order has been entered that no avoidable transfer exists, or an agreement or settlement is reached that is approved by the Bankruptcy Court or pursuant to provisions in the Plan.

6.  **"Allowed [_____] Claim" or "Allowed [_____] Interest"** shall mean an Allowed Claim or Allowed Interest, as the case may be, of a specified Class or an Allowed Claim that is an Administrative Claim, Priority Tax Claim, Priority Claim, General Unsecured Claim, Convenience Class Claim or Interest Related Claim, as the case may be.

7.  **"Assumed Contracts Schedule"** shall mean the list of Executory Contracts assumed by the New EWRD V Entities, which list will be included in the Plan Supplement.

8.  **"Avoidance Action(s)"** shall mean all claims and Causes of Action arising under chapter 5 of the Bankruptcy Code.

9.  **"Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code, as in effect on the Petition Date or thereafter amended and applicable to the Chapter 11 Cases, as the case may be.

10.  **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware or any court having competent jurisdiction over the Chapter 11 Cases.

11.  **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure effective in accordance with the provisions of 28 U.S.C. §2075, as in effect on the Petition Date or thereafter amended and applicable to the Chapter 11 Cases, as the case may be.

12.  **"Barclays"** shall mean Barclays Bank PLC.

13.  **"Bar Date"** shall mean April 14, 2010 at 5:00 p.m. (prevailing Eastern Time), and such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, excluding governmental units, asserting a pre-petition Claim must have filed a Proof of Claim or be forever barred from asserting such Claim.

14.  **"Bar Date Order"** shall mean that certain order of the Bankruptcy Court establishing April 14, 2010 at 5:00 p.m. (prevailing Eastern Time), as the Bar Date for filing Proofs of Claim, with only those exceptions permitted thereby.

15.  **"Big Horn"** shall mean Northstar Big Horn, LLC.

16.    **"Booth Creek"** shall mean Booth Creek Ski Holdings Inc.

17.    **"Business Day"** shall mean a day other than Saturday, Sunday, a legal holiday as defined in Bankruptcy Rule 9006(a) or other day on which the Bankruptcy Court is authorized or required by law to close.

18.    **"Cash"** shall mean cash and cash equivalents (including, but not limited to, bank deposits, checks and similar items) in certified or immediately available funds.

19.    **"Causes of Action"** shall mean all claims, causes of action, third-party claims, counterclaims and crossclaims (including but not limited to any Causes of Action described in the Disclosure Statement) of the Debtors and/or their Estates that are pending on the Effective Date or may be instituted after the Effective Date against any Person.

20.    **"Chapter 11 Cases"** shall mean the above-captioned chapter 11 cases of the Debtors pending in the Bankruptcy Court and jointly administered under Case No. 10-10452 (BLS).

21.    **"Citizens"** shall mean Citizens Bank of Northern California.

22.    **"Citizens Collateral"** shall mean the collateral securing the Citizens Facility.

23.    **"Citizens Facility"** shall mean that certain credit agreement dated as of July 16, 2007 by and among Gray's and Citizens.

24.    **"Citizens Model Collateral"** shall mean the collateral securing the Citizens Model Facility.

25.    **"Citizens Model Facility"** shall mean that certain credit agreement dated as of December 26, 2006 by and among Greenwood and Citizens.

26.    **"Citizens Model Secured Claim"** shall mean all claims of Citizens against any of the Debtors and/or their Estates that arise from or relate to the Citizens Model Facility.

27.    **"Citizens Secured Claim"** shall mean all claims of Citizens against any of the Debtors and/or their Estates that arise from or relate to the Citizens Facility.

28.    **"Claims"** shall mean any claim(s) against the Debtors or any of them as such term is defined in section 101(5) of the Bankruptcy Code.

29.    **"Class"** shall mean any category of Holders of Claims or Interests specified in Article II.B of the Plan.

30.    **"Club"** shall mean Tahoe Club Company, LLC.

31. **"Confirmation Date"** shall mean the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases by the Bankruptcy Court.

32. **"Confirmation Hearing"** shall mean the hearing at which the Bankruptcy Court considers confirmation of the Plan.

33. **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan and approving the transactions contemplated herein, pursuant to section 1129 of the Bankruptcy Code.

34. **"Contingent Claim"** shall any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the Debtor now or hereafter exists or previously existed.

35. **"Convenience Class Claims"** are General Unsecured Claims of a single holder of a type that (A) would otherwise be included in Classes 7.B, 7.G, 7.J and 7.K(a) that are either (i) $1,000 or less in the aggregate or (ii) greater than $1,000 in the aggregate, but as to which the holder thereof has made a Convenience Class Election.

36. **"Convenience Class Election"** shall mean the election on the ballot for voting to accept the Plan by a single holder of General Unsecured Claims that are greater than $1,000 in the aggregate to have such General Unsecured Claims treated as a single Convenience Class Claim. Holders of Claims making the Convenience Class Election are deemed to have accepted the Plan and are not entitled to vote on the Plan.

37. **"CRDI"** shall mean Crescent Resort Development, Inc., including, without limitation, any affiliates or subsidiaries that are created to effectuate the transactions contemplated in the Plan.

38. **"Creditor"** shall have the meaning set forth in section 101(10) of the Bankruptcy Code.

39. **"Debtors"** shall mean, collectively, EWRD V, NMPH, NMP, Iron Horse, Big Horn, Village Townhomes, Trailside Townhomes, Greenwood, Realty, Gray's, Resorts and Club.

40. **"DIP Borrowers"** shall mean, collectively, EWRD V, NMPH, Trailside Townhomes, Greenwood, Club and NMP.

41. **"DIP Facility"** shall mean that certain debtor-in-possession financing and security agreement dated as of February 18, 2010, by and among the DIP Borrowers and the DIP Lenders.

42. **"DIP Lenders"** shall mean Barclays, in its capacity as a DIP Lender and agent for the DIP Lenders, and any other lenders identified in the DIP Facility.

43.    **"DIP Lenders Collateral"** shall mean the collateral securing the DIP Facility.

44.    **"DIP Lenders Secured Claim"** shall mean all claims of the DIP Lenders against any of the Debtors and/or their Estates that may arise from or relate to the DIP Facility.

45.    **"Disallowed Claim"** shall mean a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed, (c) is not Scheduled and as to which no Proof of Claim or Administrative Expense Request has been timely filed or deemed timely filed with the Voting and Claims Agent, (d) has been withdrawn by agreement of the Holder thereof and the Debtors, or (e) has been withdrawn by the Holder thereof.

46.    **"Disbursing Agent"** shall mean any entity retained as disbursing agent in the Confirmation Order.

47.    **"Disclosure Statement"** shall mean that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

48.    **"Disputed Claim"** shall mean a Claim or any portion thereof that is neither an Allowed Claim nor a Disallowed Claim, including, without limitation, all Claims that (i) have not been Scheduled by the Debtors or have been Scheduled as unknown, contingent, unliquidated, disputed or at zero, and no Proof of Claim has been filed with respect to such Claim, or (ii) are the subject of an objection or other challenge or Cause of Action filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; provided, however, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

49.    **"Dissolving Subsidiaries"** shall mean, collectively, each of NMPH, Iron Horse and Big Horn.

50.    **"Distribution"** shall mean the distribution, in accordance with the Plan, of Cash or other property, as the case may be, or the Cash or other property as distributed.

51.    **"Distribution Date"** shall mean the date after all Claims or Interests have either been Allowed or Disallowed in a particular Class.

52.    **"Districts"** shall mean, collectively, Gray's District, Greenwood District and Northstar District.

53.    **"East West"** shall mean East West Partners, Inc., or an affiliate thereof.

54.    **"Effective Date"** shall mean the first Business Day after the Confirmation Order has become a Final Order, or such earlier or later date agreed to by the Debtors and the New Money Investors.

55. **"Estates"** shall mean the estates of the Debtors created by section 541 of the Bankruptcy Code.

56. **"EW Investor"** shall mean East West or an affiliate thereof.

57. **"EWRD V"** shall mean East West Resort Development V., L.P., L.L.L.P.

58. **"Executory Contract"** shall mean any executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, between any Debtor and any other Person.

59. **"Face Amount"** shall mean (i) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount, not including interest, claimed by the Holder of such Claim in any Proof of Claim timely filed or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (ii) when used in reference to an Allowed Claim, the allowed amount of such Claim.

60. **"Final Decree"** shall mean the decree contemplated under Bankruptcy Rule 3022.

61. **"Final Order"** shall mean an order or judgment of the Bankruptcy Court as entered on the docket of the Chapter 11 Cases that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or to seek reargument, reconsideration, amended findings or conclusions, or rehearing has run or as to which any right to appeal, reargue, petition for certiorari or to seek rehearing, reconsideration, amended findings or conclusions, has been waived in writing or, if an appeal, petition for certiorari, request for reargument, reconsideration, amended findings or conclusions, or rehearing thereof has been pursued or granted then such an appeal, reargument, reconsideration, request for amended findings or conclusions, petition for certiorari or rehearing has been denied, and the time to take any further appeal or to seek certiorari or further reargument, reconsideration, amended findings or conclusions, or rehearing has expired. Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order confirming the Plan is concerned, Final Order means such order or judgment with respect to which no stay is in effect.

62. **"Full Golf Membership"** shall mean that certain type of membership in the Tahoe Club commonly referred to as *"Full Golf Membership."*

63. **"General Unsecured Claim"** shall mean any Claim that is not an Administrative Claim, Priority Claim, Priority Tax Claim, Convenience Class Claim, Intercompany Claim or Interest Related Claim.

64. **"Golf Member"** shall mean any member of the Tahoe Club who has a Full Golf Membership or a Signature Golf Membership.

65. **"Golf Member Club General Unsecured Claim"** shall mean any General Unsecured Claim arising from a Golf Club Member's membership in the Club.

66. **"Governmental Bar Date"** shall mean September 11, 2010 at 5:00 p.m. prevailing Eastern time.

67.     **"Gray's"** shall mean Gray's Station, LLC.

68.     **"Gray's District"** shall mean the Truckee Donner Public Utility District Gray's Crossing Community Facilities District No. 04-1.

69.     **"Gray's Mello-Roos Bonds"** shall mean those certain bonds issued pursuant to the terms and provisions of the Mello-Roos Act to finance the development and construction of land improvements and public utilities at the Gray's Property.

70.     **"Gray's Property"** shall mean the land improvements and public utilities at Gray's District.

71.     **"Greenwood"** shall mean Old Greenwood, LLC.

72.     **"Greenwood District"** shall mean the Truckee Donner Public Utility District Old Greenwood Community Facilities District No. 03-1.

73.     **"Greenwood Mello-Roos Bonds"** shall mean those certain bonds issued pursuant to the terms and provisions of the Mello-Roos Act to finance the development and construction of land improvements and public utilities at the Greenwood Property.

74.     **"Greenwood Property"** shall mean the land improvements and public utilities at Greenwood District.

75.     **"HF Holding"** shall mean HF Holding Corp.

76.     **"Holder"** shall mean the owner or holder of any Claim or Interest.

77.     **"Impaired"** shall have the meaning set forth in section 1124 of the Bankruptcy Code.

78.     **"Intercompany Claim"** shall mean a Claim of any Debtor against any other Debtor, regardless of whether such Claim arose before, on or after the Petition Date.

79.     **"Interest Related Claim"** shall mean any Claim, including pursuant to section 510(b) of the Bankruptcy Code, against the Debtors arising from the purchase or sale of an Interest in the Debtors, or any Claim against the Debtors by a Person that asserts equitable or contractual rights of reimbursement, contribution or indemnification arising from such Claim.

80.     **"Interest"** shall mean, with respect to any Debtor, any "equity security" as such term is defined in section 101(16) of the Bankruptcy Code.  Interest shall also include, without limitation, all stock, partnership, membership interest, warrants, options or other rights to purchase or acquire any equity interests in the Debtors.

81.     **"Iron Horse"** shall mean Northstar Iron Horse, LLC.

82.     **"IRS"** shall mean the Internal Revenue Service.

83.     **"JPMorgan"** shall mean JPMorgan Chase Bank, N.A.

84.	**"JPMorgan Collateral"** shall mean the collateral securing the JPMorgan Facility.

85.	**"JPMorgan Facility"** shall mean that certain credit agreement dated as of March 31, 2004 by and among Greenwood and JPMorgan.

86.	**"JPMorgan Secured Claim"** shall mean all claims of JPMorgan against any of the Debtors and/or their Estates that arise from or relate to the JPMorgan Facility.

87.	**"Lien"** shall mean any lien, mortgage, charge, security interest, right of first refusal, option, nonexecutory purchase agreement, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

88.	**"Local Rules"** shall mean Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

89.	**"Mello-Roos Act"** shall mean that certain Mello-Roos Community Facilities Act of 1982, California Government Code Sections 53311 *et seq.*

90.	**"Mello-Roos Bonds"** shall mean, collectively, the Gray's Mello-Roos Bonds, Greenwood Mello-Roos Bonds and Northstar Mello-Roos Bonds.

91.	**"New EWRD V"** the new Delaware limited liability company that will replace EWRD V as the holding company and be the 100% owner of the Reorganized Subsidiaries except as otherwise set forth in the Plan.

92.	**"New EWRD V Assets"** shall mean (i) any assets held by the Debtors prior to and after the Petition Date, (ii) those Executory Contracts listed on the Assumed Contracts Schedule.

93.	**"New EWRD V Entities"** shall mean, collectively, New EWRD V and the Reorganized Subsidiaries.

94.	**"New EWRD V Manager"** shall mean a new entity created, owned and controlled by East West, in its role as manager of the Projects pursuant to the New EWRD V Operating Agreement, or the Reorganized Management Agreement, as agreed by the parties.

95.	**"New EWRD V Membership Interests"** shall mean the membership interests of New EWRD V to be issued pursuant to the Plan.

96.	**"New EWRD V Sub-Manager"** shall mean East West in its role as sub-manager of the Projects pursuant to the New Submanagement Agreements.

97.	**"New EWRD V Operating Agreement"** shall mean the limited liability operating agreement of New EWRD V, which will be included in the Plan Supplement.

98.	**"New Money Investment"** shall mean the New Money Investors' investment in the New EWRD V Entities pursuant to the Plan.

99.    **"New Money Investors"** shall mean CRDI, or an affiliate thereof, and EW Investor, or an affiliate thereof.

100.    **"New Submanagement Agreements"** shall mean the submanagement agreements between New Sub-Manager and certain of the Reorganized Subsidiaries, the forms of which will be included in the Plan Supplement.

101.    **"NMP"** shall mean Northstar Mountain Properties, LLC.

102.    **"NMPH"** shall mean NMP Holdings, LLC.

103.    **"Northstar District"** shall mean the Northstar Community Services District Community Facilities District No. 1.

104.    **"Northstar Mello-Roos Bonds"** shall mean those certain bonds issued pursuant to the terms and provisions of the Mello-Roos Act to finance the development and construction of land improvements and public utilities at the Northstar Property.

105.    **"Northstar Property"** shall mean land improvements and public utilities at Northstar Village and Northstar Highlands.

106.    **"Person"** shall mean any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or other entity.

107.    **"Petition Date"** shall mean February 16, 2010, the date the Debtors commenced the Chapter 11 Cases.

108.    **"Plan"** shall mean this Joint Chapter 11 Plan of Reorganization (as the same may be modified or amended by the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules) and any exhibits hereto and any documents incorporated herein by reference.

109.    **"Plan Supplement"** shall mean the supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan, including without limitation the Assumed Contract Schedule, the New EWRD V Operating Agreement, the New Submanagement Agreements and the Reorganized Management Agreement.

110.    **"Plumas"** shall mean Plumas Bank.

111.    **"Plumas Collateral"** shall mean the collateral securing the Plumas Facility.

112.    **"Plumas Facility"** shall mean that certain credit agreement dated as of December 19, 2005 by and among Greenwood and Plumas.

113. **"Plumas Loan Documents"** means all documents, including the Plumas Facility, evidencing, governing and securing the loan from Plumas to Greenwood, as amended from time to time.

114. **"Plumas Secured Claim"** shall mean all claims of Plumas against any of the Debtors and/or their Estates that arise from or relate to the Plumas Facility.

115. **"Post-Confirmation Expense"** shall mean any fees, costs and expenses (including, without limitation, U.S. Trustee's fees, attorneys' fees, the fees of other professionals, and any taxes imposed on the New EWRD V Assets) necessary to complete the reorganization of the Debtors and their Estates after the Effective Date.

116. **"Priority Claim"** shall mean a Claim entitled to priority pursuant to section 507 of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

117. **"Priority Tax Claim"** shall mean any tax Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

118. **"Pro Rata"** shall mean the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless the Plan provides otherwise.

119. **"Professional Fee Claim"** shall mean (i) all fees and expenses claimed by Professionals accrued on or before the Effective Date which remain unpaid as of the Effective Date and (ii) any fees and expenses accrued by counsel to the Debtors subsequent to the Effective Date in connection with the prosecution, including prosecution or resolution of any dispute or objection, of any final application for fees and expenses.

120. **"Professional"** shall mean a Person (i) employed by the Debtors pursuant to a Final Order in accordance with sections 327, 328 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been Allowed under section 503(b)(4) of the Bankruptcy Code by the Bankruptcy Court pursuant to a Final Order.

121. **"Project"** shall mean real estate owned in whole or in part by a Debtor or an entity in which a Debtor owns an interest, directly or indirectly.

122. **"Proof of Claim"** shall mean a proof of claim filed in the Chapter 11 Cases pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

123. **"Protected Party"** shall mean any of the Debtors, the Estates, New EWRD V, the New Money Investors, the DIP Lenders and the Support Parties and their respective officers, directors, current (but not former) employees, members, shareholders, advisors, attorneys, representatives, professionals and other agents.

124.    **"PSA"** shall mean that certain plan support agreement dated as of February 12, 2010 by and among the Debtors, HF Holding, Barclays, CRDI and TLH.

125.    **"Realty"** shall mean Old Greenwood Realty, Inc.

126.    **"Reorganized NMP"** shall mean NMP in the form that it shall have on and after the Effective Date after the implementation of the Plan.

127.    **"Reorganized Management Agreement"** shall mean the management agreemens between New EWRD V Manager and New EWRD V, the form of which will be included in the Plan Supplement.

128.    **"Reorganized Subsidiaries"** shall mean, collectively, each of NMP, Greenwood, Club, Village Townhomes, Resorts, Realty and Trailside Townhomes in the form that each shall have on and after the Effective Date after the implementation of the Plan.

129.    **"Resorts"** shall mean Tahoe Mountain Resorts, LLC.

130.    **"Scheduled"** with respect to any Claim, shall mean listed on the Schedules.

131.    **"Schedules"** shall mean the Statements of Financial Affairs and Schedules of Assets and Liabilities filed by the Debtors with the Bankruptcy Court in the Chapter 11 Cases under Bankruptcy Rule 1007, as such Statements of Financial Affairs and Schedules of Assets and Liabilities have been or may be amended or supplemented from time to time.

132.    **"Secretary of State"** shall mean the Secretary of State of the State of Delaware.

133.    **"Secured Claims"** shall mean, collectively, the DIP Lenders Secured Claim, the Citizens Secured Claim, the Citizens Model Secured Claim, the JPMorgan Secured Claim, the Plumas Secured Claim and the SocGen Secured Claim.

134.    **"Secured Tax Claims"** means any secured claim against a Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

135.    **"Signature Golf Membership"** shall mean that certain type of membership in the Tahoe Club commonly referred to as *"Signature Golf Membership."*

136.    **"SocGen"** shall mean Societe Generale.

137.    **"SocGen Collateral"** shall mean the collateral securing the SocGen Facility.

138.    **"SocGen Facility"** shall mean that certain credit agreement dated as of July 29, 2005 by and among Gray's and SocGen.

139. **"SocGen Loan Documents"** shall mean all documents, including the SocGen Facility, evidencing, governing and securing the loan from SocGen to Gray's, as amended from time to time.

140. **"SocGen Secured Claim"** shall mean all claims of SocGen against any of the Debtors and/or their Estates that arise from or relate to the SocGen Facility.

141. **"Sports Member"** shall mean any member of the Tahoe Club who has a Sports Membership.

142. **"Sports Membership"** shall mean that certain type of membership in the Tahoe Club commonly referred to as *"Sports Membership."*

143. **"Submanagement Agreements"** shall mean those certain submanagement agreements between the Projects and East West.

144. **"Support Party"** shall mean any party to the PSA.

145. **"Tahoe Club"** shall mean that certain recreational club operated by the Club.

146. **"TLH"** shall mean Trimont Land Holdings, Inc.

147. **"Trailside Townhomes"** shall mean Northstar Trailside Townhomes, LLC.

148. **"Unliquidated Claim"** shall mean any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

149. **"U.S. Trustee"** shall mean the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in Region 3.

150. **"Village Townhomes"** shall mean Northstar Village Townhomes LLC.

151. **"Voting and Claims Agent"** shall mean Epiq Bankruptcy Solutions, LLC, the Court appointed claims, noticing and balloting agent in these jointly administered Chapter 11 Cases.

152. **"Voting Deadline"** shall mean the date set by order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

## B.    Other Terms

The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan as a whole and not to any particular article, section or clause contained in this Plan. A reference to an "Article" refers to an Article, or referenced portion thereof, of this Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in or

by the Bankruptcy Code. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply in constructing this Plan.

## C.     Exhibits

All Exhibits to this Plan and the Plan Supplement are incorporated by reference into and are made a part of this Plan as if set forth in full herein.

## ARTICLE II.

## CLASSIFICATION & TREATMENT OF CLAIMS

## A.     Summary

The Plan constitutes a separate chapter 11 plan for each of the Debtors except for EWRD V, which is not subject to the Plan and will be resolved through a separate plan of liquidation or alternative process. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims or Secured Tax Claims, as described below.

## B.     Classification

The table below classifies Claims against and Interests of all Debtors for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and a Claim or Interest shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 1.A:  NMPH Priority Claims | Unimpaired | No |
| Class 1.B:  NMP Priority Claims | Unimpaired | No |
| Class 1.C:  Iron Horse Priority Claims | Unimpaired | No |
| Class 1.D:  Big Horn Priority Claims | Unimpaired | No |
| Class 1.E:  Village Townhomes Priority Claims | Unimpaired | No |
| Class 1.F:  Trailside Townhomes Priority Claims | Unimpaired | No |
| Class 1.G:  Greenwood Priority Claims | Unimpaired | No |
| Class 1.H:  Realty Priority Claims | Unimpaired | No |
| Class 1.I:  Gray's Priority Claims | Impaired | No |
| Class 1.J:  Resorts Priority Claims | Unimpaired | No |

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 1.K: Club Priority Claims | Unimpaired | No |
| Class 2: Citizens Secured Claim | Impaired | Yes |
| Class 3: Citizens Model Secured Claim | Impaired | Yes |
| Class 4: JPMorgan Secured Claim | Impaired | Yes |
| Class 5: Plumas Secured Claim | Impaired | Yes |
| Class 6: SocGen Secured Claim | Impaired | Yes |
| Class 7.A: NMPH General Unsecured Claims | Impaired | Yes |
| Class 7.B: NMP General Unsecured Claims | Impaired | Yes |
| Class 7.C: Iron Horse General Unsecured Claims | Impaired | Yes |
| Class 7.D: Big Horn General Unsecured Claims | Impaired | Yes |
| Class 7.E: Village Townhomes General Unsecured Claims | Impaired | Yes |
| Class 7.F: Trailside Townhomes General Unsecured Claims | Impaired | Yes |
| Class 7.G: Greenwood General Unsecured Claims | Impaired | Yes |
| Class 7.H: Realty General Unsecured Claims | Impaired | Yes |
| Class 7.I: Gray's General Unsecured Claims | Impaired | No |
| Class 7.J: Resorts General Unsecured Claims | Impaired | Yes |
| Class 7.K(a): Club General Unsecured Claims | Impaired | Yes |
| Class 7.K(b): Golf Member Club General Unsecured Claims | Impaired | Yes |
| Class 8.B: NMP Convenience Class Claims | Unimpaired or Impaired by Agreement | No |
| Class 8.G: Greenwood Convenience Class Claims | Unimpaired or Impaired by Agreement | No |
| Class 8.J: Resorts Convenience Class Claims | Unimpaired or Impaired by Agreement | No |
| Class 8.K(a): Club Convenience Class Claims | Unimpaired or Impaired by Agreement | No |
| Class 9.A: NMPH Intercompany Claims | Impaired | No |
| Class 9.B: NMP Intercompany Claims | Impaired | No |

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 9.C:  Iron Horse Intercompany Claims | Impaired | No |
| Class 9.D:  Big Horn Intercompany Claims | Impaired | No |
| Class 9.E:  Village Townhomes Intercompany Claims | Impaired | No |
| Class 9.F:  Trailside Townhomes Intercompany Claims | Impaired | No |
| Class 9.G:  Greenwood Intercompany Claims | Impaired | No |
| Class 9.H:  Realty Intercompany Claims | Impaired | No |
| Class 9.I:  Gray's Intercompany Claims | Impaired | No |
| Class 9.J:  Resorts Intercompany Claims | Impaired | No |
| Class 9.K:  Club Intercompany Claims | Impaired | No |
| Class 10.A:  NMPH Interests | Impaired | No |
| Class 10.B:  NMP Interests | Impaired | No |
| Class 10.C:  Iron Horse Interests | Impaired | No |
| Class 10.D:  Big Horn Interests | Impaired | No |
| Class 10.E:  Village Townhomes Interests | Impaired | No |
| Class 10.F:  Trailside Townhomes Interests | Impaired | No |
| Class 10.G:  Greenwood Interests | Impaired | No |
| Class 10.H:  Realty Interests | Impaired | No |
| Class 10.I:  Gray's Interests | Impaired | No |
| Class 10.J:  Resorts Interests | Impaired | No |
| Class 10.K:  Club Interests | Impaired | No |

**C.     Unclassified Claims: Administrative Claims, Priority Tax Claims, Secured Tax Claims and DIP Lenders Secured Claims**

As provided in Bankruptcy Code section 1123(a)(1), Administrative Claims, Priority Tax Claims, Secured Tax Claims and DIP Lenders Secured Claims shall not be classified for the purposes of voting or receiving distributions under the Plan.  Rather, all such Claims shall be treated separately as unclassified Claims in accordance with the terms set forth in Article II of the Plan.

1. **Administrative Claims**

   a. **(i)** **Non-Professional Fee Claims**

   The Disbursing Agent shall pay each Holder of an Allowed Administrative Claim against any Debtor (excluding Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash, as soon as practicable after the later of (a) the Effective Date but no later than twenty (20) days after the Effective Date, (b) within thirty (30) days after such Administrative Claim becomes an Allowed Claim and (c) when due in the ordinary course. Notwithstanding anything herein to the contrary, a Holder of an Allowed Administrative Claim against any Debtor may be paid on such other date or dates and upon such other terms as may be agreed to by such Holder and the Debtors. Without limiting the foregoing, all outstanding fees payable to the Office of the U.S. Trustee under 28 U.S.C. §1930 that have not been paid as of the Effective Date shall be paid by the Disbursing Agent no later than thirty (30) days after the Effective Date or when due in the ordinary course.

   **(ii)** **Administrative Claims and Administrative Expense Request Deadline**

   Each Holder of an Administrative Claim other than DIP Lenders must file an Administrative Expense Request requesting payment of such Administrative Claim with the Bankruptcy Court by no later than the Administrative Expense Request Deadline for all other Administrative Claims that are not subject to the Bar Date Order. Nothing herein extends a Bar Date established in the Bar Date Order.

   b. **Professional Fee Claims**

   The Disbursing Agent shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from each of the Debtors' Estates pursuant to Bankruptcy Code sections 327-330 and 503(b)(2) - (b)(6) of the Bankruptcy Code in Cash, in the amount awarded to such Professionals by the interim fee application order or by Final Order of the Bankruptcy Court, as soon as practicable after the later of the Effective Date and the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases, and after application of any retainer received by the Professionals.

   Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the Debtors at the addresses listed in Article X.P of the Plan and on the U.S. Trustee so that it is received no later than forty-five (45) days after the Effective Date, unless otherwise extended by agreement of the claimant and the Debtors, or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtors, their Estates, the Disbursing Agent and their successors, their assigns, the New EWRD V Assets. Allowed Professional Fee Claims must be paid in full or reserved in full in Cash pending allowance by the Bankruptcy Court prior to any payment to Holders of Allowed Claims entitled to a Distribution under the Plan.

## 2. **Priority Tax Claims and Secured Tax Claims**

The Disbursing Agent shall pay, at the Debtors' discretion, each Holder of an Allowed Priority Tax Claim and Allowed Secured Tax Claim against any Debtor in full in Cash at the later of (a) as soon as practicable after the Effective Date but not more than 10 Business Days after the Effective Date, or (b) within thirty (30) days after such Claim becomes an Allowed Claim. Notwithstanding the immediately preceding sentence, the Disbursing Agent, may at the direction of the Debtors, make payment on such Claims over a term of 5 years from the Petition Date, provided, however, that if the Debtors elect to make payments in this manner, such claimants shall receive interest from the Effective Date through and including the date of the last payment at the interest rate required by section 511 of the Bankruptcy Code. All Allowed Priority Tax Claims and Allowed Secured Tax Claims against the Debtors which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof, including all other costs, fees, interest and penalties as required under sections 506 and 511of the Bankruptcy Code, to the extent applicable. The Debtors may direct the Disbursing Agent to prepay any Allowed Priority Tax Claim or Allowed Secured Tax Claim at any time after the Effective Date without any penalty or charge. The Debtors shall be authorized, without the need for further notice or approval, to enter into agreements with Holders of Allowed Priority Tax Claims and Allowed Secured Tax Claims with respect to the Debtors' election of payment under this subsection, and shall be bound by any such agreement.

To the extent that any tax is incurred by the Estates after the Petition Date, such tax is entitled to treatment as an administrative expense of the Estates pursuant to section 503(b)(1)(B)(i) of the Bankruptcy Code and the applicable taxing authority shall be entitled to assert, in connection with confirmation of the Plan, that any associated tax penalties are entitled to treatment as administrative expenses of the Estates and interest as applicable as required under sections 506(b) and 511 of the Bankruptcy Code. The Debtors reserve all rights to challenge such assertion.

Any penalty arising with respect to or in connection with an Allowed Priority Tax Claim or Allowed Secured Tax Claim may be subject to subordination to the extent permitted by section 726(a)(4) of the Bankruptcy Code as made applicable to these Chapter 11 Cases through section 1129(a)(7)(ii) of the Bankruptcy Code. The taxing authorities shall be entitled to assert, in connection with confirmation of the Plan, that penalties associated with any taxes levied by them on the Debtors are not subject to subordination under section 726(a)(4) of the Bankruptcy Code.

The Allowed Secured Tax Claims which are secured by a lien on property of the Debtors that is sold will be paid (with interest as required and to the extent that sections 506(b) and 511 of the Bankruptcy Code are applicable) at the closing of the sale of such property from the net proceeds from such sale except to the extent that such Claim is otherwise satisfied by the provisions of the Plan.

The Districts shall, as a result of any Claims that they may have against the Debtors arising from specials taxes incurred by the Debtors pursuant to the Mello-Roos Act prior to the Petition Date, receive the same treatment as Holders of Allowed Secured Tax Claims, unless

another treatment is agreed to by the Gray's District, Greenwood District and/or the Northstar District, as applicable, with the consent, to the extent required, of the Holders of the Mello Roos Bonds.

**3.    DIP Lenders Secured Claims**

On the Effective Date, all Allowed DIP Lenders Secured Claims, if any, shall be paid in full in Cash. Upon final and indefeasible payment and satisfaction in full of all Allowed DIP Lenders Secured Claims, all Liens and security interests granted to secure such obligations shall be terminated and of no further force or effect. All DIP Lenders Secured Claims are deemed Allowed under the Plan consistent with all terms of the DIP Facility and related documents.

**D.    Classes of Claims and Interests: Classification, Treatment and Voting Rights**

Holders of Claims and Interests are divided into Classes and treated as follows:

**1.    Classes 1.A through 1.K – Priority Claims – Unimpaired, Impaired by Agreement or Impaired**

**a.    Classification**

Classes 1.A, 1.B, 1.C, 1.D, 1.E, 1.F, 1.G. 1.H, 1.I, 1.J and 1.K consist of all Allowed Priority Claims for such respective classes.

**b.    Treatment**

The Disbursing Agent shall pay each Holder of an Allowed Class 1.A Claim, Allowed Class 1.B Claim, Allowed Class 1.C Claim, Allowed Class 1.D Claim, Allowed Class 1.E Claim, Allowed Class 1.F Claim, Allowed Class 1.G Claim, Allowed Class 1.H Claim, Allowed Class 1.J Claim and Allowed Class 1.K Claim in relative order of priority pursuant to Bankruptcy Code section 507, in full, in Cash, without interest, as soon as practicable but not later than thirty (30) days after the Effective Date.

Holders of Allowed Claims in 1.I shall receive no Distributions under the Plan.

**c.    Voting**

Classes 1.A, 1.B, 1.C, 1.D, 1.E, 1.F, 1.G. 1.H, 1.J and 1.K are not Impaired. Holders of Allowed Claims in Classes 1.A, 1.B, 1.C, 1.D, 1.E, 1.F, 1.G. 1.H, 1.J and 1.K are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Priority Claims in Classes 1.A, 1.B, 1.C, 1.D, 1.E, 1.F, 1.G. 1.H, 1.J and 1.K are not entitled to vote to accept or reject the Plan.

Holders of Allowed Class 1.I (Gray's Priority Claims) will receive no Distribution under the Plan and, therefore, are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Allowed Class 1.I (Gray's Priority Claims) are not entitled to vote to accept or reject the Gray's Plan.

2. **Class 2 – Citizens Secured Claim – Impaired**

   a. **Classification**

Class 2 consists of the Citizens Secured Claim

   b. **Treatment**

In full and final satisfaction of the Allowed Citizens Secured Claim, Holders of Allowed Class 2 Claims shall be entitled to a recovery of their Allowed Claim through, at Citizen's option, either (i) the sale of the Citizens Collateral by the Debtors to a third party with the proceeds from such sale (less broker fees not to exceed 4%) in an amount sufficient to satisfy the Allowed Citizens Secured Claim returned to Citizens, and the repair of the Citizens Collateral to be completed using insurance proceeds previously received and without cost to Citizens or (ii) the transfer of the Citizens Collateral to Citizens.

   c. **Voting**

Class 2 is Impaired. Therefore, Holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Gray's Plan.

3. **Class 3 – Citizens Model Secured Claim – Impaired**

   a. **Classification**

Class 3 consists of the Citizens Model Secured Claim

   b. **Treatment**

On the Effective Date, the legal, equitable and contractual rights of Holders of Allowed Class 3 Claims shall be unaffected by the Plan; however, the Citizens Model Facility shall be modified as follows: (i) the interest rate on the Citizens Model Facility shall be reduced from 7.95% to 5.0%, (ii) following the repayment of the JPMorgan Facility, the Debtors will contribute $5,000 from the sale of each future fraction at Greenwood to pay down the Citizens Model Facility; (iii) on or before December 31, 2011, Greenwood will begin to market fractions at Greenwood that comprise the Citizens Model Collateral with 100% of the proceeds from any sales of such fractions to be used pay down the Citizens Model Facility and (iv) certain other terms of the Citizens Model Facility shall be modified as agreed to by the Debtors and Citizens.

The Debtors' failure to object to any such Class 3 Claims in the Chapter 11 Cases shall be without prejudice to the Debtors' or the New EWRD V Entities' right to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the holder of such Claim. Notwithstanding section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition liens on property of any Debtors held by or on behalf of the Class 3 Claim holders with respect to such Claims shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such Claim holders until, as to each such Claim holder, the Allowed Claims of such Class 3 Claim holder are paid in full. Nothing in this section or elsewhere in the Plan shall preclude the Debtors or New EWRD

V Entities from challenging the validity of any alleged lien on any asset of a Debtor or the value of the Citizens Model Collateral.

### c. Voting

Class 3 is Impaired. Therefore, Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Greenwood Plan.

### 4. Class 4 – JPMorgan Secured Claim – Impaired

#### a. Classification

Class 4 consists of the JPMorgan Secured Claim

#### b. Treatment

On the Effective Date, the legal, equitable and contractual rights of Holders of Allowed Class 4 Claims shall be unaffected by the Plan; however, the JPMorgan Facility shall be modified as follows: (i) the maturity date on the JPMorgan Facility shall be extended to March 31, 2011 and (ii) certain other terms of the JPMorgan Facility shall be modified as agreed to by the Debtors and JPMorgan.

The Debtors' failure to object to any such Class 4 Claims in the Chapter 11 Cases shall be without prejudice to the Debtors' or New EWRD V Entities' right to contest or otherwise defend against such Claim in the appropriate forum when and if such Claim is sought to be enforced by the holder of such Claim. Notwithstanding section 1141(c) or any other provision of the Bankruptcy Code, all pre-petition liens on property of any Debtors held by or on behalf of the Class 4 Claim holders with respect to such Claims shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such Claim holders until, as to each such Claim holder, the Allowed Claims of such Class 4 Claim holder are paid in full. Nothing in this section or elsewhere in the Plan shall preclude the Debtors or New EWRD V Entities from challenging the validity of any alleged lien on any asset of a Debtor or the value of the JPMorgan Collateral.

### c. Voting

Class 4 is Impaired. Therefore, Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Greenwood Plan.

### 5. Class 5 – Plumas Secured Claim – Impaired

#### a. Classification

Class 5 consists of the Plumas Secured Claim

### b.    Treatment

In full and final satisfaction of the Allowed Plumas Secured Claim, Holders of Allowed Class 5 Claims shall be entitled to (A) a recovery of their Allowed Claim through the transfer of the Plumas Collateral to Plumas (as further described below); and (B) an Allowed General Unsecured Claim in Class 7.G in the amount of $1,500,000. In the event the Debtors have not consummated a consensual transfer of the Plumas Collateral on or before the Effective Date and the stay has not otherwise been lifted with respect to the Plumas Collateral on or before the Effective Date, (i) the Plumas Collateral shall be deemed abandoned, (ii) any and all stays and injunctions under the Bankruptcy Code, the Plan or otherwise with respect to the Plumas Collateral shall be immediately lifted, and (iii) there shall be no impairment, injunction against or discharge of Plumas's liens, security interests, rights, loan documents or claims, and Plumas shall be permitted to exercise any and all of its rights and remedies under applicable bankruptcy and non-bankruptcy law against the Plumas Collateral and Greenwood, to the extent incidental thereto. The consensual transfer or conveyance of the Plumas Collateral by the Debtors by any method (a consensual sale shall not include foreclosure), shall be subject to any valid, enforceable and perfected lien, right of subrogation, or right under statute held by International Fidelity Insurance Company, if any, or the Town of Truckee, if any, or Truckee Donner Public Utility District Community Facilities District No. 04-1 or the Truckee Donner Public Utility District Community Facilities District No. 03-1, if any, against such Plumas Collateral that is determined to be senior in priority in such Plumas Collateral under otherwise applicable non-bankruptcy law to the liens and security interests under the Plumas Facility in or against such Plumas Collateral, if any. It is expressly understood that Plumas does not admit the existence, extent, amount or validity of any such alleged liens or rights, and affirmatively disputes the same.

### c.    Voting

Class 5 is Impaired. Therefore, Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Greenwood Plan.

## 6.    Class 6 – SocGen Secured Claim – Impaired

### a.    Classification

Class 6 consists of the SocGen Secured Claim

### b.    Treatment

In full and final satisfaction of the Allowed SocGen Secured Claim, Holders of Allowed Class 6 Claims shall be entitled to a recovery of their Allowed Claim through, at the Debtors' option, either (i) proceeds from the sale of the SocGen Collateral to a third party, provided, however, that the Debtors shall not proceed with any sale of the SocGen Collateral unless the entire indebtedness and sums owed to SocGen under the SocGen Loan Documents are paid in cash in full upon closing of such a sale or SocGen provides further written consent to such a sale or (ii) the consensual transfer of the SocGen Collateral to SocGen. In the event the Debtors have not consummated such a consensual transfer or permitted sale on or before the Effective Date

and the stay has not otherwise been lifted with respect to the SocGen Collateral on or before the Effective Date, (i) the SocGen Collateral shall be deemed abandoned, (ii) any and all stays and injunctions under the Bankruptcy Code, the Plan or otherwise with respect to the SocGen Collateral shall be immediately lifted, and (iii) there shall be no impairment, injunction against or discharge of SocGen's liens, security interests, rights, loan documents or claims, and SocGen shall be permitted to exercise any and all of its rights and remedies under applicable bankruptcy and non-bankruptcy law against the SocGen Collateral and Gray's Crossing, to the extent incidental thereto. The consensual transfer, conveyance or sale of the SocGen Collateral by the Debtors by any method (a consensual sale shall not include foreclosure), shall be subject to any valid, enforceable and perfected lien, right of subrogation, or right under statute held by International Fidelity Insurance Company, if any, or the Town of Truckee, if any, or Truckee Donner Public Utility District Community Facilities District No. 04-1 or the Truckee Donner Public Utility District Community Facilities District No. 03-1, if any, against such SocGen Collateral that is determined to be senior in priority in such SocGen Collateral under otherwise applicable non-bankruptcy law to the liens and security interests under the SocGen Loan Documents in or against such SocGen Collateral, if any. It is expressly understood that SocGen does not admit the existence, extent, amount or validity of any such alleged liens or rights, and affirmatively disputes the same. The Debtors do not believe SocGen will accept a consensual transfer of the SocGen Collateral in the absence of prior resolution of such disputed liens and rights.

### c.    Voting

Class 6 is Impaired. Therefore, Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Gray's Plan.

### 7.    Classes 7.A through 7.K – General Unsecured Claims – Impaired

### a.    Classification

Classes 7.A, 7.B, 7.C, 7.D, 7.E, 7.F, 7.G, 7.H, 7.I, 7.J, 7.K(a) and 7.K(b) consist of all General Unsecured Claims for such respective classes.

### b.    Treatment

- Class 7.A (NMPH General Unsecured Claims): In full and final satisfaction of Allowed NMPH General Unsecured Claims in Class 7.A, Holders of Allowed Class 7.A Claims shall receive the lesser of (i) Cash in an amount equal to their Claim without interest or (ii) a Pro Rata Distribution in Cash of $1,000.

- Class 7.B (NMP General Unsecured Claims): In full and final satisfaction of Allowed NMP General Unsecured Claims in Class 7.B, Holders of Allowed Class 7.B Claims (except for those who receive or elect to receive treatment and payment under a Convenience Class) shall receive a Pro Rata Distribution in Cash of $1,000,000.

- Class 7.C (Iron Horse General Unsecured Claims): In full and final satisfaction of Allowed Iron Horse General Unsecured Claims in Class 7.C, Holders of Allowed Class 7.C Claims shall receive the lesser of (i) Cash in an amount equal to their Claim without interest or (ii) a Pro Rata Distribution in Cash of $1,000.

- Class 7.D (Big Horn General Unsecured Claims): In full and final satisfaction of Allowed Big Horn General Unsecured Claims in Class 7.D, Holders of Allowed Class 7.D Claims shall receive the lesser of (i) Cash in an amount equal to their Claim without interest or (ii) a Pro Rata Distribution in Cash of $20,000.

- Class 7.E (Village Townhomes General Unsecured Claims): In full and final satisfaction of Allowed Village Townhomes General Unsecured Claims in Class 7.E, Holders of Allowed Class 7.E Claims shall receive the lesser of (i) Cash in an amount equal to their Claim without interest or (ii) a Pro Rata Distribution in Cash of $15,000.

- Class 7.F (Trailside Townhomes General Unsecured Claims): In full and final satisfaction of Allowed Trailside Townhomes General Unsecured Claims in Class 7.F, Holders of Allowed Class 7.F Claims shall receive the lesser of (i) Cash in an amount equal to their Claim without interest or (ii) a Pro Rata Distribution in Cash of $2,000.

- Class 7.G (Greenwood General Unsecured Claims): In full and final satisfaction of Allowed Greenwood General Unsecured Claims in Class 7.G, Holders of Allowed Class 7.G Claims (except for those who receive or elect to receive treatment and payment under a Convenience Class) shall receive a Pro Rata Distribution in Cash of $500,000.

- Class 7.H (Realty General Unsecured Claims): In full and final satisfaction of Allowed Realty General Unsecured Claims in Class 7.H, Holders of Allowed Class 7.H Claims shall receive a Pro Rata Distribution in Cash of $10,000.

- Class 7.I (Gray's General Unsecured Claims): Holders of Allowed Class 7.I Claims shall receive no Distributions with respect to Gray's General Unsecured Claims.

- Class 7.J (Resorts General Unsecured Claims): In full and final satisfaction of Allowed Resorts General Unsecured Claims in Class 7.J, Holders of Allowed Class 7.J Claims (except for those who receive or elect to receive treatment and payment under a Convenience Class) shall receive a Pro Rata Distribution in Cash of $20,000.

- Class 7.K(a) (Club General Unsecured Claims): In full and final satisfaction of Allowed Club General Unsecured Claims in Class 7.K(a), Holders of Allowed Class 7.K(a) Claims (except for those who receive or elect to receive treatment and payment under a Convenience Class), shall receive a Pro Rata Distribution in Cash of $1,000,000.

- Class 7.K(b) (Golf Member Club General Unsecured Claims): In full and final satisfaction of Allowed Golf Member Club General Unsecured Claims in Class 7.K(b), each Holder of an Allowed Golf Member Club General Unsecured Claim shall be entitled to receive, at their sole election, either (1) non-monetary compensation in the form of a (i) Sports Membership with all the privileges of Sports Membership afforded by the Club for Sports Members, (ii) a credit toward the full initiation deposit for the Sports Membership, and (iii) a waiver of the required monthly dues for the Sports Membership and annual green fees until the earlier of such Holder's resignation from the Club or other termination or a date between two to ten years following the Effective Date of the Plan, with such date calculated based on the amount of initiation deposit previously paid by such Holder to the Club or (2) a Club General Unsecured Claim in Class 7.K(a). In the event that the Holder of a Golf Member Claim does not elect treatment under either Class 7.K(b)(1) or 7.K(b)(2), upon confirmation of the Plan of Club, the Golf Member shall be deemed to have elected to receive the treatment provided for in Class 7.K(b)(1).

### c. Voting

Classes 7.A, 7.B, 7.C, 7.D, 7.E, 7.F, 7.G, 7.H, 7.J, 7.K(a) and 7.K(b) are Impaired. Therefore, Holders of Allowed General Unsecured Claims in Classes 7.A, 7.B, 7.C, 7.D, 7.E, 7.F, 7.G, 7.H, 7.J, 7.K(a) and 7.K(b) are entitled to vote to accept or reject the Plan, however, those Holders with Claims in Classes 7.B, 7.G, 7.J and 7.K(a) may choose the Convenience Class Election.

Holders of Class 7.I (Gray's General Unsecured Claims) shall receive no Distribution under the Plan and are therefore conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Class 7.I (Gray's General Unsecured Claims) are not entitled to vote to accept or reject the Plan.

### 8. Classes 8.B, 8.G., 8.J and 8.K(a) – Convenience Class Claims (Includes Those Electing the Convenience Class Election) – Not Impaired or Impaired by Agreement

### a. Classification

Classes 8.B, 8.G., 8.J and 8.K(a) consist of all Convenience Class Claims for such respective classes, including Claims of a single Holder of a type that would otherwise be

included in 7.B, 7.G., 7.J or 7.K(a) that are either (i) $1,000 or less in the aggregate or (ii) greater than $1,000 in the aggregate, but as to which the holder thereof has made a Convenience Class Election.

### b. Treatment

The Disbursing Agent shall distribute to each Holder of an Allowed Class 8.B Claim, Allowed Class 8.G Claim, Allowed Class 8.J Claim and Allowed Class 8.K(a) Claim, Cash equal to 100% of the Face Amount thereof up to a maximum of $1,000 total payout in full and final satisfaction of such Claim for Allowed Class 8.B Claim, Allowed Class 8.G Claim, Allowed Class 8.J Claim or Allowed Class 8.K(a) Claim.

### c. Voting

Holders of Class 8.B Claims, Class 8.G Claims, Class 8.J Claims and Class 8.K(a) Claims are conclusively deemed to have accepted the Plan. Therefore, Holders of Class 8.B Claims, Class 8.G Claims, Class 8.J Claims and Class 8.K(a) Claims are not entitled to vote to accept or reject the Plan.

## 9. Classes 9.A through 9.K – Intercompany Claims – Impaired

### a. Classification

Classes 9.A, 9.B, 9.C, 9.D, 9.E, 9.F, 9.G. 9.H, 9.I, 9.J and 9.K consist of all Intercompany Claims for such respective class.

### b. Treatment

Intercompany Claims in Classes 9.A, 9.B, 9.C, 9.D, 9.E, 9.F, 9.G. 9.H, 9.I, 9.J and 9.K shall be cancelled and forever discharged.

### c. Voting

Holders of Intercompany Claims in Classes 9.A, 9.B, 9.C, 9.D, 9.E, 9.F, 9.G. 9.H, 9.I, 9.J and 9.K shall receive no Distribution under the Plan and are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders in Intercompany Claims in Classes 9.A, 9.B, 9.C, 9.D, 9.E, 9.F, 9.G. 9.H, 9.I, 9.J and 9.K are not entitled to vote to accept or reject the Plan.

## 10. Class 10.A through 10.K – Interests and Interest Related Claims –Impaired

### a. Classification

Classes 10.A, 10.A, 10.B, 10.C, 10.D, 10.E, 10.F, 10.G. 10.H, 10.I, 10.J and 10.K consist of all Interests and Interest Related Claims for such respective class.

**b. Treatment**

On the Effective Date, all Interests in any of the Debtors shall be deemed canceled, null and void, and of no force and effect, and Holders of Interest Related Claims in Classes 10.A, 10.A, 10.B, 10.C, 10.D, 10.E, 10.F, 10.G. 10.H, 10.I, 10.J and 10.K shall receive no Distributions on account of such Claims.

**c. Voting**

Classes 10.A, 10.A, 10.B, 10.C, 10.D, 10.E, 10.F, 10.G. 10.H, 10.I, 10.J and 10.K will receive no Distribution under the Plan. Holders of Interests and Interest Related Claims in Classes 10.A, 10.A, 10.B, 10.C, 10.D, 10.E, 10.F, 10.G. 10.H, 10.I, 10.J and 10.K are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Interests and Allowed Interest Related Claims in Classes 10.A, 10.A, 10.B, 10.C, 10.D, 10.E, 10.F, 10.G. 10.H, 10.I, 10.J and 10.K are not entitled to vote to accept or reject the Plan.

## ARTICLE III.

## ACCEPTANCE AND REJECTION OF THE PLAN

**A. Impaired Classes of Claims Entitled to Vote**

Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on the Plan, Classes 2, 3, 4, 5, 6, 7.A, 7.B, 7.C, 7.D, 7.E, 7.F, 7.G, 7.H, 7.J, 7.K(a) and 7.K(b) shall be entitled to vote to accept or reject the Plan. If and to the extent any other Class identified as being unimpaired is impaired (whether as a result of the terms of the Plan or any modification or amendment thereto), upon such determination, such Class shall then be entitled to vote to accept or reject the Plan.

**B. Classes Deemed to Accept the Plan**

Classes 1.A, 1.B, 1.C, 1.D, 1.E, 1.F, 1.G. 1.H, 1.J, 1.K, 8.B, 8.G., 8.J and 8.K(a) are unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, Holders of such Classes are therefore conclusively presumed to have accepted the Plan, and the votes of Holders of such Classes will therefore not be solicited.

**C. Classes Deemed to Reject the Plan**

Holders of Claims in Class 1.I (Gray's Priority Claims), Class 7.I (Gray's General Unsecured Claims), Classes 9.A through 9.K (Intercompany Claims) and Classes 10.A through 10.K (Interests and Interest Related Claims) are not entitled to receive any distribution under the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, Holders of Claims in Class 1.I (Gray's Priority Claims), Class 7.I (Gray's General Unsecured Claims), Classes 9.A through 9.K (Intercompany Claims) and Classes 10.A through 10.K (Interests and Interest Related Claims) are conclusively presumed to have rejected the Plan, and the votes of Holders of Claims in Class 1.I (Gray's Priority Claims), Class 7.I (Gray's General Unsecured Claims), Classes 9.A through

9.K (Intercompany Claims) and Classes 10.A through 10.K (Interests and Interest Related Claims) therefore will not be solicited.

## D. Nonconsensual Confirmation

The Debtors intend to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Class that is deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors reserve the right to (i) request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code and (ii) modify the Plan to the extent, if any, that confirmation of the Plan under section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

## A. Continued Corporate Existence

Each of NMP, Club, Village Townhomes, Resorts, Realty, Greenwood and Trailside Townhomes, as the Reorganized Subsidiaries, shall continue to exist after the Effective Date as a limited liability company, with all the powers of a limited liability company in the jurisdiction in which each particular Debtor is organized or otherwise formed and pursuant to its certificate of formation or articles of organization, and other organizational documents, as such documents are amended pursuant to the Plan. To the extent that any of the organizational documents of any of the Reorganized Subsidiaries are amended pursuant to the Plan, such documents are deemed to be pursuant to the Plan and require no further action or approval.

## B. New EWRD V

On the Effective Date or as soon thereafter as practicable, a new Delaware limited liability company will be established to replace EWRD V as the holding company and 100% owner of the Reorganized Subsidiaries except as otherwise provided in this Article.

## C. Dissolution of Gray's

Subsequent to the transfer of the SocGen Collateral by consensual transfer or sale or the completion of exercise by SocGen of its rights and remedies with respect to the SocGen Collateral, and to the extent necessary, Gray's will be fully and finally dissolved for all purposes under Delaware law without the necessity for any further filing or actions to be taken by or on behalf of Gray's, provided, however, that Gray's shall file with the Office of the Secretary of State of Delaware a certificate of dissolution, which may be executed by an officer of East West without need for approval by the holders of Interests in Gray's. From and after the Effective Date, Gray's shall not be required to file any document, or take any other action, or obtain any approval from the holders of Interests, to withdraw their business operations from any states in which the Debtors previously conducted their business operations.

To the extent that anything in this section is inconsistent or conflicts with any bylaws, organizational documents, and related corporate documents of Gray's, such organizational documents are deemed amended by the Plan to permit and authorize the Debtors to take the actions contemplated by this section.

**D.      The Dissolving Subsidiaries**

On the Effective Date, the Dissolving Subsidiaries shall be deemed to have been fully and finally dissolved for all purposes under Delaware law without the necessity for any further filing or actions to be taken by or on behalf of the Dissolving Subsidiaries or payments to be made in connection therewith; provided, however, that each Dissolving Subsidiary shall file with the Office of the Secretary of State of Delaware a certificate of dissolution, which may be executed by an officer of East West without need for approval by the holders of Interests in the applicable Dissolving Subsidiary. From and after the Effective Date, each Dissolving Subsidiary shall not be required to file any document, or take any other action, or obtain any approval from the holders of Interests, to withdraw their business operations from any states in which the Debtors previously conducted their business operations.

To the extent that anything in this section is inconsistent or conflicts with any bylaws, organizational documents, and related corporate documents of any Dissolving Subsidiary, such organizational documents are deemed amended by the Plan to permit and authorize the Debtors to take the actions contemplated by this section.

**E.      Transfer of Assets**

All property of the Estates of Debtors that are being dissolved under the Plan that is not distributed to the Holders of Claims on the Effective Date including, without limitation, any moneys held in escrow or separate segregated accounts during the pendency of the Chapter 11 Cases, shall be managed by New EWRD V and shall be held in the name of New EWRD V free and clear of all Claims against and Interests in New EWRD V, except for the rights for Distribution afforded to Holders of Claims under the Plan. After the Effective Date, New EWRD V shall have no liability to Holders of Claims or Interests other than as provided for in the Plan.

**F.      Asset Sales**

All non-Cash assets of the Estates of Debtors that are not being reorganized under the Plan that are existing as of the Effective Date and that have not been previously disposed of shall be sold or otherwise liquidated or, if appropriate in the judgment of New EWRD V, abandoned in any commercially reasonable manner, including to a charitable organization or organizations designated by New EWRD V in respect of assets of inconsequential value.

**G.      Tahoe Club Member Rights**

The New EWRD V Entities, shall, at their discretion, be permitted to convert the Gray's Crossing Golf Course from a private-members only golf course to a public golf course at any time before or after the Effective Date.

All other terms and conditions that apply to the various membership categories shall remain in place on and after the Effective Date. Other than Golf Members participating in Class 7.K(a) whose membership agreements will be rejected, all membership agreements will be assumed by the Debtors.

## H. Consummation of the Transactions Contemplated by the PSA

The Debtors shall consummate the Plan pursuant to the terms of the PSA and this Plan. To the extent that there may be any inconsistencies between the terms of the PSA, on the one hand, and this Plan and the Confirmation Order, on the other hand, the terms of this Plan and Confirmation Order shall govern.

## I. Terms of New Money Investment

On and after the Effective Date, CRDI or a designated affiliate (the "CRDI Investor") shall provide 95% and EW Investor shall provide 5% of the New Money Investment in an aggregate amount not to exceed $32,500,000 which amount shall be sufficient to satisfy and fund the payment of the DIP Lender Secured Claims, Allowed Administrative Claims, Priority Claims, Priority Tax Claims, Secured Tax Claims, Professional Fee Claims and distributions to Allowed General Unsecured Claims and future capital requirements of the New EWRD V Entities (collectively, the "Expenses"). Following the Effective Date, the CRDI Investor and EW Investor shall unanimously determine the amount of New Money Investment required to be funded to pay for Expenses and the timing for delivery of each party's pro rata share of such cash to New EWRD V.

## J. Execution of Documents and Limited Liability Action

### 1. Execution of Documents and Corporate Action

The Debtors shall deliver all documents and perform all actions reasonably contemplated with respect to implementation of the Plan. On the Effective Date or as soon thereafter as practicable, the New EWRD V Members shall enter into the New EWRD V Operating Agreement. The organizational documents of the Reorganized Subsidiaries shall be amended to the extent practicable to conform to the rights of the parties to the New EWRD V Operating Agreement.

### 2. Manager of New EWRD V

New EWRD V Manager shall be the initial managing member of New EWRD V.

### 3. Authorization and Issuance of the New EWRD V Membership Interests

On the Effective Date and in accordance with this Plan and the PSA, New EWRD V shall, without further act or action under applicable law, regulation, order, or rule, authorize and issue (a) a 95% profits interest to the CRDI Investor (in return for an obligation to contribute 95% of the capital of New EWRD V), (b) a 5% profits interest to the EW Investor (in return for an obligation to contribute 5% of the capital of New EWRD V); (c) a 1% promoted profits

interest (meaning that the holder generally has no obligation to contribute capital) to the New EWRD V Manager; and (d) a 19% promoted profits interest to the EW Promoted Investor.

## 4. Distributions

Distributions of available cash flow of New EWRD V after payment of operating expenses, including without limitation, debt service will be made in the following order: (a) first, to the CRDI Investor and the EW Investor *pari passu* in the following proportions: 95% to CRDI Investor until the CRDI Investor has received a preferred return of 12% on all its contributions and a return of all contributions and 5% to EW Investor until it has received a preferred return of 12% on all contributions and a return of all its contributions and (b) second, to the EW Promoted Investor, the New EWRD V Manager, the CRDI Investor and EW Investor *pari passu* in the following proportions: 19% to EW Promoted Investor, 1% to the New EWRD V Manager, 76% to the CRDI Investor and 4% to the EW Investor.

## 5. The Reorganized Subsidiaries

On the Effective Date, New EWRD V shall hold 100% of the Interests in the Reorganized Subsidiaries except as otherwise provided in this Article. Such Interests shall be free and clear of all liens, claims, encumbrances or other interests and New EWRD V shall own all of the assets of the Reorganized Subsidiaries free and clear of all liens, claims, encumbrances or other interests. New EWRD V may elect that one or more of the Reorganized Subsidiaries be merged into New EWRD V, such that all assets of such merged Reorganized Subsidiaries shall be owned by New EWRD V, free and clear of all liens, claims, encumbrances and other interests. New EWRD V may also elect to create a new subsidiary(ies) of New EWRD V, and to transfer assets from New EWRD V to such new subsidiary(ies), free and clear of all liens, claims, encumbrances and other interests.

## 6. Reorganized Management Agreement

The New EWRD V Manager shall manage all of the affairs of the New EWRD V Entities pursuant to the Reorganized Management Agreement between New EWRD V and the New EWRD V Manager. The Debtors contemplate that the Reorganized Management Agreement will include the terms as described in this section.

In exchange for its management services, New EWRD V Manager shall be entitled to an annual management fee of $1,000,000, as more fully described in the Reorganized Management Agreement, the form of which will be included in the Plan Supplement.

The New EWRD V Sub-Manager shall provide submanagement services to each Reorganized Subsidiary and the New EWRD V Sub-Manager shall be reimbursed by each Reorganized Subsidiary for almost all direct and indirect general and administrative costs incurred by the New EWRD V Sub-Manager in connection with operating such Reorganized Subsidiary, as more fully described in the New Submanagement Agreements, the forms of which will be included in the Plan Supplement.

CRDI may remove the New EWRD V Manager and may terminate the Reorganized Management Agreement at any time for cause, or at any time after two years without cause.

Upon any termination and removal that occurs without cause and without a change in control having occurred, the New EWRD V Manager will be entitled to a termination fee of $1,000,000.

Employees of the New EWRD V Manager will be eligible to earn bonuses subject to the approval of CRDI. The salaries of the employees of the New EWRD V Manager will be part of the annual budget process and all bonuses will be subject to CRDI's specific approval.

CRDI has agreed to make certain payments and loans to key employees of an affiliate of the New EWRD V Manager based upon the services they provided both prior to, and during the course of the Chapter 11 Cases.

### 7. Board of New EWRD V

New EWRD V will have a board which will be comprised of (i) 2 representatives of CRDI and (ii) 3 representatives of the New EWRD V Manager. The identities of such board members will be disclosed in the New EWRD V Operating Agreement.

### 8. Certificate of Formation and New EWRD V Operating Agreement

The New EWRD V Certificate of Formation and the New EWRD V Operating Agreement shall contain provisions necessary to provide for the provisions, terms, and conditions necessary to comply, conform with, and implement the terms, conditions, and requirements of this Plan.

## K. NMP Consents

The following consents and other actions with respect to the NMP Operating Agreement shall be effective on the Effective Date (with any capitalized terms used in this Article but not defined in this Plan having the meanings given to such terms in the NMP Operating Agreement):

### 1. Consent to Construction of Single Family Residences and Reduction in Construction Requirements.

TLH consents to the development by NMP in the Highlands Area of up to an aggregate of 100 (and not more) single family residences or lots for single family residences.

TLH consents to the reduction by (but not more than) up to 368 Units (so that the overall density requirement may be as low as 1,432 Units) of the requirement that the Manager will cause NMP to construct 1,450 Units pursuant to the Amended and Restated Master Development Plan on Parcel P and the Non-Village Core Property (so that the overall construction requirement for Parcel P and the Non-Village Core Property may be as low as 1,082 Units and the overall construction requirement for the Property may be as low as 1,432 units when taking account the 350 Units constructed in the Village Core other than Parcel P), so that, in effect, the references to "1,450 Units" in Sections A(1)[b] and A(1)[d] of the Amended and Restated Master Development Plan are changed to "not less than 1,082 Units," and the references to "1,800 Units" in Section A(1)[d] of the Amended and Restated Master Development Plan are changed to "not less than 1,432 Units", respectively, provided, however, that (i) the Property may not be downzoned, (ii) the total density allocated to the Property shall remain at a total of 1,800 Units

(exclusive of 255 Hotel rooms and any employee housing required to be built), and (iii) all other permits and other legal entitlements to construct such 368 Units shall remain with NMP (both prior to and after the Effective Date) and shall not be transferred, assigned, waived or conveyed, in each case, without either the approval of TLH in its sole and absolute discretion, subject to a duty to act in good faith or compliance with the terms of the NMP Operating Agreement.

Except as otherwise set forth above, the NMP Operating Agreement shall remain in full force and effect after the Effective Date.

### 2. Concession on Preferred Return.

For a period of three years following the Effective Date, the Adjusted Capital Contribution Account for Land and the Return Account will not accrue any Preferred Return (which in effect means that the Preferred Return for Land for such period will be zero percent). NMPH and TLH acknowledge and agree that the Adjusted Capital Contribution Account for Land and the Return Account shall continue to accrue Preferred Return until the Effective Date.

### 3. Protection of Booth Creek Return.

Except for the DIP Facility, any loan or equity investment (including any preferred equity investment) made by NMPH, East West, EWRD V, the New Money Investors, any Partner, Barclays or any Affiliate of any of the foregoing Persons to or in NMP will be subordinated in right of payment to the payment and/or accrual of the Booth Creek Return.

### 4. Interests in Reorganized NMP.

In consideration for TLH's consent to the actions taken hereunder, TLH shall be granted a 0.1% membership interest in Reorganized NMP.

### L. Effectuating Documents; Further Transactions

The Debtors and the New EWRD V Entities, subject to the terms and conditions of this Plan, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Support Parties shall execute and deliver such documents as the New EWRD V Entities shall reasonably request to effectuate or further evidence the terms and conditions of this Plan.

## ARTICLE V.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Rejection of Remaining Executory Contracts and Unexpired Leases

On the Confirmation Date, except for (i) any Executory Contract that previously expired by its own terms, (ii) that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, (iii) is assumed pursuant to the Plan or

(iv) is the subject of a pending motion to assume or assume and assign as of the Confirmation Date, any Executory Contract that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to Bankruptcy Code sections 365 and 1123 as of the Confirmation Date.

## B.     Assumption and Cure of Executory Contracts

The Debtors will file the Assumed Contracts Schedule identifying Executory Contracts to be assumed by the New EWRD V Entities pursuant to the Plan in addition to those previously assumed by the Debtors by order of the Bankruptcy Court, provided, that the Debtors reserve the right to amend both the Assumed Contracts Schedule at any time up to three (3) Business Days before the Confirmation Hearing to delete any Executory Contract contained therein, or to add any Executory Contract to the Assumed Contracts Schedule. The Debtors will provide notice of any amendments to the Assumed Contracts Schedule to the parties to the Executory Contracts added or removed. The Assumed Contracts Schedule shall include a designation of the monetary cure amount the Debtors believe is owed with respect to each Executory Contract set forth in the Assumed Contracts Schedule. Except as provided elsewhere in the Plan, any non-Debtor party to an Executory Contract shall file and serve its objection thereto in writing no later than 4:00 p.m. (prevailing Eastern Time) on the day that is seven (7) days after the Debtors file and serve the Assumed Contracts Schedule. The failure of any non-Debtor party to an Executory Contract to file and serve an objection to the assumption of the contract or lease by the deadline therefore shall be deemed to consent to the assumption or assumption and assignment of the contract or lease and to such cure amount. On the Effective Date, in addition to all Executory Contracts that have been previously assumed by the Debtors by order of the Bankruptcy Court, each of the Executory Contracts of the Debtors that are identified in the Assumed Contracts Schedule, shall be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, and the Confirmation Order shall constitute adequate assurance of the performance of such assumed contract.

## C.     Cure of Defaults of Assumed Executory Contracts

The monetary cure amounts owed under each Executory Contract to be assumed or assumed and assigned pursuant to the Plan, as set forth in the Assumed Contracts Schedule, or as otherwise established by the Bankruptcy Court at the Confirmation Hearing, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash solely by the applicable New EWRD V Entity on the later of (i) the Effective Date (or as soon as practicable thereafter), (ii) as due in the ordinary course of business or (iii) on such other terms as the parties to such Executory Contracts may otherwise agree. In the event of a dispute regarding: (1) the amount of any cure payments, (2) ability of the applicable New EWRD V Entity or any other assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assigned, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made on later of: (A) the applicable date set forth in clause (i), (ii), or (iii) above, and (B) fifteen (15) days following the entry of a Final Order authorizing the assumption of Executory Contracts.

**D. Effect of Assumption Assignment**

Each Executory Contract assumed or assumed and assigned pursuant to this Article (or pursuant to Bankruptcy Court order) shall remain in full force and effect and be fully enforceable by the New EWRD V Entities in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment. To the extent applicable, all Executory Contracts assumed during the Chapter 11 Cases, (i) shall be deemed modified such that the transactions contemplated by the Plan shall not be a "change of control," however such term may be defined in the relevant Executory Contract (ii) shall not constitute a breach of any anti-alienation provision thereof, and (iii) any required consent under any such contract or lease shall be deemed satisfied by the confirmation of the Plan.

**E. Rejection Damages Bar Date**

Except to the extent another Bar Date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under the Plan must be filed with the Voting and Claims Agent at the following applicable address:

> Epiq Bankruptcy Solutions, LLC
> 757 Third Avenue, 3rd Floor
> New York, NY 10017
> Attn: East West Resort Development V, L.P., L.L.L.P.
> Claims Processing Center

and a copy served on counsel for the Debtors within thirty (30) days from the entry of the Confirmation Order, or such Claim shall be forever barred and shall not be entitled to a Distribution or be enforceable against the Debtors, their Estates, their successors or their assigns. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in the applicable Classes 7.A, 7.B, 7.C, 7.D, 7.E, 7.F, 7.G, 7.H, 7.J and 7.K(a). Nothing in the Plan extends or modifies any previously applicable Bar Date.

**F. Insurance Policies**

To the extent any or all of the insurance policies set forth on Exhibit A to the Plan are considered to be Executory Contracts, then notwithstanding anything contained in the Plan to the contrary, the Plan shall constitute a motion to assume the insurance policies set forth on Exhibit A to the Plan by the New EWRD V Entities. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to Bankruptcy Code section 365(a) and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy set forth on Exhibit A to the Plan. To the extent the Bankruptcy Court determines otherwise with respect to any insurance policy, the Debtors reserve the right to seek

rejection of such insurance policy or other available relief. The Plan shall not affect contracts that have been assumed and/or assigned by order of the Bankruptcy Court prior to the Confirmation Date. For the avoidance of doubt, the certain insurance policies (including any insurance policies that are not executory contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date and insurance policies entered into by the Debtors after the Petition Date) of the Debtors set forth on <u>Exhibit A</u> to the Plan and all rights thereunder and rights under any other insurance policies under which the Debtors may be beneficiaries (including the rights to make, amend, prosecute and benefit from claims) are retained by the Debtors and will be included in the New EWRD V Assets and handled accordingly pursuant to the Plan.

## G.    Trailside Closings

In the event that Trailside Townhomes does not close on all of the remaining townhomes currently under contract with Exclusive Resorts Real Estate Holdings II, LLC ("<u>Exclusive Resorts</u>") prior to the Effective Date, Trailside Townhomes will assume its sales contract with Exclusive Resorts.

## ARTICLE VI.

## DISTRIBUTIONS

## A.    Distributions on Allowed Unsecured Claims

Distributions with respect to Holders of Allowed Unsecured Claims shall only be made on the Distribution Date or as soon thereafter as practicable. All Allowed Unsecured Claims held by a single creditor against the Debtor shall be aggregated and treated as a single Unsecured Claim against the Debtor. At the written request of the New EWRD V Entities, any creditor holding multiple Allowed Unsecured Claims shall provide the New EWRD V Entities a single address to which any Distributions shall be sent.

## B.    Date of Distributions

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## C.    Disbursing Agent

All Distributions under the Plan shall be made by the Disbursing Agent.

## D.    Delivery of Distributions

Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim or Allowed Administrative Expense Claim shall be made at the address of such holder as set forth on the Schedules or on the books and records of the Debtors or its agents, as applicable, unless the Debtors or the New EWRD V Entities have been notified in writing of a change of address

by the filing of a Proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules. Nothing in the Plan shall require the Debtors or the New EWRD V Entities to attempt to locate any holder of an Allowed Claim or Allowed Administrative Claim.

## E. Unclaimed Distributions

All Distributions under the Plan that are unclaimed for a period of ninety (90) days after Distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the New EWRD V Entities notwithstanding state escheat or other similar laws to the contrary and any entitlement of any holder of any Claims to such Distributions shall be extinguished and forever barred.

## F. Manner of Payment

At the option of the New EWRD V Entities, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise provided in applicable agreements.

## G. Limitation on Cash Distributions

No payment of Cash less than twenty-five dollars ($25) will be made to any holder of an Allowed Claim unless a request for such payment is made in writing to the New EWRD V Entities within thirty (30) days after the Effective Date.

## H. Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

## ARTICLE VII.

## PROCEDURES FOR TREATING DISPUTED CLAIMS

### A. Claims Administration Responsibility

#### 1. Reservation of Rights to Object to Claims

Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, the Debtors and New EWRD V Entities (on behalf of the Estates) reserve any and all objections to any and all Claims and motions or requests for the payment of Claims, whether Administrative, Priority Tax, Priority, Secured or Unsecured, including, without limitation, any and all objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Secured Tax Claims, Priority Claims, General Unsecured Claims, Intercompany Claims, Interest Related

Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.

## 2. Objections to Claims

Prior to the Effective Date, the Debtors or any other party that filed a Claim objection shall be responsible for pursuing any objection to the allowance of any Claim. From and after the Effective Date, the New EWRD V Entities will retain responsibility for administering, disputing, objecting to, compromising or otherwise resolving and making Distributions, if any, with respect to all Claims subject to the other provisions of the Plan. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims by the New EWRD V Entities will be filed and served not later than 90 days after the Effective Date, provided that the New EWRD V Entities may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan. The New EWRD V Entities shall be substituted for the Debtors with respect to any objections pending as of the Effective Date.

## 3. Filing of Objections

An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if the Debtors or the New EWRD V Entities effect service in accordance with Bankruptcy Rule 3007.

## 4. Determination of Claims

Except as otherwise agreed by the Debtors, any Claim as to which a Proof of Claim or request for payment was timely filed in the Chapter 11 Cases may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination, or any revision, modification or amendment thereof, the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the applicable New EWRD V Entity and the claimant without the necessity of Bankruptcy Court approval, (iv) applicable non-bankruptcy law, or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan. Nothing contained in this Article shall constitute or be deemed a waiver of any claim, right or Cause of Action that the Debtors or the New EWRD V Entities may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under 28 U.S.C. §157.

## B. Procedures for Treating and Resolving Disputed and Contingent Claims

### 1. No Distributions Pending Allowance

No payments or Distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn, determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

### 2. Claim Estimation

The Debtors or the New EWRD V Entities may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code section 502(c); provided, however, that the Bankruptcy Court shall determine (i) whether such Disputed Claim is subject to estimation pursuant to Bankruptcy Code section 502(c) and (ii) the timing and procedures for such estimation proceedings, if any.

## C. Setoffs and Recoupment

The Debtors and the New EWRD V Entities may, pursuant to Sections 502(d), 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any claims or Causes of Action of any nature whatsoever the Debtors or their Estates may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors or the New EWRD V Entities of any setoff or recoupment the Debtors or the New EWRD V Entities may have against the Holder of such Claim, nor of any other claim or Cause of Action.

## D. Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code

Allowance and disallowance of Claims shall be in all respects subject to the provisions of section 502 of the Bankruptcy Code, including, without limitation, subsections (b), (d), (e), (g), (h) and (i) thereof.

## E. Adjustment to Certain Claims Without a Filed Objection

Any Claim that has been settled, paid and satisfied, or amended and superseded, may be adjusted or expunged on the Claims register by the New EWRD V Entities without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, all Claims filed by a current or former employee of the Debtors on account of a benefit arising out of a benefit plan shall be deemed satisfied and expunged from the Claims register as of the Effective Date to the extent the New EWRD V Entities elect to honor such employee benefit, without any further notice to or action, order or approval of the Bankruptcy Court.

**F.    Resolution of Administrative Claims and Claims**

On and after the Effective Date, the New EWRD V Entities shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Administrative Claims and Claims against the Debtor and to compromise, settle or otherwise resolve any Disputed Administrative Claims and Disputed Claims against the Debtor without approval of the Bankruptcy Court.

**G.    Offer of Judgment**

The New EWRD V Entities are authorized to serve upon a holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the holder of a Claim must pay the costs incurred by the New EWRD V Entities after the making of such offer, the New EWRD V Entities are entitled to setoff such amounts against the amount of any Distribution to be paid to such holder and/or withhold payment of any Distribution under Section 502(d) of the Bankruptcy Code, each without any further notice to or action, order, or approval of the Bankruptcy Court.

**H.    Amendments to Claims**

On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the New EWRD V Entities, and any such new or amended Claim filed without prior authorization shall be deemed disallowed in full and expunged without any further action.

**I.    Cancellation of Instruments and Agreements**

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, stock or agreements evidencing, giving rise to or governing any Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged and the Holders thereof shall have no rights against the Debtors, the New EWRD V Entities or the Estates; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in the Plan.

**J.    No Interest on Claims**

Unless otherwise specifically provided for in the Plan, the Confirmation Order, a post-petition agreement in writing between the Debtors and a Holder of a Claim that has been approved by an order of the Bankruptcy Court, or required under section 506(b) of the Bankruptcy Code, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

## K.    Withholding Taxes

The New EWRD V Entities shall be entitled to deduct any federal, state or local withholding taxes from any payments under the Plan.  As a condition to making any distribution under the Plan, the New EWRD V Entities may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as the New EWRD V Entities may deem necessary to comply with applicable tax reporting and withholding laws.

## ARTICLE VIII.

## EFFECT OF CONFIRMATION

## A.    Vesting of Assets

Subject to Article VIII.D of the Plan, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the New EWRD V Assets shall be released from the custody and jurisdiction of the Bankruptcy Court, and all of New EWRD V Assets shall vest in the New EWRD V Entities free and clear of all Claims, Liens, encumbrances, charges and other interests, including any right of any governmental agency to impair, modify, rescind, abate or otherwise affect the Assets and properties of the Debtors, except as provided in the Plan.  From and after the Effective Date, the New EWRD V Entities may operate their businesses and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, subject to the terms and conditions of the Plan.

## B.    Binding Effect

On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, a Debtor and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

## C.    Discharge of Claims and Termination of Interests

Except for Gray's Priority Claims in Class 1.I and Gray's General Unsecured Claims in Class 7.I or otherwise provided in the Plan, the rights afforded in and the payments and Distributions to be made under the Plan shall terminate all Interests and discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtors, or their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except for Gray's Priority Claims in Class 1.I and Gray's General Unsecured Claims in Class 7.I or otherwise provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Interests shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Interests shall be precluded and enjoined from asserting against the Debtors, the New EWRD V Entities, their successors or assignees or any of their assets or properties, any other or further Claim or Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such

Holder has filed a Proof of Claim or proof of interest and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

## D.    Injunction

Except as otherwise expressly provided in the Plan or in the Confirmation Order, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (d) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to any Protected Party or any property of any Protected Party with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Article shall prohibit the Holder of a Claim or Interest with respect to which a Proof of Claim was timely filed from litigating its right to seek to have such Claim or Interest declared an Allowed Claim or Interest and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Interest of any of the obligations of the Debtors or the New EWRD V Entities under the Plan. Notwithstanding anything to the contrary in this paragraph, any right of a taxing authority to retain and enforce their liens until the claims of such taxing authority are paid in full, consistent with the Plan, to the extent that any exist, and collect taxes consistent with the Plan, shall not be affected by this paragraph.

## E.    Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, the Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the entry of the Final Decree.

## F.    Exculpation and Releases

None of the Protected Parties shall have or incur any liability for any act or omission taken in connection with, arising from or relating to the Chapter 11 Cases, the formulation, negotiation and/or pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan and/or the property to be distributed under the Plan, except for claims, Causes of Action or liabilities arising from the gross negligence, willful misconduct or fraud of any Protected Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Protected Party shall be entitled to reasonably rely

upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan and such reasonable reliance shall form an absolute defense to any such claim, cause of action or liability. Without limiting the generality of the foregoing, each Protected Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.

## G. Reservation of Causes of Action/Reservation of Rights

Subject to Article VIII.F above, nothing contained in the Plan shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors, their Estates or the New EWRD V Entities may have or may choose to assert against any Person.

## H. Avoidance Actions/Objections

Other than any releases granted herein, by the Confirmation Order and by Final Order of the Bankruptcy Court, as applicable, from and after the Effective Date, the New EWRD V Entities shall have the right to prosecute any and all avoidance or equitable subordination actions, recovery causes of action and objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or their Estates.

## I. Discharge of the Debtors' Professionals

Upon the Effective Date, the Debtors' Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims; (iii) requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases; and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order. The Professionals retained by the Debtors and the respective members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered to or on behalf of the Debtors after the Effective Date (including, but not limited to, any agreements for compensation during a "tail period"), except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date.

## ARTICLE IX.

## CONDITIONS PRECEDENT

## A. Conditions Precedent to Effectiveness

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Article XIV.B hereof:

1.     The Confirmation Order, in form and substance acceptable to the Debtors and the New Money Investors and the other Protected Parties, shall have been entered and is a Final Order or, if not a Final Order, is not subject to any stay;

2.     All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors; and

3.     All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked.

4.     All necessary documents relating to the New Money Investment shall be executed.

## B.     Waiver of Conditions

Each of the conditions precedent in Article IX.A hereof may be waived, in whole or in part, by the Debtors upon the written consent of the New Money Investors. Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

## C.     Satisfaction of Conditions

Except as expressly provided or permitted in the Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. In the event that one or more of the conditions specified in Article IX.A of the Plan have not occurred or otherwise been waived pursuant to Article IX.B of the Plan, (a) the Confirmation Order shall be vacated, (b) the Debtors and all holders of Claims and Interests, shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (c) the Debtors' obligations with respect to Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

## ARTICLE X.

## ADMINISTRATIVE PROVISIONS

## A.     Retention of Jurisdiction by the Bankruptcy Court

The Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter arising out of or related to the Chapter 11 Cases and the Plan, including, without limitation, the following:

1. all matters relating to the assumption or rejection or the assumption and assignment of Executory Contracts, or Claims or disputes relating thereto;

2. all matters relating to the ownership of a Claim or Interest;

3. all matters relating to the distribution to holders of Allowed Claims and to the determination of Claims;

4. all matters relating to or arising in connection with the allowance or estimation of Claims filed, both before and after the Confirmation Date, including any objections to the classification of any Claim;

5. to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

6. all matters relating to the construction and implementation of the Plan and the provisions thereof, and to hear and determine all requests for orders in aid of execution, implementation or consummation of the Plan;

7. all matters relating to disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

8. to consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9. all applications for allowance of compensation and reimbursement of Professional Fee Claims under Bankruptcy Code sections 328, 330, 331, 503(b), 1103 and 1129(a)(4);

10. to hear and determine all motions requesting allowance of an Administrative Claim;

11. to determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

12. all Causes of Action, Avoidance Actions and other suits and adversary proceedings to recover assets for the Debtors and property of the Estates, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or the Plan, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

13. all matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

14.    all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

15.    to enter the Final Decree closing the Chapter 11 Cases; and

16.    to enforce all orders previously entered by the Bankruptcy Court.

## B.    Payment of Statutory Fees

All fees through the Effective Date pursuant to 28 U.S.C. §1930 shall be paid on or before the Effective Date to the extent that an invoice for such fees has been provided to the Debtors prior to the Effective Date. All fees invoiced after the Effective Date pursuant to 28 U.S.C. §1930 shall be paid by the New EWRD V Entities out of the New EWRD V Assets.

## C.    Headings

The headings of the articles, paragraphs and sections of the Plan are inserted for convenience only and shall not affect the interpretation hereof.

## D.    Binding Effect of Plan

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code on and after the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates, New EWRD V Entities and their respective successors or assigns, whether or not the Claim or Interest of such Holders is impaired under the Plan and whether or not such Holder has accepted the Plan. The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including, without limitation, the New EWRD V Entities and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

## E.    Final Order

Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Debtors upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

## F.    Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection herewith and distributions hereunder, the New EWRD V Entities shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution. Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

## G. Tax Exemption and Expedited Tax Determination

Pursuant to section 1146 of the Bankruptcy Code, any transfers from a Debtor, New EWRD V Entity or any subsidiary thereof to any other Person or entity pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' or the New EWRD V Entities' real or personal property, or the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, including, without limitation, any transfers of the Debtors' property in implementation of or as contemplated by the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

The Debtors and New EWRD V Entities are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, on or behalf of, the Debtors for any or all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

## H. Governing Law

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under the Plan, any agreements, documents and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and, with respect to the Debtors incorporated or organized in Delaware, corporate and limited liability company governance matters shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles.

## I. Plan Supplement

The Plan Supplement and the documents contained therein shall be in form, scope and substance satisfactory to the Debtors, TLH and the New Money Investors and shall be filed with the Bankruptcy Court no later than five (5) Business Days before the deadline for voting to accept or reject the Plan, provided that the documents included therein may thereafter be

amended and supplemented prior to execution, so long as no such amendment or supplement materially affects the rights of holders of Claims or Interests. The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plan as if set forth in full therein.

## J.    Severability

After the Effective Date, should the Bankruptcy Court or any other court of competent jurisdiction determine that any provision in the Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

## K.    Revocation

The Debtors reserve the right to revoke and withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, then the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors.

## L.    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## M.    Construction

The rules of construction as set forth in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

## N.    Conflict

In the event and to the extent any provision of the Plan is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan shall control and take precedence. The terms of the Confirmation Order shall govern in the event of any inconsistency with the Plan or the summary of the Plan set forth in the Disclosure Statement.

## O.    Amendments and Modifications

The Debtors, TLH, the New Money Investors and the DIP Lenders (solely to the extent that any modification changes the treatment of the DIP Lenders Secured Claim) jointly may agree to alter, amend or modify the Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to "substantial consummation" (as such term is defined in section 1101(2)) of the Bankruptcy Code of the Plan,

any Debtor or any New EWRD V Entity may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, by the filing of a motion on notice to those parties set forth in Bankruptcy Rule 2002, and the solicitation of all Creditors and other parties-in-interest shall not be required. Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Interests.

Effectuation of waivers otherwise authorized by the Plan shall not be deemed amendments or modifications of the Plan.

**P.     Notices**

Any notices required under the Plan or any notices or requests of the Debtors or the New EWRD V Entities by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

> To the Debtors:
>
> East West Resort Development V, L.P., L.L.L.P.
> c/o Craig Ferraro
> 126 Riverfront Lane, 5th Floor
> PO Drawer 2770, Avon, Colorado 81620
>
> with a copy to:
>
> Paul, Hastings, Janofsky & Walker, LLP
> Attn:  Richard A. Chesley, Esq.
> 191 N. Wacker Dr., Suite 3000
> Chicago, IL  60606
>
> Richards, Layton & Finger, P.A.
> Attn:  Daniel J. DeFranceschi, Esq.
> One Rodney Square
> 920 North King Street
> Wilmington, DE  19801

**Q.     Filing of Additional Documents**

On or before substantial consummation of the Plan, and without the need for any further order or authority, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**R.**     **Direction to a Party**

From and after the Effective Date, the Debtors or the New EWRD V Entities may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

**S.**     **Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in the Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

[remainder of page intentionally left blank]

Dated: April 15, 2010
Wilmington, Delaware

Respectfully submitted,

**NMP HOLDINGS, LLC,**
a Delaware limited liability company, its Manager

By:    EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
a Delaware limited partnership registered as a limited liability
limited partnership, its member and Manager

By:    HF HOLDING CORP.,
a Colorado corporation, its sole General Partner

By:    /s/ Craig Ferraro
Its:    Vice President, Treasurer and Secretary

Dated: April 15, 2010
Wilmington, Delaware


**NORTHSTAR MOUNTAIN PROPERTIES, LLC,**
a Delaware limited liability company, its sole member

By:    NMP HOLDINGS, LLC,
a Delaware limited liability company, its Manager

By:    EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
a Delaware limited partnership registered as a limited liability limited
partnership, its member and Manager

By:    HF HOLDING CORP.,
a Colorado corporation, its sole General Partner

By:    /s/ Craig Ferraro
Its:    Vice President, Treasurer and Secretary


**NORTHSTAR IRON HORSE, LLC,**
a Delaware limited liability company

By:    NORTHSTAR MOUNTAIN PROPERTIES, LLC,
a Delaware limited liability company, its sole member

By:    NMP HOLDINGS, LLC,
a Delaware limited liability company, its Manager

By:    EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
a Delaware limited partnership registered as a limited liability
limited partnership, its member and Manager

By:    HF HOLDING CORP.,
a Colorado corporation, its sole General Partner

By:    /s/ Craig Ferraro
Vice President, Treasurer and Secretary

Dated: April 15, 2010
        Wilmington, Delaware


**NORTHSTAR BIG HORN, LLC**,
a Delaware limited liability company

By:     NORTHSTAR MOUNTAIN PROPERTIES, LLC,
        a Delaware limited liability company, its sole member

    By:     NMP HOLDINGS, LLC,
            a Delaware limited liability company, its Manager

        By:     EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
                a Delaware limited partnership registered as a limited liability
                limited partnership, its member and Manager

            By:     HF HOLDING CORP.,
                    a Colorado corporation, its sole General Partner

                By:     /s/ Craig Ferraro
                        Vice President, Treasurer and Secretary


**NORTHSTAR VILLAGE TOWNHOMES, LLC**,
a Delaware limited liability company

By:     NORTHSTAR MOUNTAIN PROPERTIES, LLC,
        a Delaware limited liability company, its sole member

    By:     NMP HOLDINGS, LLC,
            a Delaware limited liability company, its Manager

        By:     EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
                a Delaware limited partnership registered as a limited liability
                limited partnership, its member and Manager

            By:     HF HOLDING CORP.,
                    a Colorado corporation, its sole General Partner

                By:     /s/ Craig Ferraro
                        Vice President, Treasurer and Secretary

Dated: April 15, 2010
Wilmington, Delaware


**NORTHSTAR TRAILSIDE TOWNHOMES, LLC**,
a Delaware limited liability company

By:    NORTHSTAR MOUNTAIN PROPERTIES, LLC,
a Delaware limited liability company, its sole member

By:    NMP HOLDINGS, LLC,
a Delaware limited liability company, its Manager

By:    EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
a Delaware limited partnership registered as a limited liability
limited partnership, its member and Manager

By:    HF HOLDING CORP.,
a Colorado corporation, its sole General Partner

By:    /s/ Craig Ferraro
Vice President, Treasurer and Secretary


**OLD GREENWOOD, LLC**

By:    EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
its Manager

By:    HF Holding Corp.,
its General Partner

By:    /s/ Craig Ferraro
Its:    Vice President, Treasurer and Secretary

Dated: April 15, 2010
Wilmington, Delaware

**OLD GREENWOOD REALTY, INC.**

By:    OLD GREENWOOD, LLC,
its Owner

    By:    EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
its Manager

        By:    HF HOLDING CORP.,
its General Partner

            By:    /s/ Craig Ferraro
            Its:    Vice President, Treasurer and Secretary

**GRAY'S STATION, LLC**

By:    EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
its Manager

    By:    HF Holding Corp., its General Partner

        By:    /s/ Craig Ferraro
        Its:    Vice President, Treasurer and Secretary

**TAHOE MOUNTAIN RESORTS, LLC**

By:    EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
its Manager

    By:    HF Holding Corp.,
its General Partner

        By:    /s/ Craig Ferraro
        Its:    Vice President, Treasurer and Secretary

Dated: April 15, 2010
Wilmington, Delaware


**TAHOE CLUB COMPANY, LLC**

By:    EAST WEST RESORT DEVELOPMENT V, L.P., L.L.L.P.,
its Manager

      By:    HF Holding Corp.,
its General Partner

          By:    /s/ Craig Ferraro
          Its:    Vice President, Treasurer and Secretary

Prepared by:

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No.3704)
L. Katherine Good (No. 5101)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
Richard A. Chesley (IL 6240877)
Gregory S. Otsuka (IL 6270388)
Hilla Uribe Jimenez (IL 6293064)
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
**Counsel for the Debtors and Debtors in Possession**

**Exhibit A**
**Insurance Policies**

| Policy No. | Carrier | Effective Date | Policy Description |
|---|---|---|---|
| AXS101004 | Axis Surplus Insurance Co. | 11/1/09- 11/1/10 | Earthquake and Earthquake Sprinkler Leakage |
| CWL673 | Underwriters at Lloyd's CWL Facility | 11/1/09- 11/1/10 | Earthquake and Earthquake Sprinkler Leakage |
| AXS101005 | Axis Surplus Insurance Co. | 11/1/09- 11/1/10 | Earthquake and Earthquake Sprinkler Leakage |
| 7100284110000 | OneBeacon Insurance Company | 11/1/09- 11/1/10 | Property Limits/Coverage Crime Limits/Coverage General Liability Business Automobile Commercial Umbrella Coverage |
| 79867112 | Federal Insurance Company | 11/1/09- 11/1/10 | Commercial Umbrella Coverage |
| TBPL00919414503110232 | New Hampshire Ins. Co. | 6/15/09- 6/15/10 | Professional Liability |
| CH10ESP717775NC | Navigators Specialty Insurance Co. | 3/1/10- 3/1/13 | Environmental Site Liability |
| CB2007999 | Markel Insurance Company | 11/1/09- 11/1/10 | Watercraft & Equipment Watercraft Liability |
| 9CC2952 | Markel Insurance Company | 11/1/09- 11/1/10 | Marine Protection & Indemnity: Excess |
| EKS3002262 | Scottsdale Ins. Co. | 3/11/10- 3/11/11 | General Liability Professional Liability |